# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | |
|---|---|
| TEXAS LEAGUE OF UNITED LATIN AMERICAN CITIZENS, | Civil Action |
| and | Case No. 5:19-cv-00074-FB |
| NATIONAL LEAGUE OF UNITED LATIN AMERICAN CITIZENS, | CLASS ACTION |
| and | |
| JULIE HILBERG, individually and on behalf of others similarly situated, | |
| Plaintiffs, | |
| v. | |
| DAVID WHITLEY, in his official capacity as Secretary of State for the State of Texas, | |
| and | |
| KEN PAXTON, in his official capacity as Attorney General for the State of Texas, | |
| Defendants. | |

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## INTRODUCTION AND STATEMENT OF THE CASE

Plaintiffs respectfully move this Court to enter an order certifying this case as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2). Defendant Whitley, the Secretary of State ("Secretary Whitley" or "the Secretary"), has implemented a voter purge program based on a methodology that guarantees that tens of thousands of newly naturalized citizens—eligible, registered voters—will be wrongly targeted for removal based upon outdated citizenship information the Secretary admits constitutes weak evidence. The source—driver license and identification card applications—is unreliable. Texas driver licenses are valid for six years, and between 50,000 and 65,000 Texas residents become newly naturalized citizens each year. If just 27 percent of these newly naturalized citizens over the past six years had driver licenses at the time of naturalization and registered to vote following their naturalization, the Secretary's entire list would be inaccurate. These eligible voters will be required to respond to a mailed notice within 30 days or have their registration canceled. And Defendants have exacerbated this unconstitutional voter purge program by loudly trumpeting unfounded claims of voter fraud and threatening criminal investigations. The Secretary's voter purge program is a discriminatory and unconstitutional burden on the proposed class's right to vote, and Defendants' public statements constitute unlawful voter intimidation prohibited by the Voting Rights Act.

Named Plaintiff Julie Hilberg seeks to represent a class of eligible Texas voters who appear on the Secretary's list of 95,000 registered voters and those who will appear on the Secretary's planned future monthly lists. Hilberg is originally from the United Kingdom and is married to a United States citizen and former Navy officer. Ex. A (Hilberg Dec.) ¶ 2. She renewed her Texas driver license in 2014 and it expires in 2020. *Id.* ¶ 3. She became a naturalized U.S. citizen on April 16, 2015, later registering to vote and voting in subsequent elections. *Id.* ¶¶ 4-6. After the

1

Secretary announced his voter purge program, Hilberg became concerned she was included on the Secretary's "list" and could have her registration canceled. *Id.* ¶ 7. She visited the Atascosa County Elections Administrator, who confirmed her name was listed but was unable or unwilling to provide Hilberg any information or assurances about her registration given her presence on the Secretary's list. *Id.* ¶ 8.

For the reasons described herein, Plaintiff's class claims are well suited for class treatment and satisfy the requirements of Federal Rule of Civil Procedure 23. Plaintiffs thus respectfully request that the Court certify these claims as a class action.

## ARGUMENT

The Court should certify this case for class treatment pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2). To have a suit certified as a class action, Plaintiff must satisfy the requirements of Rule 23(a) as well as the additional requirements of one of three categories of class actions. Rule 23(a) has four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)–(4). A class action may be maintained pursuant to Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). In assessing whether a suit satisfies Rule 23(a)'s requirements, courts should err on the side of favoring class treatment, particularly in civil rights suits. "[I]t is important to remember that Rule 23(a) must be read liberally in the context of civil rights suits. This is especially true when the class action falls under Rule 23(b)(2)." *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975); *see also McClain v. Lufkin Indus., Inc.*, 187 F.R.D. 267, 277 (E.D. Tex. 1999) ("'[C]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples' of

suits properly brought under 23(b)(2)." (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997))).

As discussed below, Plaintiff clearly satisfies the requirements of Rule 23(a) and thus class certification is appropriate under Rule 23(b)(2). Plaintiff's motion for class certification should be granted.

## I.    Proposed Class Definition

An order certifying a class action must define the class. *See* Fed. R. Civ. P. 23(c)(1)(B). Plaintiff proposes a class defined as:

> All eligible Texas registered voters who appear on Defendant Whitley's list of approximately 95,000 alleged non-citizens and all eligible Texas registered voters who may appear on the forthcoming monthly lists to be prepared pursuant to the voter purge program announced in Advisory 2019-02 ("Advisory").

The plaintiff class members are easily identifiable—Defendant Whitley created the list, in some cases class members have already provided proof of citizenship when they registered to vote, and the listed individuals can identify themselves as eligible citizens. The proposed class definition relies upon objective criteria and can be easily administered, thus satisfying the requirement for a class certified under Rule 23(b)(2).[1]

---

[1] In any event, where injunctive and declaratory relief is sought under Rule 23(b)(2), rather than monetary damages under Rule 23(b)(3), the requirements of definiteness and ascertainability of class members do not apply. *See* Fed. Judicial Ctr., *Manual for Complex Litigation*, § 21.222 (4th ed. 2004) ("[B]ecause individual damage claims are likely, Rule 23(b)(3) actions require a class definition that will permit identification of individual class members, while Rule 23(b)(1) or (b)(2) actions may not."); *Jones*, 519 F.2d at 1100 ("[I]t is not necessary that the members of the [23(b)(2)] class be so clearly identified that any member can be presently ascertained . . . ."); *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015); *Shook v. El Paso Cty.*, 386 F.3d 963, 972 (10th Cir. 2004); Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment (providing "[i]llustrative" examples of (b)(2) classes as "various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration").

II.    **The Proposed Plaintiff Class Satisfies Rule 23(a) Criteria.**

A.    **Numerosity**

The proposed plaintiff class easily meets the numerosity requirement of Rule 23(a)(1). To be maintained as a class action, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In assessing numerosity, "district courts must not focus on sheer numbers alone but must instead focus 'on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors.'" *Pederson v. La. State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000). The Fifth Circuit has observed, however, that "100 to 150 members" would "generally satisfy[y] the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). Where "the class includes unknown, unnamed future members," the Court should weigh that fact "in favor of certification." *Pederson*, 213 F.3d at 868 n.11.

The numerosity requirement is plainly met here. Defendant Whitley has identified a list of 95,000 registered voters who, for a period going back twenty-three years, were not citizens when they obtained driver licenses or identification cards. *See* Advisory. But 50,000 to 65,000 Texans become naturalized citizens each year. *See* U.S. Dep't of Homeland Sec., *Profiles on Naturalized Citizens* (Feb. 2, 2019), https://www.dhs.gov/profiles-naturalized-citizens. The Census Bureau reports that naturalized citizens register to vote 61.7 percent of the time. U.S. Census Bureau, *Voting and Registration in the Election of November 2016*, Table 11 (2017), https://www.census.gov/data/tables/time-series/demo/voting-and-registration/p20-580.html. At that rate, over 30,000 newly naturalized citizens register to vote in Texas each year; if just 0.5% of those newly registered, naturalized citizens had previously obtained a driver license, the class would satisfy the 100-150 range approved in *Mullen*. And Texas driver licenses are valid

for six years, meaning that roughly 180,000 newly naturalized citizens likely registered to vote in Texas over the past six years.

Indeed, we know the number of potential class members are magnitudes beyond 100-150. Reports show that 20,000 of the 95,000 persons initially identified through this voter purge program were found to be eligible citizens mere days after the Secretary's announcement, including all 366 of the identified McLennan County registered voters.[2] When Florida designed a materially identical program in 2012 resulting in an initial list of 180,000 voters, only 85 ended up being actionable.[3] It is likely that the vast majority of the 95,000 registered voters on the Secretary's list are citizens eligible to vote and would thus be class members; the currently known number far exceeds what is required to satisfy numerosity. Given the vast numbers and the geographic spread throughout the entire state of Texas, numerosity is easily met.

### B.      Commonality

Plaintiff also satisfies the requirement that "there [be] questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "[F]or purposes of Rule 23(a)(2), [e]ven a single [common] question will do." *Id.* at 359 (internal quotation marks omitted; first bracket added). The commonality requirement is satisfied if the question "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

---

[2] *See* Anna M. Tinsley, *List of Suspect Texas Voters Shrinks by 20,000 by Some Estimates*, Star-Telegram (Feb. 1, 2019), https://www.star-telegram.com/news/politics-government/state-politics/article225395560.html.
[3] Steve Bousquet & Amy Sherman, *Florida Suspends Non-Citizen Voter Purge Efforts*, Miami Herald (March 27, 2014), https://www.miamiherald.com/news/politics-government/article2087729.html.

The commonality requirement is satisfied. Common questions include (1) whether the class members are included on the Secretary's list, (2) whether the class members were citizens at the time they registered to vote and voted, (3) whether the Secretary's voter purge program and 30-day period response requirement is an unconstitutional, undue burden on the right to vote, (4) whether the Secretary's voter purge program discriminates against newly naturalized citizens, (5) whether the class members were the target of voter intimidation by the statements of Defendants, and (6) whether injunctive relief is appropriate to remedy Defendants' violations of law. These issues are common to the named Plaintiff and the unnamed class members. In this case, class treatment has the capacity "'to generate common *answers* apt to drive the resolution of the litigation.'" *Wal-Mart*, 564 U.S. at 350 (emphasis in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). Injunctive and declaratory relief will resolve all class members' claims "in one stroke." *Id*. Plaintiff easily satisfies the commonality requirement.

### C.      Typicality

The third requirement of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). For the same reasons that Plaintiff's claims meet the commonality requirement, they also meet the typicality requirement. Indeed, the Supreme Court has noted that the typicality, adequacy of representation, and commonality requirements "tend[ ] to merge." *Amchem*, 521 U.S. at 626 n.20. "[T]he test for typicality is not demanding," and "'focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'" *Mullen*, 186 F.3d at 625 (quoting *Lighbourn v. Cty. of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)).

The named Plaintiff's claims are typical of the class members. She is identified on the Secretary's list but is an eligible citizen who faces unconstitutional burdens on account of the Secretary's voter purge program and has been the subject of Defendants' voter intimidation. Plaintiff Hilberg's claims are aligned with the class, and the injunctive and declaratory relief she seeks will resolve all the class members' injuries.

### D.    Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), and this inquiry overlaps with the inquiries into commonality and typicality, *see Amchem*, 521 U.S. at 626 n.20. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id*. at 625. "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id*. at 625-26 (internal quotation marks omitted). "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only where those differences create conflicts between the named plaintiffs' and the class members' interests." *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 480 (5th Cir. 2001).

Plaintiff Hilberg is an adequate representative. She possesses the same interest and suffers the same injury as the class, has no known conflicts with the class members, and is committed to taking an active role to ensure the class member's interests are protected and to vigorously pursue the claims of the class. *See* Ex. A (J. Hilberg Dec.) ¶ 9.

Plaintiff's counsel similarly meet this requirement. "The adequacy [requirement] also factors in competency and conflicts of class counsel." *Amchem*, 521 U.S. at 626 n.20. Class counsel in this case easily meet the adequacy requirement of Rule 23(a)(4). "The adequacy of counsel

prong of Rule 23(a)(4) asks whether counsel are qualified, experienced and generally able to conduct the litigation and whether counsel will vigorously prosecute the interests of the class." William B. Rubenstein, *1 Newberg on Class Actions* § 3:72 (5th ed. 2018) (internal quotation marks and footnote omitted); *see also Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 294 (5th Cir. 2017) (noting that adequacy inquiry looks to "'zeal and competence of the representative's counsel'").

Plaintiff Hilberg is represented by counsel with substantial experience in election law and voting rights litigation, civil rights litigation generally, and class action representation. *See* Ex. B (Vera Dec.); Ex. C (Hicks Dec.); Ex. D (Dunn Dec.); Ex. E (Richards Dec.); Ex. F (Gaber Dec.).

For these reasons, as demonstrated in counsel's declarations, class counsel also satisfy the requirements of Rule 23(g), which requires that the Court appoint class counsel at the time of certification, and that in doing so the Court consider (1) "the work counsel has done in identifying or investigating potential claims in the action," (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action," (3) "counsel's knowledge of the applicable law," and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Plaintiffs are represented by experienced voting rights, civil rights, and class action attorneys based in Texas and Washington, D.C. Plaintiffs' counsel Luis Vera, the General Counsel for LULAC, has substantial experience litigating voting rights and civil rights cases nationwide and in Texas. Ex. B (Vera Dec.) ¶¶ 2-3. Plaintiffs' counsel Chad Dunn is likewise an experienced voting rights and civil rights litigator. Ex. D (Dunn Dec.) ¶ 2. Plaintiffs' counsel Renea Hicks is likewise an experienced election law, voting rights, and civil rights litigator who has served as

class counsel on two occasions. Ex. C (Hicks Dec.) ¶¶ 2-4. And Plaintiffs' counsel David Richards is a longtime, well known voting rights and civil rights litigator. Ex. E (Richards Dec.) ¶¶ 2-3.

Plaintiffs' counsel Campaign Legal Center is a preeminent national nonpartisan, nonprofit election law organization with decades of experience litigating voting rights matters. Recent examples of such litigation includes cases addressing Georgia's "exact match" voter registration system, North Dakota's "residential address" requirement as applied to Native Americans living on reservations, Ohio's law precluding eligible, late-jailed voters from voting absentee, and Texas's photo ID requirement. *See* Ex. F (Gaber Dec.) ¶¶ 3-4. Plaintiffs' counsel Mark Gaber has significant experience on these and other voting rights and civil rights matters, as well as litigating complex commercial cases, and has experience litigating putative and certified class actions, including having been found to be adequate class counsel in the past in a case challenging Virginia's marriage ban. *See id.* ¶ 3. Mr. Gaber is currently counsel in putative class actions in Ohio and Alabama. *See id.* Plaintiffs' counsel Danielle Lang likewise has years of experience litigating voting rights and civil rights matters and is also counsel in putative class actions in Ohio and Alabama. *See id*. ¶ 4. Plaintiffs' counsel are committed to dedicating time and resources to litigating this matter, and doing so with zeal, *id.* ¶ 5; *see* Exs. B-F (counsel declarations).

As the attached declarations make clear, Plaintiff Hilberg has satisfied her burden to demonstrate the adequacy of class counsel.

**III.    Class Certification Is Appropriate Under Rule 23(b)(2).**

The Court should certify the classes pursuant to Rule 23(b)(2). A class action may be maintained pursuant to Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The

Supreme Court has noted that certification under Rule 23(b)(2) is particularly appropriate in "[c]ivil rights cases against parties charged with unlawful, class-based discrimination." *Amchem*, 521 U.S. at 614. "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, 564 U.S. at 360.

This is exactly the type of civil rights action that Rule 23(b)(2) was created to foster. All of the citizens wrongly included on the Secretary's list are affected in the same manner and face the same undue burden of proving their eligibility in 30 short days, face the same threat of unfounded criminal investigations, and the same intimidation. There is no substantive difference among the class members, and therefore injunctive and declaratory relief is "appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).[4]

## CONCLUSION

For the foregoing reasons, this case should be certified as a Rule 23(b)(2) class.

---

[4] Pursuant to Local Rule Appendix A, Plaintiffs' counsel make the following statements. After this case was filed, another case challenging the Secretary's voter purge program was filed as an individual action— not as a class action. *See Garibay, et al. v. Whitley, et al.*, No. 19-cv-00040 (S.D. Tex. (Corpus Christi) Feb. 2, 2019). Another challenge by several organizational plaintiffs was filed today. *See MOVE Tex. Civic Fund, et al., v. Whitley, et al.*, No. 3:19-cv-00041 (S.D. Tex. (Galveston) Feb. 4, 2019). Plaintiffs' counsel have discussed and thoroughly explained to the Named Plaintiff the potential advantages and disadvantages of proceeding as a class action, rather than individually. Plaintiffs note that because the class is proposed pursuant to Rule 23(b)(2), notice to the class members is unnecessary. There have been no settlement negotiations and settlement with the Named Plaintiff on an individual basis is unlikely.

February 4, 2019

Respectfully submitted

Danielle M. Lang*
Mark P. Gaber*
Campaign Legal Center
1411 K Street NW, Suite 1400
Washington, DC 20005
Telephone: (202) 736-2200
Facsimile: (202) 736-2222
dlang@campaignlegal.org
mgaber@campaignlegal.org
*motions for admission pro hac vice pending

Renea Hicks
State Bar No. 09580400
Law Office of Max Renea Hicks
P.O. Box 303187
Austin, TX 78703
Telephone: (512) 480-8231
rhicks@renea-hicks.com

David Richards
State Bar No. 16846000
Richards, Rodriguez & Skeith LLP
816 Congress Avenue, Suite 1200
Austin, TX 78701
Telephone: (512) 476-0005
Facsimile: (512) 476-1513

/s/ Luis Roberto Vera, Jr.
Luis Roberto Vera, Jr.
LULAC National General Counsel
Law Offices of Luis Roberto Vera, Jr. &
 Associates
1325 Riverview Towers
111 Soledad
San Antonio, TX 78205-2260
Telephone: (210) 225-3300
lrvlaw@sbcglobal.net

Chad W. Dunn
State Bar No. 24036507
K. Scott Brazil
State Bar No. 02934050
Brazil & Dunn
3303 Northland Drive, Suite 205
Austin, TX 78731
Telephone: (512) 717-9822
Facsimile: (512) 515-9355
chad@brazilanddunn.com
scott@brazilanddunn.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on February 4, 2019 on the following counsel for Defendants via electronic mail and is available to counsel of record via CM/ECF.

Adam Bitter
General Counsel, Office of the Secretary of State
generalcounsel@sos.texas.gov

Patrick K. Sweeten
Senior Counsel for Civil Litigation, Office of the Attorney General
patrick.sweeten@oag.texas.gov

Matthew H. Frederick
Deputy Solicitor General, Office of the Attorney General
matthew.frederick@oag.texas.gov

/s/ Luis Roberto Vera, Jr.
Luis Roberto Vera, Jr.