# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| TEXAS LEAGUE OF UNITED LATIN AMERICAN CITIZENS, § § § and § § NATIONAL LEAGUE OF UNITED § LATIN AMERICAN CITIZENS, § § and § § JULIE HILBERG, individually and on § behalf of others similarly situated, § § *Plaintiffs,* § § v. § § DAVID WHITLEY, in his official capacity § as Secretary of State for the State of Texas, § § and § § KEN PAXTON, in his official capacity as § Attorney General for the State of Texas, § § *Defendants.* § | CIVIL ACTION NO. 5:19-CV-00074-FB |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS'
## MOTION FOR PRELIMINARY INJUNCTION

The data matching process outlined in Election Advisory No. 2019-02[1] ("Election Advisory") is an information-sharing initiative required by the Legislature. It assists county election officials—none of whom have been named as a defendant in this litigation—to perform their statutory duty to conduct maintenance of the State's voter rolls. As explained in Defendants' Motion to Dismiss,[2] local election officials have the exclusive authority to decide whether to investigate any voter for non-citizenship; voters have the ability to cure any notice of examination; and any voter who is eligible and who neglects to cure may still cast a provisional ballot should their local election officials incorrectly cancel their voter registration. Simply put, enjoining Defendants' conduct will not affect whether any individual voter is qualified to vote or remains registered to vote.

Plaintiffs' Motion for Preliminary Injunction ("Pls.' Mot.") [ECF No. 8] and accompanying evidence fails to establish that they are entitled to the extraordinary relief that they seek. Plaintiffs cannot prevail on the merits of their claims because they lack standing to assert them and because they fail to state a claim upon which relief can be granted. No Texas voter will suffer an irreparable injury if the Court does not act—there are multiple safeguards and methods under State law to ensure that no eligible voter is prevented from voting, and Plaintiffs' exhibits and evidence fail to establish otherwise. Finally, Plaintiffs' requested injunction would impose intolerable burdens on Defendants and the State of Texas, force them to act contrary to Texas law, and greatly disserve the public interest in maintaining the integrity of elections. Accordingly, the Court should deny Plaintiffs' Motion for Preliminary Injunction.

---

[1] Election Advisory No. 2019-02, "Use of Non-U.S. Citizen Data obtained from the Department of Public Safety" (dated January 25, 2019), *available at* https://www.sos.state.tx.us/elections/laws/advisory2019-02.shtml (last visited February 14, 2019).

[2] ECF No. 20. Defendants incorporate the arguments in their Motion to Dismiss by reference as if fully set forth herein.

**STANDARD OF LAW**

"To be entitled to a preliminary injunction, the applicants must show (1) a substantial likelihood that they will prevail on the merits; (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted; (3) their substantial injury outweighs the threatened harm to the party to be enjoined; and (4) granting the preliminary injunction will not disserve the public interest." *Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (quoting *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012)). The Fifth Circuit "has repeatedly cautioned that a preliminary injunction is an *extraordinary remedy* which should not be granted unless the party seeking it has *clearly carried the burden of persuasion on all four requirements*." *Steen*, 732 F.3d at 386 (quoting *Lakey*, 667 F.3d at 574 (internal quotation marks omitted)) (emphasis added). If the movant fails to establish any one of the four prerequisites to injunctive relief, relief will not be granted. *Women's Med. Ctr. of Nw. Hous. v. Bell*, 248 F.3d 411, 419 n.15 (5th Cir. 2001). Even when a movant satisfies each of the four factors, the decision whether to grant or deny a preliminary injunction remains discretionary with the district court. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). The decision to grant a preliminary injunction is to be treated as an exception rather than the rule. *Id*.

**I.  The Court Lacks Jurisdiction Because Plaintiffs Do Not Have Standing.**

As more fully explained in Defendants' Motion to Dismiss, ECF No. 20 at 12-21, none of the Plaintiffs can establish standing, which requires them to show (1) an actual or imminent injury that is concrete and particularized, (2) fairly traceable to the defendant's conduct, and (3) redressable by a judgment in the claimant's favor. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Here, Plaintiffs'

alleged injuries fail to satisfy the injury-in-fact component because they are not "actual or imminent," but at most merely "conjectural and hypothetical." *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Put simply, there is no guarantee that any given Plaintiff—or member of the proposed Plaintiff class—will have her registration cancelled absent an injunction. Moreover, Plaintiffs' claims are not traceable to Defendants because the injury they complain of is the result of "the independent action of some third party not before the court." *Id.* (quoting *Simon*, 426 U.S. at 41-42). Namely, county election officials. And it is entirely "speculative" that a favorable decision would redress the injuries that Plaintiffs alleged given that no injuries have yet occurred or are certain to occur. None of Plaintiffs' declarations or other evidence attached to their motion alter this conclusion, and Plaintiffs will not be able to establish at the February 19th hearing that they have standing to proceed. Accordingly, their request for a preliminary injunction against Defendants fails on jurisdictional grounds.

## II. Plaintiffs Fail to State a Claim Upon Which Relief Could Be Granted.

Plaintiffs do not contend that they are likely to succeed on the merits of their Voting Rights Act claim. Rather, they solely rely on their constitutional claims to attempt to satisfy the likelihood of success requirement.[3] *See* Pls.' Mot. for Preliminary Injunction ("Pls.' Mot.") at 6-8 [ECF No. 8]. However, as more fully explained in Defendants' Motion to Dismiss, even if Plaintiffs had standing—which they do not—Plaintiffs have failed to state a claim for relief under either the First or Fourteenth Amendments. ECF No. 20 at 21-26.

---

[3] Plaintiffs also mention the National Voter Registration Act ("NVRA") as a potential justification for entering a preliminary injunction. *See, e.g.*, Pls.' Mot. at 8. But as Plaintiffs acknowledge, they have not yet alleged any NVRA claims. *See id.* at 8 n.5. Moreover, entering a preliminary injunction based on an as-yet-unasserted NVRA claim would completely undermine the pre-suit notice requirement and 90-day cure period required by statute. *See* 52 U.S.C. § 20510(b)(2). Accordingly, the NVRA cannot support Plaintiffs' motion.

In order to succeed on these claims, Plaintiffs must demonstrate that "'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' [outweighs] 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 420 U.S. 780, 789 (1983)). Plaintiffs' alleged burdens are—at most— inconveniences that are well within the bounds of permissible regulations that have passed constitutional muster. *See, e.g.*, *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 198-99 (2008). With respect to the interest at stake, "[t]here is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters." *Id.* at 196.[4] Accordingly, as explained in Defendants' Motion to Dismiss, Plaintiffs have failed to plead—and cannot succeed on—their First and Fourteenth Amendment claims. ECF No. 20 at 21-26. Thus, even if Plaintiffs had standing, their request for a preliminary injunction fails for the independent reason that they cannot demonstrate a likelihood of success on the merits.

Plaintiffs rely heavily on a list maintenance program that occurred in Florida, but for several reasons, Plaintiffs' reliance on the Florida program is misplaced. *See* Pls.' Mot. at 6-7. First, the Florida program commenced just a few months before statewide primary elections. *See* Exhibit, *Arcia v. Detzner*, No. 1:12-cv-22282-WJZ (S.D. Fla. filed Sept. 26, 2012) [ECF No. 79-2] (indicating that a preliminary list of names would be sent on April 3, 2012). Also, the chief elections officer disseminated the list to election supervisors "with a detailed set of instructions—or at least suggestions—on how to use the list." *United States v. Florida*, 870 F. Supp. 2d 1346,

---

[4] Indeed, even Plaintiffs agree that "preventing noncitizen voter registration may be a legitimate state interest." ECF No. 8 at 6.

1347 (N.D. Fla. 2012). They were instructed, for example, to contact and investigate the individuals identified on the list. Exhibit 2 at 2, *Arcia*, No. 1:12-cv-22282-WJZ [ECF No. 79-2] ("Please remember that you are still responsible for contacting these individuals and going through the process of verifying citizenship status before making a determination of eligibility for voter registration.").

The federal government and private plaintiffs sued to enjoin the Florida program. Neither was successful in the district court. In the litigation brought by the federal government, the district court rejected the argument that the Florida program violated the National Voter Registration Act's (NVRA) prohibition against list maintenance practices intended to systemically remove ineligible voters from the rolls within 90 days of an election. The court found that the 90-day quiet period prevented the removal on grounds that arise after an initial *proper* registration. *Florida*, 870 F. Supp. 2d at 1350. Thus, the Florida program did not violate this portion of the NVRA because the quiet period did not apply to the revocation of a *noncitizen's* improper registration. *Id*. The court explained that the NVRA imposed no time limitations on when a state could remove noncitizens from the voter rolls to protect election integrity. It noted that a state "can and should" block noncitizens "on the front end" and prevent them "from registering in the first place." *Id*. And the court added that states should remove noncitizens registered in error "well in advance" of an election. *Id.* "But the NVRA," the court concluded, "does not require a state to allow a noncitizen to vote just because the state did not catch the error more than 90 days in advance." *Id*.

The federal government also alleged the Florida program violated the NVRA's provision requiring state voter maintenance programs to be "uniform" and "nondiscriminatory." But the court did not reach the merits of that claim because Florida had suspended the program. *Id*. at

1351.[5] It opined, nevertheless, that a "program that accurately identifies noncitizens who are registered to vote without unnecessarily challenging citizens could meet the requirement of uniformity and nondiscrimination." *Id*.

The private plaintiffs also were unsuccessful in stopping the Florida program in a separate lawsuit at the district court. The district court read the NVRA's 90-day provision in the same way that the court had in the lawsuit brought by the federal government and concluded that the states were not required to sit idly on the sidelines as an election nears. It similarly held that the quiet period did not apply to the removal from the voter rolls of noncitizens who were improperly registered in the first place. *Arcia v. Detzner*, 908 F. Supp. 2d 1276, 1281-83 (S.D. Fla. 2012). The court had no occasion to address whether the Florida program was uniform and nondiscriminatory because private plaintiffs did not bring a claim under this portion of the NVRA. *See id.*

The Florida program and related litigation does not apply to this case. Plaintiffs do not seek to enjoin Secretary Whitley's Election Advisory under the NVRA. In addition, Secretary Whitley issued the advisory well in advance of the NVRA's quiet period. This is important because the Election Advisory contemplates an iterative process involving collaboration between the State and counties to assist counties in fulfilling their investigative role. Unlike the Florida program, which was accompanied by specific instructions about contacting individuals identified on the list, the Election Advisory does not mandate an investigation of any voter. The Secretary of State's office

---

[5] The court speculated that the Florida Secretary's program "probably ran afoul" of this provision of the NVRA while it was being pursued as the Florida Secretary's "proposal was to send letters to the listed individuals requiring a response and ultimately to require them to provide documentation of their citizenship." *Id.* at 1350. The Court did not rule on that issue, however, as the program had already been suspended. Moreover, unlike the Florida program, Secretary Whitley's program envisions an iterative process whereby local election officials would make individualized determinations about the need to investigate the eligibility of voters on the lists. It does *not* contemplate—and has not engendered—indiscriminate mass mailings by local election officials to persons whose names appeared on the lists.

has acted merely as a conduit of information, in accordance with the office's constitutional and statutory mandates. *See, e.g.*, Tex. Const. art. 4, § 21; Tex. Elec. Code §§ 31.001, 31.003-.004.

Texas law further requires mandatory disclosure of personal information contained in DPS motor vehicle records in connection with the maintenance of accurate voter rolls. Tex. Transp. Code § 730.005(9). Pursuant to this legislative directive, Secretary Whitley obtained information from DPS and disseminated the matching data with specific instructions that the registrars were to make independent determinations and could **"take no action** on the voter record if the voter registrar determines that there is no reason to believe the voter is ineligible." Election Advisory at 2 (emphasis added). The Election Advisory simply provides additional information to voter registrars throughout the State—at the behest of the Legislature—to help election officials discharge their obligations to safeguard the integrity of the State's voter rolls by preventing ineligible persons from casting votes. The Secretary of State's actions are lawful.

### III. Plaintiffs' Alleged Injuries Are Not Irreparable.

Defendants' alleged actions cause no injury—irreparable or otherwise—to Plaintiffs. Plaintiffs' theory of injury requires a "speculative chain of possibilities" before any actual harm may result. *Clapper v. Amnesty Int'l U.S.A*., 568 U.S. 398, 414 (2013) (rejecting a standing theory premised on numerous assumptions about how the statute might be enforced). First, the registrar would have to send a Notice of Examination based on a reasonable belief that each is ineligible to vote. Tex. Elec. Code § 16.033(b). Registrars are prohibited from unilaterally removing a voter from the rolls without notice. Tex. Elec. Code § 16.033(c)-(d). And Secretary Whitley emphasized that the matches were "weak" matches, and that registrars could not take action to cancel registrations based on the DPS data alone. Election Advisory at 2.

Second, the notice would either have to go undelivered—despite the fact that it must be sent by forwardable mail to the recipient's listed address and all other addresses known to the registrar—or the recipient would have to fail to submit a timely response. Tex. Elec. Code § 16.033(c)-(d). But for notices that are sent and properly delivered, the recipient could respond by emailing, delivering, mailing, or faxing proof of citizenship to the registrar. *Id.* § 1.007.

Third, if an eligible voter were removed from the rolls in error, Texas law provides for immediate reinstatement following receipt of information establishing proof of citizenship. *Id.* § 16.037(d). And if an eligible voter is not reinstated before voting begins, he or she can still vote provisionally and be reinstated by providing proof of citizenship at any time before the provisional ballots are counted. *Id*; *see also* Tex. Elec. Code § 63.011 (requiring provisional ballots).

Contrary to Plaintiffs' conjectural claims of injury, Defendants' actions and the matching process described in the Election Advisory do not impair the ability to register or the right to vote. Rather, the Secretary of State's office has merely provided additional tools to help registrars maintain accurate voter rolls. The Election Advisory unequivocally advises the registrar to "determin[e] whether or not the information provides the registrar with reason to believe the person is no longer eligible for registration." *Id*. at 2. There is no harm from Secretary Whitley sharing data with the local officials who are responsible under state law for investigating voter eligibility. Tex. Elec. Code § 16.033. And Attorney General Paxton is not even remotely connected to any potential injury because the Office of Attorney General has no authority to conduct list maintenance or remove registered voters from voting lists. *See* Tex. Elec. Code § 273.001 *et seq.*

Plaintiffs claim that the matching process imposes "severe burdens" because registrars could require some registered voters to submit proof of eligibility. *See* Pls.' Mot. at 9. This argument "would subject virtually every electoral regulation to strict scrutiny, hamper the ability

of the States to run efficient and equitable elections, and compel federal courts to rewrite state electoral codes." *Crawford*, 553 U.S. at 197. The Supreme Court has already established that ordinary measures required to prove voting eligibility do not qualify as a substantial burden on the right to vote, or even represent a significant increase over the usual burdens of voting. *Id*. at 198-99. Moreover, the inconvenience associated with gathering official documents is slight when compared with the necessity to protect "public confidence" in the electoral system by adopting safeguards "to deter and detect [election] fraud." Jimmy Carter and James A. Baker III, Building Confidence in U.S. Elections § 2.5 at 18 (Sept. 2005), *available at* https://www.eac.gov/assets/1/6/Exhibit%20M.PDF. And, as already explained, Texas law provides several statutory safety valves to ensure that eligible voters who are removed from the rolls in error can be reinstated immediately at any time before provisional votes are counted.

None of Plaintiffs' evidence attached to their motion changes that, and Plaintiffs will not establish at the February 19th hearing that they will be irreparably injured absent a preliminary injunction. Thus, the Election Advisory will not cause irreparable harm to any of voters, and there is no need for the "extraordinary remedy" of a preliminary injunction. *Steen*, 732 F.3d at 386.

## IV. Injunctive Relief Would Impose a Substantial Burden on Defendants and Would Significantly Compromise the Public's Interest in the Integrity of the Electoral Process.

Finally, the Court must consider whether Plaintiffs' "substantial injury outweighs the threatened harm to the party to be enjoined" and whether "granting the preliminary injunction will not disserve the public interest." *Steen*, 732 F.3d at 386. Both factors weigh against the entry of a preliminary injunction as Plaintiffs' requested relief would both impose a severe burden on Defendants and disserve the public interest. None of Plaintiffs' evidence can establish otherwise, which is a sufficient reason for the Court to deny Plaintiffs' motion. *Id.*; *Lakey*, 667 F.3d at 574.

U.S. citizenship is a requirement for voter eligibility in Texas. Tex. Elec. Code § 11.002(a)(2). Secretary Whitley has an obligation to ensure that Texas election laws are being enforced throughout the State, including the citizenship requirement. *See, e.g.*, Tex. Elec. Code § 31.003. The Texas legislature directed DPS to provide data to the Secretary of State. Tex. Transp. Code § 730.005(9). But according to Plaintiffs, the public interest would be served by *preventing* Defendants from fulfilling their duties to safeguard the validity of elections in Texas, and by *prohibiting* Defendants from maintaining the integrity of voter rolls. Plaintiffs' position is plainly at odds with the democratically expressed will of the people as evidenced by state law.

Moreover, Plaintiffs' requested injunction is simply unworkable. The matching process outlined in the Election Advisory is an iterative and collaborative process. Halting it now would end that collaboration and disrupt the State's list maintenance activities, which are authorized by law. Plaintiffs ask this Court to require Defendants to make new, unknown public statements and "rescind" previous ones, creating more confusion and disruption. Plaintiffs also ask this Court to order Defendants to take actions in excess of their statutory authority—direct the activities of voter registrars, local officials with sole authority and responsibility for removing individuals from voter rolls for non-citizenship. *See* Pls.' Mot. at 12-13. And Plaintiffs ask this Court to prohibit the State's election officials from acting on any information provided pursuant to the Election Advisory's matching process, even if it means knowingly allowing unqualified voters to remain on the rolls. Such a result would impose an intolerable burden on Defendants and the State of Texas and disserve the public interest in maintaining the integrity of the democratic process.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court deny Plaintiffs' Motion for Preliminary Injunction.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFERY C. MATEER
First Assistant Attorney General

RYAN BANGERT
Deputy Attorney General for Legal Counsel

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Associate Deputy for Special Litigation
Texas Bar No. 00798537
TODD LAWRENCE DISHER
Special Counsel for Civil Litigation
Texas Bar No. 24081854
MICHAEL TOTH
Special Counsel for Civil Litigation
Texas Bar No. 24100608
ROLA DAABOUL
Assistant Attorney General
Texas Bar No. 24068473
CHRISTOPHER D. HILTON
Assistant Attorney General
Texas Bar No. 24087727

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
FAX: (512) 320-0667
Patrick.Sweeten@oag.texas.gov
Todd.Disher@oag.texas.gov
Michael.Toth@oag.texas.gov
Rola.Daaboul@oag.texas.gov
Christopher.Hilton@oag.texas.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on **February 14, 2019**, and that the person(s) identified below was served by CM/ECF:

Danielle M. Lang*
Mark P. Gaber*
**Campaign Legal Center**
1411 K Street NW, Suite 1400
Washington, DC 20005
dlang@campaignlegal.org
mgaber@campaignlegal.org

*motions for admission pro hac vice Forthcoming*

Renea Hicks
**Law Office of Max Renea Hicks**
P.O. Box 303187
Austin, TX 78703
rhicks@renea-hicks.com

David Richards
**Richards, Rodriguez & Skeith LLP**
816 Congress Avenue, Suite 1200
Austin, TX 78701

Luis Roberto Vera, Jr.
General Counsel
**Law Offices of Luis Roberto Vera, Jr. & Associates**
1325 Riverview Towers
111 Soledad
San Antonio, TX 78205-2260
lrvlaw@sbcglobal.net

Chad W. Dunn
K. Scott Brazil
**Brazil & Dunn**
3303 Northland Drive, Suite 205
Austin, TX 78731
chad@brazilanddunn.com

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN