# EXHIBIT 84

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **JULIETA GARIBAY**, *et al.* | § | |
| | § | |
| **vs.** | § | **Civil Action No. 2:19-cv-00040** |
| | § | |
| **DAVID WHITLEY**, *et al.* | § | |

**DECLARATION OF REMI GARZA**
**IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER**

| | |
|---|---|
| STATE OF TEXAS | § |
| COUNTY OF CAMERON | § |

1.  My name is Remi Garza, and I am the Elections Administrator for Cameron County.   In that role, I am responsible for the daily operation of the Cameron County Department of Elections & Voter Registration and coordination of all electoral functions on behalf of the county.  I also serve as the county's Voter Registrar.  I was appointed to this position in July 2015.

2.  The Cameron County Department of Elections & Voter Registration administers local, state and federal elections and is operational year-round as it conducts an array of electoral duties including but not limited to voter registration. My office has about twelve (12) employees, of which about five (5) work in the area of voter registration.

3.  Currently, there are about two hundred and three thousand eight hundred and seventy-four (203,874) registered voters in Cameron County.

4.  In connection with my duties as voter registrar for Cameron County, I am an advocate for measures that protect the right to vote and increase participation among eligible voters. In

conjunction with those measures, I also seek to ensure that those who are not eligible to vote are not maintained on the voter registration rolls.

5.   On January 25, 2019, I received an advisory by electronic delivery from Keith Ingram, Director of Elections at the Office of the Texas Secretary of State ("SOS").  It was numbered Advisory No. 2019-02, and the subject was "Use of Non- U.S. Citizen Data obtained from the Department of Public Safety."  The SOS Advisory can be found at https://www.sos.texas.gov/elections/laws/advisory2019-02.shtml

6.   The SOS Advisory stated that the SOS's office had been working for approximately ten months with the Texas Department of Public Safety ("DPS") and had developed a list of names of people "who provided documentation to DPS showing that the person is not a citizen of the United States during the process of obtaining or acquiring a Texas Driver License or Personal Identification Card from DPS."  The SOS Advisory indicated that it had performed some kind of matching of the DPS records with the voter registration list that is maintained on a statewide basis by the SOS.  The SOS Advisory indicated that, starting the next day (on January 26, 2019), the SOS would send counties lists of voters identified as non-citizens by DPS.

7.   The SOS Advisory stated that the goal of the matching process was to provide "actionable information" to counties and further advised that "we believe the data we are providing can be acted on in nearly all circumstances."

8.   On or about January 28, 2019, my office received a list electronically from the SOS that purported to show the names of one thousand six hundred and twenty-two (1,622) people who are registered to vote in Cameron County and who were identified as possible non-U.S. citizens through the SOS/DPS matching process.  A summary list provided to the

2

media released at that time, but not provided to Cameron County by the SOS office, purported to show that nine hundred and fifty-one (951) of those possible non-U.S. citizens had voted in an election.

9.  The SOS's office produced the information to me in a text file format. This information was difficult to work with in its original format. Even after it is imported into the County's Voter Registration System, not all the information was accessible by our software.   We were able to convert the information into an Excel spreadsheet, but the fields are not clearly defined and the information is not consistent throughout the fields.

10.  On Tuesday, January 29, 2019, I received a phone call from an official with the SOS, who informed me that since sending out the list, the SOS had discovered that the list included the names of U.S. citizens who had registered to vote at DPS. The Secretary of State did not identify the names of the persons on the list that should be removed from it because they were, in fact, citizens; however, the SOS did provide us with the source code on these records to help us identify them for removal from the list.  This was source code 64.  The source code is placed on the voter rolls by the Secretary of State.  Cameron County only has source code 64 data when the Secretary of State provides it to our office. Based on the source code information provided by the Secretary of State, my office identified and removed approximately three hundred (300) individuals that the Secretary of State had inaccurately identified as possible non-U.S. citizens.

11.  Also during this call, the SOS's office confirmed that the list we received may include voters who were not citizens at the time that they applied for a driver's license but have since become citizens.   There is not a code on these records to help us identify persons who became citizens after they applied for a driver's license or identification card.

12. On Tuesday, January 29, 2019, the SOS contacted me to say that one thousand five hundred and ninety-two (1,592) people should not have been on the list. However, the SOS called again several hours later to tell me that number was incorrect and that the original list contained code 64's. They could not tell me how many were included on my list. This was confusing.

13. On February 2, 2019, Cameron County completed an initial review of 1,322 additional voter registration records to determine if there was information that indicated the voter registered at a naturalization ceremony.   As a result of that review, Cameron County identified and removed approximately 132 additional individuals who may have been incorrectly identified as possible non-U.S. citizens on the list sent by the SOS.  However, this review process is incomplete and there may yet be a significant number of individuals who were registered at a naturalization ceremony. Cameron County staff does not attend these ceremonies, nor does it have a method to identify applications that turned in by volunteer deputy registrars. Primarily an advocacy group, Proyecto Juan Diego, attends these events to register naturalized citizens in Cameron County. Between the years of 2012 and 2018, they have collected well over 4,322 applications during these ceremonies. We will have to compare multiple submissions over these years to determine if an application was submitted during a naturalization ceremony.

14. This means that so far, Cameron County has identified approximately 432 U.S. citizens, or approximately 27%, who were incorrectly identified as possible non-U.S. citizens by the SOS on its original list. We are continuing to review the records.  I am concerned that if we had sent Notice of Examination letters to the 1,190 U.S. citizens whose names the

SOS provided to us, these voters would have potentially been removed from the rolls or discouraged from voting.

15. During my January 29, 2019 phone call, I asked the Secretary of State's office if they would re-issue a corrected report. The Secretary of State's office responded by saying that they did not know if they were going to, but they would ask. I have not received a response back nor have I received an updated list.

16. Some new U.S. citizens register to vote in the weeks and months after their naturalization ceremony, including by mail or with volunteer deputy registrars at community events. Cameron County does not have records that would allow us to definitively confirm the U.S. citizenship of these voters.

17. On Friday, February 2, 2019, I was further informed in writing (delivered electronically) by the SOS that my office should undertake to check for the U.S. citizenship status of those remaining on the SOS list before sending out what the SOS Advisory called the Notice of Examination for Citizenship (Proof of Citizenship) Letter ("NCE") and that the SOS Advisory had stated local registrars could send out in response to the original list.

18. Since delivery of the SOS Advisory, which was accompanied by significant publicity and news attention starting on the day it was delivered, my office has received inquiries from those who anticipated that they were on the original list but should not have been because they in fact had become U.S. citizens between the time of obtaining their DPS driver license (or identification card) and registering to vote. These voters expressed concern about what the effect of being on the list would have on their being registered to vote and

able to vote in future elections and they sought to ensure that they would remain eligible to, and would be allowed to, vote.

19. My employees and I want to conduct proper list maintenance to ensure that non-U.S. citizens are not on the voter rolls. We also want to ensure that registering to vote by those eligible to vote is as seamless as possible, with the aim being to increase voter registration and ultimately voting by those who are eligible as much as reasonably possible. In response to the SOS Advisory, I will continue to work with those in my office to ensure that all of these goals are met and that only valid, verified data forms the basis for my office's actions.

20. Because the information provided by the SOS is not accurate, I am concerned about the validity of the process that has been set in motion by the SOS Advisory and the subsequent SOS communications about flaws in the data provided by the SOS. There may be other codes in the Secretary of State's data that will assist us with sorting records in order to analyze them. However, the sorting process will require a manual review by a member of our team. This review will allow us to compare the dates of each action taken by the voter and view every application.

21. This review will require a significant investment of resources by my office. I do not know how long it will take for us to complete this process. It will largely depend on what information we are able to locate to make the comparisons and what we find in the data. Our manual review to remove citizens from the list will include, at a minimum, the following steps:

- Determining if there is a valid voter registration record coded from DPS.

6

-   Determining if the voter was registered by a Volunteer Deputy Registrar at a naturalization ceremony in Cameron County or another county.

-   Determining if the Cameron County voter was registered at a naturalization ceremony in Cameron County or another county.

-   Determining if there are data entry errors where applicants checked the non-citizen box and were entered into the voter registration system, and the Texas Secretary of State verified the voter, resulting in an erroneous registration.

-   Determining if there are other agencies with available citizenship information that can be compared to existing voter registration records.

22. In my view, it would better serve the integrity of our election system if there was, and had been, more time and resources devoted by the SOS and those state officials with whom the SOS works to investigating and developing a validated process for obtaining accurate, up-to-date data on those who are possibly not U.S. citizens and who are on current voter registration rolls.

23. The factual statements in this declaration are within my personal knowledge.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct. Executed in Cameron County, Texas on the 25th day of February, 2019.

_____
Remi Garza