IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JULIETA GARIBAY, *et al.* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | Civil Action No. 5:19-cv-00159-FB |
| | § | |
| DAVID WHITLEY, *et al.* | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, Plaintiffs Julieta Garibay, *et al.* ("Plaintiffs") respectfully move the Court for leave to file a Second Amended Complaint, a copy of which is attached hereto as Exhibit A.  The proposed amended complaint adds factual developments that have occurred since the First Amended Complaint was filed, adds defendant counties that have sent purge letters to voters, and adds additional individual plaintiffs who have learned they are on the list of suspect voters issued by the Secretary of State.  Therefore, it is not filed for purposes of delay or in bad faith.   The proposed amended complaint maintains the same causes of action and prayer for relief as the First Amended Complaint.   Therefore, the amendment is not futile and defendants will not be prejudiced by the amendment.   Therefore, Plaintiffs respectfully request that their Motion be granted.

## BACKGROUND

On January 25, 2019, the Texas Secretary of State's office released Election Advisory No. 2019-02 ("the Advisory") to all voter registrars in Texas.[1]   The Advisory stated that the

---

[1] Election Advisory No. 2019-02, Texas Secretary of State (January 25, 2019), available at
https://www.sos.state.tx.us/elections/laws/advisory2019-02.shtml (last accessed Feb. 9, 2019).

Secretary of State's office, beginning the following day, would provide to Texas counties actionable information about "individuals who provided documentation to [the Department of Public Safety (DPS)] showing that the person is not a citizen of the United States during the process of obtaining or acquiring a Texas Driver License or Personal Identification Card from DPS." *Id.* The Texas Secretary of State further instructed the registrars to use the information about the purported non-U.S. citizens to investigate those voters, including by sending a Notice of Examination requiring the voters to provide documents to prove their U.S. citizenship. *Id.* The Texas Secretary of State's office also published a news release on January 25, 2019 announcing that Secretary of State David Whitley "issued an advisory to county voter registrars regarding voter registration list maintenance activities, which include identifying any non-U.S. citizens registered to vote in the State of Texas."[2] After the Texas Secretary of State issued the Advisory and press release, the voter purge was widely covered by local and national news outlets.[3]

Since the Texas Secretary of State sent the list of suspected non-U.S. citizen voters to the counties, the Secretary of State has quietly informed the counties that the data is flawed.[4]

---

[2] *Secretary Whitley Issues Advisory On Voter Registration List Maintenance Activity*, Texas Secretary of State (Jan. 25, 2019), available at https://www.sos.texas.gov/about/newsreleases/2019/012519.shtml (last accessed Jan. 30, 2019).

[3] *See, e.g.*, Liam Stack, *Many Texas Voters Whose Citizenship Was Questioned Are in Fact Citizens*, New York Times (Jan. 29, 2019), available at  https://www.nytimes.com/2019/01/29/us/texas-voter-citizenship-list.html (accessed Jan.30, 2019); Alexa Ura, *Some Texas voters already are being asked to prove their citizenship after state's announcement*, The Texas Tribune (Jan. 28, 2019), available at https://www.texastribune.org/2019/01/28/some-texas-voters-are-already-being-asked-prove-their-citizenship-foll/ (last accessed Feb. 1, 2019).

[4] *See, e.g.*, Morgan Gstalter, *More than 300 people on Texas voter list of potential noncitizens are citizens: report*, The Hill (Feb. 1, 2019), https://thehill.com/homenews/state-watch/428005-more-than-300-people-on-local-texas-voter-list-of-potential-noncitizens (last accessed Feb. 9, 2019); Guillermo Contreras and Dylan McGuinness, *State hedges on claim that 100,000 Texas voters aren't citizens, faces federal lawsuit*, San Antonio Express-News (Jan. 29, 2019), https://www.expressnews.com/news/local/article/LULAC-sues-Texas-over-witch-hunt-move-to-13570848.php?utm_source=newsletter&utm_medium=email&utm_campaign=MySA_Daily_eEdition (last accessed Feb. 9, 2019); James Barragán, Julieta Chiquillo, and Robert T. Garrett, *Some names in list of 98,000 potential non-citizen voters included 'in error,' county officials say, citing state*, Dallas News powered by the Dallas-Morning News (January 29, 2019), https://www.dallasnews.com/news/elections/2019/01/29/list-98000-potential-non-citizen-voters-may-overstated-texas-secretary-state-tells-counties (last accessed Feb. 9, 2019).

Despite public calls for him to rescind the list of suspected non-U.S. citizen voters,[5] the Secretary of State has neither withdrawn the list of suspect voters nor advised the counties to refrain from acting on the flawed information.  A number of counties acted on the Election Advisory by sending letters to registered voters challenging their U.S. citizenship and notifying them that they have 30 days to provide proof of U.S. citizenship or the county will remove their names from the voter rolls.[6]

On February 2, 2019, Plaintiffs filed this action in the U.S. District Court for the Southern District of Texas on behalf of voters who were singled out for investigation and removal from the voter rolls by the Texas Secretary of State.  *Garibay, et al. v. Whitley, et al.*, No. 2:19-cv-00040 (S.D. Tex.) ECF 1.[7]  Plaintiffs also included three plaintiff organizations whose mission and resources are affected by defendants' actions.  *Id.*

On February 7, 2019, the Texas Secretary of State testified before the Texas Senate during his confirmation hearing and refused to say that he would withdraw his list of suspected non-U.S. citizen voters despite the fact that there are U.S. citizens on the list.[8]  He also confirmed that the voters on his list are still under investigation:  "[t]his maintenance activity is on-going . . . the counties don't have a timeline when they are completing this maintenance activity . . . we are working with them every day on it."[9]  On February 10, 2019, Plaintiffs amended their

---

[5] Carlos Sanchez, *Former Texas Secretary of State Believes Inaccurate Voting List Should Be Rescinded*, Texas Monthly (Jan. 31, 2019), available at https://www.texasmonthly.com/politics/former-texas-secretary-of-state-believes-inaccurate-voting-list-should-be-rescinded/ (last accessed Feb. 9, 2019).
[6] *See, e.g.,* LouAnna Campbell, *Smith County elections office looking into 297 possible non-U.S. citizens registered to vote*, Tyler Morning Telegraph (Jan. 29, 2019), available at
https://tylerpaper.com/lifestyle/family/smith-county-elections-office-looking-into-possible-non-u-s/article_f9f05224-23db-11e9-afd9-13f3df5be3b5.html  (last accessed Feb. 8, 2019).
[7] This case was transferred to the U.S. District Court for the Western District of Texas on February 19, 2019.  *Id.* at ECF 15.
[8] *Senate Committee on Nominations on February 7, 2019*, The Texas Senate Audio/Video Archive – 2019 (timestamp: 2:48:59-2:51:00) (Feb. 7, 2019) available at
http://tlcsenate.granicus.com/MediaPlayer.php?view_id=45&clip_id=13804 (last accessed Feb. 8, 2019).
[9] *Senate Committee on Nominations on February 7, 2019*, The Texas Senate Audio/Video Archive – 2019 (timestamp: 46:03 – 46:15 and 1:32:48-1:33:15) (Feb. 7, 2019) available at
http://tlcsenate.granicus.com/MediaPlayer.php?view_id=45&clip_id=13804 (last accessed Feb. 8, 2019).

complaint to add new factual developments in the case and additional individual and organizational plaintiffs affected by defendants' actions, as well as additional defendants who are county officials. *Id.* ECF 4.

Since Plaintiffs filed their First Amended Complaint, there have been additional factual developments in the case, including statements made by state officials related to the Advisory. In addition, the proposed new individual plaintiffs have learned they are on the list of suspect voters, and Plaintiffs have learned that the proposed new county defendants have acted on the Advisory and issued letters to voters requiring proof of citizenship. Plaintiffs now seek to amend their complaint to plead these factual developments and to add additional individual plaintiffs and county defendants.

## ARGUMENT

Under Federal Rule of Civil Procedure 15(a)(2), the Court "should freely give leave when justice so requires." It is well-established that

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . —the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal citation omitted). The decision whether to grant leave to amend a pleading is within the sound discretion of the district court. *Id*.

Here, good cause exists because there have been significant factual developments since Plaintiffs filed their First Amended Complaint. New individuals have received letters from their counties and learned they are on the list of suspect voters issued by the Secretary of State. *See* Ex. A. Since Plaintiffs filed their First Amended Complaint, state officials, including Secretary Whitley, have also testified before the Texas Legislature, sent additional emails to county registrars and written letters to lawmakers regarding the Advisory. *Id*. The proposed amended

complaint merely seeks to add these new factual developments and individual plaintiffs and defendants.  Therefore, the amendment is not futile, and is not being filed for purposes of delay or in bad faith.  The proposed amended complaint maintains the same causes of action and prayer for relief as in the First Amended Complaint.  Therefore, the amendment will not prejudice Defendants.

## CONCLUSION

For the reasons identified above, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Leave to File Second Amended Complaint.

Dated:  February 20, 2019                        Respectfully Submitted,

**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**
By: */s/ Nina Perales*
Nina Perales (Tex. Bar No. 24005046)
Ernest I. Herrera (Tex. Bar No. 24094718)
Alejandra Ávila (Tex. Bar No. 24089252)*
Jack Salmon (Tex. Bar No. 24068914)
110 Broadway, Suite 300
San Antonio, Texas 78205
Phone:  (210) 224-5476
Facsimile:  (210) 224-5382
Email: nperales@maldef.org
*(*Pro Hac Vice application pending)*

Attorneys for Plaintiffs

## CERTIFICATE OF CONFERENCE

I, the undersigned, hereby certify that, on the 20th day of February, 2019, I emailed counsel for State Defendants as well as counsel for Galveston, Austin, Wood and Smith Counties and requested their position on the above and foregoing document.  No counsel responded to my email.

/s/ *Nina Perales*
Nina Perales

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on the 20th day of February, 2019, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.  I also emailed a copy of the above and foregoing document to the following attorneys for County Defendants: ckirby@angelinacounty.net (Angelina); Jesse.Skinner@austincounty.us (Austin); jlindig@banderacounty.org (Bandera); coatty@co.blanco.tx.us (Blanco); natalie@koehlerlawfirm.net (Bosque); randerson@brazoscountytx.gov (Brazos); e.magee@allison-bass.com (Galveston); GCDA@co.gregg.tx.us (Gregg); hstebbins@co.kerr.tx.us (Kerr); twilso@smith-county.com (Smith); STYLER@VCTX.ORG (Victoria); annette.hinojosa@co.willacy.tx.us (Willacy); aalbers@mywoodcounty.com (Wood).

/s/ *Nina Perales*
Nina Perales

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JULIETA GARIBAY, MARIA YOLISMA** | § | |
| **GARCIA, LORENA TULE-ROMAIN,** | § | |
| **ABRAHAM JOSUE ESPINOSA FLORES,** | § | |
| **VIRIDIANA TULE CARRIZALES, EFREN** | § | |
| **GOMEZ, MARIA FELICITAS BARBOSA,** | § | |
| **JANE DOE #1, JANE DOE #2, JOHN DOE #1** | § | |
| **ELENA KEANE, HILDA CASTILLO, and** | § | |
| **MARTINE HUMMEL on behalf of themselves** | § | |
| **And all others similarly situated; SOUTHWEST** | § | |
| **VOTER REGISTRATION PROJECT,** | § | |
| **MI FAMILIA VOTA EDUCATIONAL FUND,** | § | |
| **LA UNIÓN DEL PUEBLO ENTERO, and** | § | |
| **UNIDOSUS,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **Civil Action No. 5:19-cv-159** |
| **vs.** | § | |
| | § | |
| **DAVID WHITLEY, in his official capacity** | § | |
| **as Texas Secretary of State, KEN PAXTON, in** | § | |
| **his official capacity as Texas Attorney General,** | § | |
| **GREG ABBOTT, in his official capacity as** | § | |
| **Governor of Texas, KIM RINN, in her official** | § | |
| **capacity as Austin County Tax Assessor-** | § | |
| **Collector, CHERYL E. JOHNSON, in her** | § | |
| **official capacity as Galveston County Tax** | § | |
| **Assessor-Collector, KAREN NELSON, in her** | § | |
| **official capacity as Smith County Elections** | § | |
| **Administrator, LAURA WISE, in her** | § | |
| **official capacity as Wood County Elections** | § | |
| **Administrator, CONNIE BROWN, in her** | § | |
| **official capacity as Angelina County Elections** | § | |
| **Administrator, GWENDA L. TSCHIRHART,** | § | |
| **in her official capacity as Bandera County Tax** | § | |
| **Assessor-Collector, KRISTEN SPIES, in her** | § | |
| **official capacity as Blanco County Tax Assessor-** | § | |
| **Collector, CRYSTAL DENMAN, in her official** | § | |
| **capacity as Bosque County Elections** | § | |
| **Administrator, TRUDY HANCOCK, in her** | § | |
| **official capacity as Brazos County Elections** | § | |
| **Administrator, KATHRYN NEALY, in her** | § | |

**official capacity as Gregg County Elections** §
**Administrator, BOB REEVES, in his official** §
**capacity as Kerr County Tax Assessor-Collector,** §
**VICKI T. VOGEL, in her official capacity as** §
**Victoria County Elections Administrator, and** §
**MARY HOPE BARRERA, in her official** §
**capacity as Willacy County Elections** §
**Administrator,** §
        §
        **Defendants.** §


## SECOND AMENDED CLASS-ACTION COMPLAINT

        This class action is filed by U.S. citizens and registered voters of Texas who have been singled out for investigation and removal from the voter rolls by the Texas Secretary of State because they were born outside the United States.  These individual Plaintiffs, on behalf of themselves and a class of similarly-situated individuals, seek declaratory and injunctive relief to protect the right of eligible citizens to vote and prevent Texas officials from taking action against them because of their national origin, race and/or color.  Individual Plaintiffs are joined by organizations committed to increasing voter registration and participation of Latinos in the political process and whose missions have been compromised by Defendants' actions.

## INTRODUCTION

1. On January 25, 2019, the Office of the Texas Secretary of State issued an Election Advisory to county voter registrars announcing that it would send them "actionable information" about registered voters who "provided documentation . . . showing that the person is not a citizen of the United States."

2. The Texas Secretary of State further instructed the registrars to use the information about the purported non-U.S. citizens for voter roll maintenance, including requiring the voters to provide documents to prove their U.S. citizenship.

3.   The Texas Secretary of State compiled its list of suspect voters from information provided by the Texas Department of Public Safety about individuals who were non-U.S. citizens in the past.  These individuals obtained driver's licenses or state identification cards when they were non-U.S. citizens authorized to live in the United States.  The Texas driver's licenses issued to lawful permanent resident immigrants are valid for six years.  During this time period most lawful permanent resident immigrants become eligible to naturalize and register to vote.

4.   The Texas Secretary of State is well aware that the 98,000 voters whose names he sent to counties as "Possible Non U.S. Citizens" include tens of thousands of naturalized U.S. citizens.  Since sending the records of naturalized citizen voters to the counties, the Secretary of State's office has contacted the counties to advise them that the data is flawed.  However, the Secretary of State has neither withdrawn the list of suspect voters nor advised the counties to refrain from acting on the flawed information.  Austin County, Galveston County, Smith County, Wood County, Angelina County, Bandera County,  Blanco County, Bosque County, Brazos County, Gregg County, Kerr County, Victoria County and Willacy County voter registrars acted on the Election Advisory and sent letters challenging the U.S. citizenship of registered voters whose names were sent to them from the Secretary of State.

5.   Plaintiffs seek a declaration that Defendants' targeting of them for investigation and removal from the voter rolls, based only on the fact that they were born outside the United States, violates the First and Fourteenth Amendments and the federal Voting Rights Act. Plaintiffs further seek damages and a declaration that Defendant Texas officials conspired to violate their rights by coordinating an unfounded voter purge campaign with threats of criminal prosecution aimed at naturalized citizen voters.   Plaintiffs further seek an

injunction requiring Defendants to cease the purge by withdrawing the list of suspect voters and the challenge letters sent to them, as well as reinstating the registration of any voters removed from the rolls for failure to respond to the purge letters.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and § 1343 over Plaintiffs' causes of action under the United States Constitution and federal statutes. This Court may grant Plaintiffs' request for declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because: (1) State Defendants (in their official capacities) reside in Austin, Texas, which is within the Western District of Texas, (2) Defendant voter registrars of Blanco, Bandera, Bosque and Kerr counties reside (in their official capacities) in the Western District of Texas, (3) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, and (4) Plaintiffs Garibay, Tule Carrizales, Gomez and Hummel reside in the Western District of Texas and no real property is involved in this action.

## PARTIES

**Plaintiffs**

8. Plaintiff Julieta Garibay is a Latina resident and registered voter of Travis County, Texas. Plaintiff Garibay is a naturalized U.S. citizen whose personal information appears on the list of persons identified as non-U.S. citizens provided by Defendant Whitley to Travis County as actionable information for investigation and removal from the voter rolls.

4

9.  After she became a naturalized U.S. citizen, Plaintiff Garibay registered to vote in Travis County, Texas.  Plaintiff Garibay voted in the 2018 General Election.

10. On or about January 28, 2019, the Secretary of State placed her personal information on his list of suspected non-U.S. citizens and sent it to Travis County as actionable information for investigation and removal from the voter rolls.  Travis County informed Plaintiff Garibay in writing that it would investigate her U.S. citizenship in response to the list sent by Defendant Whitley.

11. Plaintiff Garibay is injured by having been placed on the Secretary of State's list of "Possible Non U.S. Citizens" and having her identifying information sent to the county in which she is registered to vote with instructions to use that information for investigation and possible removal of Plaintiff from the voter rolls.  Plaintiff Garibay is further injured by having been stigmatized as a person who might have registered to vote illegally. Plaintiff Garibay is further injured by being investigated for illegal registration and voting.

12. Plaintiff Jane Doe #1 is a Latina resident and registered voter of Smith County, Texas. Plaintiff Jane Doe #1 is a naturalized U.S. citizen whose personal information appears on the list of persons identified as non-U.S. citizens provided by Defendant Whitley to Smith County as actionable information for investigation and removal from the voter rolls.

13. After she became a naturalized U.S. citizen, Plaintiff Jane Doe #1 registered to vote in Smith County, Texas.  Plaintiff Jane Doe #1 voted in the 2018 General Election.

14. On January 31, 2019, the Smith County Elections Administrator's office sent a letter to Plaintiff Jane Doe #1 stating "there is reason to believe you may not be a United States citizen" and notifying her that if she fails to provide proof of citizenship within 30 days from the date of the letter, her voter registration will be cancelled.

15. Plaintiff Jane Doe #1 is injured by having been placed on the Secretary of State's list of "Possible Non U.S. Citizens" and having her identifying information sent to the county in which she is registered to vote with instructions to use that information for investigation and possible removal of Plaintiff from the voter rolls. Plaintiff Jane Doe #1 is further injured by having been sent a Notice of Examination letter by Smith County, by the threat of removal, and by removal from the voter roll if she does not provide proof of citizenship to Smith County. Plaintiff Jane Doe #1 is further injured by having been investigated for illegal registration and voting. Plaintiff Jane Doe #1 is further injured by having been stigmatized as a person who might have registered to vote illegally.

16. Plaintiff Jane Doe #2 is a Latina resident and registered voter of Wood County, Texas. Plaintiff Jane Doe #2 is a naturalized U.S. citizen whose personal information appears on the list of persons identified as non-U.S. citizens provided by Defendant Whitley to Wood County as actionable information for investigation and removal from the voter rolls.

17. After she became a naturalized U.S. citizen, Plaintiff Jane Doe #2 registered to vote in Wood County, Texas. Plaintiff Jane Doe #2 voted in the 2018 General Election.

18. On or about January 28, 2019, the Secretary of State placed her personal information on his list of suspected non-U.S. citizens and sent it to Wood County as actionable information for investigation and removal from the voter rolls.

19. On or about January 28, 2019, the Wood County Election Administrator's office sent a letter to Plaintiff Jane Doe #2 stating "there is reason to believe you may not be a United States citizen" and notifying her that if she failed to provide proof of citizenship within 30 days from the date of the letter, her voter registration would be cancelled. Plaintiff Jane

Doe #2 travelled to the Wood County elections office and showed her naturalization certificate to a clerk.

20. Plaintiff Jane Doe #2 is injured by having been placed on the Secretary of State's list of "Possible Non U.S. Citizens" and having her identifying information sent to the county in which she is registered to vote with instructions to use that information for investigation and possible removal of Plaintiff from the voter rolls. Plaintiff Jane Doe #2 is further injured by having been sent a Notice of Examination letter by Wood County and by the threat of removal from the voter rolls.  Plaintiff Jane Doe #2 is injured by having been required to provide proof of citizenship to Wood County in order to remain on the voter rolls.  Plaintiff Jane Doe #2 is further injured by having been subjected to an investigation into her citizenship status.  Plaintiff Jane Doe #2 is further injured by having been stigmatized as a person who might have registered to vote illegally.  Plaintiff Jane Doe #2 is further injured by being investigated for illegal registration and voting.

21. Plaintiff John Doe #1 is a Latino resident and registered voter of Smith County, Texas. Plaintiff John Doe #1 is a naturalized U.S. citizen whose personal information appears on the list of persons identified as non-U.S. citizens provided by Defendant Whitley to Smith County as actionable information for investigation and removal from the voter rolls.

22. After he became a naturalized U.S. citizen, Plaintiff John Doe #1 registered to vote in Smith County, Texas.  Plaintiff John Doe #1 voted in the 2016 and 2018 General Elections.

23. On January 31, 2019, the Smith County Elections Administrator's office sent a letter to Plaintiff John Doe #1 stating "there is reason to believe you may not be a United States citizen" and notifying him that if he fails to provide proof of citizenship within 30 days from the date of the letter, his voter registration will be cancelled.

24. Plaintiff John Doe #1 is injured by having been placed on the Secretary of State's list of "Possible Non U.S. Citizens" and having his identifying information sent to the county in which he is registered to vote with instructions to use that information for investigation and possible removal of Plaintiff from the voter rolls. Plaintiff John Doe #1 is further injured by having been sent a Notice of Examination letter by Smith County, by the threat of removal, and by removal from the voter roll if he does not provide proof of citizenship to Smith County.  Plaintiff John Doe #1 is further injured by having been investigated for illegal registration and voting.  Plaintiff John Doe #1 is further injured by having been stigmatized as a person who might have registered to vote illegally.

25. Plaintiff Elena Keane is a Latina resident and registered voter of Galveston County, Texas. Plaintiff Keane is a naturalized U.S. citizen whose personal information appears on the list of persons identified as non-U.S. citizens provided by Defendant Whitley to Galveston County as actionable information for investigation and removal from the voter rolls.

26. Plaintiff Keane registered to vote after she became a U.S. citizen.  On or about January 29, 2019, Plaintiff Keane received a voter challenge letter from Galveston County tax assessor Cheryl Johnson stating "there is reason to believe you may not be a United States citizen" and that Plaintiff Keane would be purged from the voter rolls unless she provided a certified copy of her citizenship papers within 30 days.

27. On or about January 31, 2019 Plaintiff Keane received a second letter from Galveston County tax assessor Cheryl Johnson stating that Plaintiff Keane had received the first letter in error "as a result of notification to us by the Texas Secretary of State (SOS) that you may not be a United States citizen."

28. Plaintiff Keane is injured by having been placed on the Secretary of State's list of "Possible Non U.S. Citizens" and having her identifying information sent to the county in which she is registered to vote with instructions to use that information for investigation and possible removal of Plaintiff from the voter rolls. Plaintiff Keane is injured by having been subjected to an investigation into her citizenship status, and by the letter requiring her to prove her U.S. citizenship. Plaintiff Keane is further injured by having been stigmatized as a person who might have registered to vote illegally. Plaintiff Keane is further injured by being investigated for illegal registration and voting.

29. Plaintiff Maria Felicitas Barbosa is a Latina resident and registered voter of Austin County, Texas. Plaintiff Barbosa is a naturalized U.S. citizen whose personal information appears on the list of persons identified as non-U.S. citizens provided by Defendant Whitley to Austin County as actionable information for investigation and removal from the voter rolls.

30. After she became a naturalized U.S. citizen, Plaintiff Barbosa registered to vote in Austin County, Texas. Plaintiff Barbosa voted in the 2016 and 2018 General Elections.

31. On or about January 28, 2019, the Secretary of State placed her personal information on his list of suspected non-U.S. citizens and sent it to Austin County as actionable information for investigation and removal from the voter rolls.

32. On or about January 28, 2019, the Austin County Tax Assessor-Collector sent a letter to Plaintiff Barbosa stating "there is reason to believe you may not be a United States citizen" and notifying her that if she failed to provide proof of citizenship within 30 days from the date of the letter, her voter registration would be cancelled. Plaintiff Barbosa travelled to the Austin County elections office and showed her naturalization certificate to a clerk.

33. Plaintiff Barbosa is injured by having been placed on the Secretary of State's list of "Possible Non U.S. Citizens" and having her identifying information sent to the county in which she is registered to vote with instructions to use that information for investigation and possible removal of Plaintiff from the voter rolls. Plaintiff Barbosa is further injured by having been sent a Notice of Examination letter by Austin County and by the threat of removal from the voter rolls.  Plaintiff Barbosa is injured by having been required to provide proof of citizenship to Austin County in order to remain on the voter rolls. Plaintiff Barbosa is injured by having been subjected to an investigation into her citizenship status.  Plaintiff Barbosa is further injured by having been stigmatized as a person who might have registered to vote illegally.   Plaintiff Barbosa is further injured by being investigated for illegal registration and voting.

34. Plaintiff Maria Yolisma Garcia is a Latina resident and registered voter of Dallas County, Texas.  Plaintiff Garcia is a naturalized U.S. citizen who obtained a Texas driver's license prior to becoming a U.S. citizen.  After she became a naturalized U.S. citizen, Plaintiff Garcia registered to vote. Plaintiff Garcia meets the description of individuals whose personal information appears on the list of persons identified as non-U.S. citizens provided by Defendant Whitley to Dallas County as actionable information for investigation and removal from the voter rolls. Plaintiff Garcia provided documentation to DPS showing that she was not a citizen of the United States when she first obtained a Texas driver's license. She also appears on the state voter rolls maintained by the Texas Secretary of State.

35. Upon information and belief, Plaintiff Garcia is injured by having been placed on the Secretary of State's list of "Possible Non U.S. Citizens" and having her identifying information sent to the county in which she is registered to vote with instructions to use

that information for investigation and possible removal of Plaintiff from the voter rolls. Plaintiff Garcia is further injured by having been stigmatized as a person who might have registered to vote illegally.  Plaintiff Garcia is further injured by being investigated for illegal registration and voting.

36. Plaintiff Lorena Tule-Romain is a Latina resident and registered voter of Dallas County, Texas.  Plaintiff Tule-Romain is a naturalized U.S. citizen who obtained a Texas driver's license prior to becoming a U.S. citizen.  After she became a naturalized U.S. citizen, Plaintiff Tule-Romain registered to vote. Plaintiff Tule-Romain meets the description of individuals whose personal information appears on the list of persons identified as non-U.S. citizens provided by Defendant Whitley to Dallas County as actionable information for investigation and removal from the voter rolls. Plaintiff Tule-Romain provided documentation to DPS showing that she was not a citizen of the United States when she first obtained a Texas driver's license. She also appears on the state voter rolls maintained by the Texas Secretary of State.

37. Upon information and belief, Plaintiff Tule-Romain is injured by having been placed on the Secretary of State's list of "Possible Non U.S. Citizens" and having her identifying information sent to the county in which she is registered to vote with instructions to use that information for investigation and possible removal of Plaintiff from the voter rolls. Plaintiff Tule-Romain is further injured by having been stigmatized as a person who might have registered to vote illegally.  Plaintiff Tule-Romain is further injured by being investigated for illegal registration and voting.

38. Plaintiff Abraham Josue Espinosa Flores is a Latino resident and registered voter of Harris County, Texas. Plaintiff Espinosa Flores is a naturalized U.S. citizen who obtained a Texas

11

driver's license prior to becoming a U.S. citizen.  Plaintiff Espinosa Flores registered to vote after becoming a U.S. citizen.  Plaintiff Espinosa Flores meets the description of individuals whose personal information appears on the list of persons identified as non-U.S. citizens provided by Defendant Whitley to Harris County as actionable information for investigation and removal from the voter rolls. Plaintiff Espinosa Flores provided documentation to DPS showing that he was not a citizen of the United States when he first obtained a Texas driver's license. He also appears on the state voter rolls maintained by the Texas Secretary of State.

39. Upon information and belief, Plaintiff Espinosa Flores is injured by having been placed on the Secretary of State's list of "Possible Non U.S. Citizens" and having his identifying information sent to the county in which he is registered to vote with instructions to use that information for investigation and possible removal of Plaintiff from the voter rolls. Plaintiff Espinoza Flores is further injured by having been stigmatized as a person who might have registered to vote illegally.  Plaintiff Espinosa Flores is further injured by being investigated for illegal registration and voting.

40. Plaintiff Martine Hummel is a resident and registered voter of Travis County, Texas. Plaintiff Hummel is a naturalized U.S. citizen whose personal information appears on the list of persons identified as non-U.S. citizens provided by Defendant Whitley to Travis County as actionable information for investigation and removal from the voter rolls.

41. After she became a naturalized U.S. citizen, Plaintiff Hummel registered to vote in Travis County, Texas.  Plaintiff Hummel voted in the 2018 March Primary Election and 2018 General Election.

42. On or about January 28, 2019, the Secretary of State placed her personal information on his list of suspected non-U.S. citizens and sent it to Travis County.  On or about February 4, 2019, Travis County informed Plaintiff Hummel that she was on the list and the county would investigate her U.S. citizenship and eligibility to vote.  The Voter Registration Director in Travis County told Plaintiff Hummel that other people in Travis County had cancelled their voter registrations to get off the suspect voter list, and suggested to Plaintiff Hummel that she do the same.

43. Plaintiff Hummel is injured by having been placed on the Secretary of State's list of "Possible Non U.S. Citizens" and having her identifying information sent to the county in which she is registered to vote with instructions to use that information for investigation and possible removal of Plaintiff from the voter rolls.  Plaintiff Hummel is further injured by having been stigmatized as a person who might have registered to vote illegally. Plaintiff Hummel is further injured by being investigated for illegal registration and voting.

44. Plaintiff Viridiana Tule Carrizales is a Latina resident and registered voter of Bexar County, Texas.  Plaintiff Tule Carrizales is a naturalized U.S. citizen who obtained a Texas driver's license prior to becoming a U.S. citizen.  After she became a naturalized U.S. citizen, Plaintiff Tule Carrizales registered to vote. Plaintiff Tule Carrizales meets the description of individuals whose personal information appears on the list of persons identified as non-U.S. citizens provided by Defendant Whitley to Bexar County as actionable information for investigation and removal from the voter rolls. Plaintiff Tule Carrizales provided documentation to DPS showing that she was not a citizen of the United States when she first obtained a Texas driver's license. She also appears on the state voter rolls maintained by the Texas Secretary of State.

45. Upon information and belief, Plaintiff Tule Carrizales is injured by having been placed on the Secretary of State's list of "Possible Non U.S. Citizens" and having her identifying information sent to the county in which she is registered to vote with instructions to use that information for investigation and possible removal of Plaintiff from the voter rolls. Plaintiff Tule Carrizales is further injured by having been stigmatized as a person who might have registered to vote illegally.  Plaintiff Tule Carrizales is further injured by being investigated for illegal registration and voting.

46. Plaintiff Efren A. Gomez is a Latino resident and registered voter of Bexar County, Texas. Plaintiff Gomez is a naturalized U.S. citizen who obtained a Texas driver's license prior to becoming a U.S. citizen.  Plaintiff Gomez registered to vote after becoming a U.S. citizen. Plaintiff Gomez meets the description of individuals whose personal information appears on the list of persons identified as non-U.S. citizens provided by Defendant Whitley to Bexar County as actionable information for investigation and removal from the voter rolls. Plaintiff Gomez provided documentation to DPS showing that he was not a citizen of the United States when he first obtained a Texas driver's license. He also appears on the state voter rolls maintained by the Texas Secretary of State.

47. Upon information and belief, Plaintiff Gomez is injured by having been placed on the Secretary of State's list of "Possible Non U.S. Citizens" and having his identifying information sent to the county in which he is registered to vote with instructions to use that information for investigation and possible removal of Plaintiff from the voter rolls. Plaintiff Gomez is further injured by having been stigmatized as a person who might have registered to vote illegally.  Plaintiff Gomez is further injured by being investigated for illegal registration and voting.

14

48. Plaintiff Hilda Castillo is a Latina resident and registered voter of Hidalgo County, Texas. Plaintiff Castillo is a naturalized U.S. citizen who obtained a Texas driver's license prior to becoming a U.S. citizen. Plaintiff Castillo registered to vote after becoming a U.S. citizen. Plaintiff Castillo meets the description of individuals whose personal information appears on the list of persons identified as non-U.S. citizens provided by Defendant Whitley to Hidalgo County as actionable information for investigation and removal from the voter rolls. Plaintiff Castillo provided documentation to DPS showing that she was not a citizen of the United States when she obtained her Texas driver's license. She also appears on the state voter rolls maintained by the Texas Secretary of State.

49. Upon information and belief, Plaintiff Castillo is injured by having been placed on the Secretary of State's list of "Possible Non U.S. Citizens" and having her identifying information sent to the county in which she is registered to vote with instructions to use that information for investigation and possible removal of Plaintiff from the voter rolls. Plaintiff Castillo is further injured by having been stigmatized as a person who might have registered to vote illegally. Plaintiff Castillo is further injured by being investigated for illegal registration and voting.

50. Plaintiff Castillo is a member of Plaintiff La Unión Del Pueblo Entero ("LUPE").

51. Plaintiffs Garibay, Keane, Garcia, Tule-Romain, Espinosa Flores, Tule Carrizales, Barbosa, Jane Doe #1, Jane Doe #2, John Doe #1, Hummel, Gomez, and Castillo sue on their own behalf and on behalf of:

    a.  a class comprised of all persons who are now or will be naturalized U.S. citizens, whose records maintained by the Texas Department of Public Safety show that

they are   not citizens of the United States, and who have registered to vote in Texas ("General Class"); and

   b.  a subclass comprised of all members of the General Class who are Latino ("Latino Subclass").

52. Plaintiff Southwest Voter Registration Education Project ("SVREP") is a nonprofit organization whose mission is to build political power among Latinos and other minority groups by increasing their participation in the U.S. democratic process. To achieve that mission, SVREP conducts the following programs: get-out-the-vote; voter registration; voter turnout; and other programs designed to educate voters. Since it was founded in 1974, SVREP has registered over 2.7 million voters.  SVREP conducts its voter registration activities at community-based sites such as school campuses, malls, and fairs.  SVREP registered voters and conducted get-out-the-vote activities in Bexar, Dallas, Tarrant, and Harris counties in 2018.

53. Defendants' actions have injured Plaintiff SVREP by calling into question and threatening to cancel the voter registration of naturalized citizens in Texas, including naturalized citizens whom SVREP has registered or seeks to register, and by discouraging naturalized individuals from registering to vote and voting, thus draining SVREP's resources and impairing SVREP's ability to carry out its mission.

54. Plaintiff Mi Familia Vota Education Fund ("MFV") is a national nonprofit organization whose mission is to expand the Latino electorate and increase justice for Latinos through increased civic participation. MFV is headquartered in Phoenix, Arizona, and serves individuals in Texas.  To promote civic engagement in the communities it serves, MFV conducts citizenship assistance, voter registration, voter education, and get-out-the-vote

activities throughout Texas, including in the Dallas, Houston, and San Antonio metropolitan areas.  In the Houston area alone, MFV hosted 89 different voter registration events in 2018, and helped register voters at naturalization ceremonies.  MFV registered approximately 3,400 people to vote in Texas in 2018.

55. Defendants' actions have injured Plaintiff MFV by calling into question and threatening to cancel the voter registration of naturalized citizens in Texas, including naturalized citizens whom MFV has registered or seeks to register, and by discouraging naturalized individuals from registering to vote and voting, thus draining MFV's resources and impairing MFV's ability to carry out its mission.

56. Plaintiff La Unión Del Pueblo Entero ("LUPE") is a nonprofit membership organization founded on the belief that members of the low-income community have the responsibility and the obligation to organize themselves.  LUPE's mission is to build strong, healthy communities in the Texas Rio Grande Valley through community organizing and civic engagement. To promote civic engagement in the communities it serves, LUPE conducts voter registration, voter education, and non-partisan get-out-the-vote campaigns, as well as assists individuals to prepare their naturalization applications.  LUPE is headquartered in San Juan, Texas, and its members primarily reside in Hidalgo, Cameron, Willacy, and Starr Counties, Texas. LUPE has over 8,000 members, including Latino naturalized U.S. citizens who are registered to vote.  LUPE registers voters year-round, including at its monthly membership meetings, at house meetings, in all of the LUPE offices and especially at the three area naturalization ceremonies where new citizens take their oath.

57. Plaintiff LUPE has members that meet the description of individuals whose personal information appears on the list of persons identified as non-U.S. citizens provided by

Defendant Whitley to counties as actionable information for investigation and removal from the voter rolls. Plaintiff LUPE's affected members are injured by having been placed on the Secretary of State's list of "Possible Non U.S. Citizens" and having their identifying information sent to the counties in which they are registered to vote with instructions to use that information for investigation and possible removal of those members from the voter rolls. Plaintiff LUPE's affected members are further injured by having been stigmatized as persons who might have registered to vote illegally.

58. Defendants' actions have also injured Plaintiff LUPE by calling into question and threatening to cancel the voter registration of naturalized citizens in Texas, including naturalized citizens whom LUPE has registered or seeks to register, and by discouraging naturalized individuals from registering to vote and voting, thus draining LUPE's resources and impairing LUPE's ability to carry out its mission.

59. Plaintiff UnidosUS is a nonprofit organization founded on the belief that to build a stronger America better opportunities must be created for Latinos. The mission of UnidosUS is to advocate for Latinos in the areas of civic engagement, education, the workforce, civil rights, immigration, health, housing, and the economy. To promote civic engagement among Latinos, UnidosUS registers voters through its Latino Empowerment and Advocacy Project ("LEAP"), as well as through its High School Democracy Project. Through these two programs, UnidosUS focuses on registering voters in El Paso and the Rio Grande Valley in Texas. Prior to the 2018 General Election, UnidosUS registered nearly 10,000 Latinos in Texas to vote. UnidosUS conducts voter registration, voter education, and non-partisan get-out-the-vote campaigns. UnidosUS partners with nearly 300 affiliates across

the country to increase civic engagement, with many of these affiliates based in Texas. UnidosUS also has staff and volunteers on the ground in Texas.

60. Defendants' actions have injured Plaintiff UnidosUS by calling into question and threatening to cancel the voter registration of naturalized citizens in Texas, including naturalized citizens whom UnidosUS has registered or seeks to register, and by discouraging naturalized individuals from registering to vote and voting, thus draining UnidosUS's resources and impairing UnidosUS's ability to carry out its mission.

**Defendants**

61. Defendant David Whitley is the Texas Secretary of State. The Secretary of State is one of six state officials who form the Executive Department of Texas. Defendant Whitley is appointed by the Governor, with confirmation by the Senate, and serves at the pleasure of the Governor. Defendant Whitley serves as Chief Election Officer for Texas, assisting county election officials and ensuring the uniform application and interpretation of election laws throughout Texas. Defendant Whitley provides information and instruction to counties on how to administer voter registration and maintain the voter rolls, including when and how to investigate and remove registered voters from the rolls because of suspected non-U.S. citizenship. Defendant Whitley has the ability to refer elections complaints to the Office of the Attorney General for investigation and prosecution. At all times relevant herein, Defendant Whitley acted under color of state law. Defendant Whitley is sued in his official capacity.

62. Defendant Ken Paxton is the Texas Attorney General. The Office of the Attorney General has statewide investigation authority and concurrent prosecution authority with local elected prosecutors over the election laws of the State. In his capacity as Attorney

General, Defendant Paxton and his office investigate and prosecute violations of the Texas Election Code, including illegal voting. At all times relevant herein, Defendant Paxton acted under color of state law. Defendant Paxton is sued in his official capacity.

63. Defendant Greg Abbott is the Governor of Texas. In that capacity, he appoints and directs the activities of the Texas Secretary of State. Defendant Abbott is the chief executive and chief law enforcement officer of Texas. At all times relevant herein, Defendant Abbott acted under color of state law. Defendant Abbott is sued in his official capacity.

64. Defendant Kim Rinn is the Austin County Tax Assessor-Collector. In that capacity, Defendant Rinn serves as the voter registrar for and maintains the voter rolls of Austin County. Defendant Rinn also provides the poll books for elections in Austin County and provides programs on voter registration, voter participation and citizenship. At all times relevant herein, Defendant Rinn acted under color of state law. Defendant Rinn is sued in her official capacity.

65. Defendant Cheryl E. Johnson is the Galveston County Tax Assessor-Collector. In that capacity, Defendant Johnson serves as the voter registrar for and maintains the voter rolls of Galveston County. Defendant Johnson also provides the poll books for elections in Galveston County and provides programs on voter registration, voter participation and citizenship. At all times relevant herein, Defendant Johnson acted under color of state law. Defendant Johnson is sued in her official capacity.

66. Defendant Karen Nelson is the Smith County Elections Administrator. In that capacity, Defendant Nelson serves as the voter registrar for and maintains the voter rolls of Smith County. Defendant Nelson also provides the poll books for elections in Smith County and provides programs on voter registration, voter participation and citizenship. At all times

relevant herein, Defendant Nelson acted under color of state law.  Defendant Nelson is sued in her official capacity.

67. Defendant Laura Wise is the Wood County Elections Administrator.  In that capacity, Defendant Wise serves as the voter registrar for and maintains the voter rolls of Wood County.  Defendant Wise also provides the poll books for elections in Wood County and provides programs on voter registration, voter participation and citizenship.  At all times relevant herein, Defendant Wise acted under color of state law.  Defendant Wise is sued in her official capacity.

68. Defendant Connie Brown is the Angelina County Elections Administrator.  In that capacity, Defendant Brown serves as the voter registrar for and maintains the voter rolls of Angelina County.  Defendant Brown also provides the poll books for elections in Angelina County and provides programs on voter registration, voter participation and citizenship.  At all times relevant herein, Defendant Brown acted under color of state law.  Defendant Brown is sued in her official capacity.  Upon information and belief, Defendant Brown sent 60-70 Notice of Examination letters requiring proof of U.S. citizenship to voters on the list of suspect voters sent by Defendant Whitley to the county.

69. Defendant Gwenda L. Tschirhart is the Bandera County Tax Assessor Collector.  In that capacity, Defendant Tschirhart serves as the voter registrar for and maintains the voter rolls of Bandera County.  Defendant Tschirhart also provides the poll books for elections in Bandera County and provides programs on voter registration, voter participation and citizenship.  At all times relevant herein, Defendant Tschirhart acted under color of state law.  Defendant Tschirhart is sued in her official capacity.  Upon information and belief, Defendant Tschirhart sent 19 Notice of Examination letters requiring proof of U.S.

21

citizenship to voters on the list of suspect voters sent by Defendant Whitley to the county. Defendant Tschirhart subsequently sent 9 letters to voters telling the voters to disregard the original Notices.

70. Defendant Kristen Spies is the Blanco County Tax Assessor-Collector.  In that capacity, Defendant Spies serves as the voter registrar for and maintains the voter rolls of Blanco County.  Defendant Spies also provides the poll books for elections in Blanco County and provides programs on voter registration, voter participation and citizenship.  At all times relevant herein, Defendant Spies acted under color of state law.  Defendant Spies is sued in her official capacity.  Upon information and belief, Defendant Spies sent 7 Notice of Examination letters requiring proof of U.S. citizenship to voters on the list of suspect voters sent by Defendant Whitley to the county.

71. Defendant Crystal Denman is the Bosque County Elections Administrator.  In that capacity, Defendant Denman serves as the voter registrar for and maintains the voter rolls of Bosque County.  Defendant Denman also provides the poll books for elections in Bosque County and provides programs on voter registration, voter participation and citizenship.  At all times relevant herein, Defendant Denman acted under color of state law.  Defendant Denman is sued in her official capacity.  Upon information and belief, Defendant Denman sent Notice of Examination letters requiring proof of U.S. citizenship to voters on the list of suspect voters sent by Defendant Whitley to the county.

72. Defendant Trudy Hancock is the Brazos County Elections Administrator.  In that capacity, Defendant Hancock serves as the voter registrar for and maintains the voter rolls of Brazos County.  Defendant Hancock also provides the poll books for elections in Brazos County and provides programs on voter registration, voter participation and citizenship.  At all

times relevant herein, Defendant Hancock acted under color of state law.  Defendant Hancock is sued in her official capacity.  Upon information and belief, Defendant Hancock sent Notice of Examination letters requiring proof of U.S. citizenship to voters on the list of suspect voters sent by Defendant Whitley to the county.

73. Defendant Kathryn Nealy is the Gregg County Elections Administrator.  In that capacity, Defendant Nealy serves as the voter registrar for and maintains the voter rolls of Gregg County.  Defendant Nealy also provides the poll books for elections in Gregg County and provides programs on voter registration, voter participation and citizenship.  At all times relevant herein, Defendant Nealy acted under color of state law.  Defendant Nealy is sued in her official capacity.  Upon information and belief, Defendant Nealy sent 99 Notice of Examination letters requiring proof of U.S. citizenship to voters on the list of suspect voters sent by Defendant Whitley to the county.

74. Defendant Bob Reeves is the Kerr County Tax Assessor Collector.  In that capacity, Defendant Reeves serves as the voter registrar for and maintains the voter rolls of Kerr County.  Defendant Reeves also provides the poll books for elections in Kerr County and provides programs on voter registration, voter participation and citizenship.  At all times relevant herein, Defendant Reeves acted under color of state law.  Defendant Reeves is sued in his official capacity.   Upon information and belief, Defendant Reeves sent 68 Notice of Examination letters requiring proof of U.S. citizenship to voters on the list of suspect voters sent by Defendant Whitley to the county.

75. Defendant Vicki T. Vogel is the Victoria County Elections Administrator.  In that capacity, Defendant Vogel serves as the voter registrar for and maintains the voter rolls of Victoria County.  Defendant Vogel also provides the poll books for elections in Victoria County and

provides programs on voter registration, voter participation and citizenship.  At all times relevant herein, Defendant Vogel acted under color of state law.  Defendant Vogel is sued in her official capacity.  Upon information and belief, Defendant Vogel sent 128 Notice of Examination letters requiring proof of U.S. citizenship to voters on the list of suspect voters sent by Defendant Whitley to the county.  Defendant Vogel subsequently sent 29 letters to voters asking them to disregard the Notices of Examination.

76. Defendant Mary Hope Barrera is the Willacy County Elections Administrator.  In that capacity, Defendant Barrera serves as the voter registrar for and maintains the voter rolls of Willacy County.  Defendant Barrera also provides the poll books for elections in Willacy County and provides programs on voter registration, voter participation and citizenship.  At all times relevant herein, Defendant Barrera acted under color of state law.  Defendant Barrera is sued in her official capacity.  Upon information and belief, Defendant Barrera sent Notice of Examination letters requiring proof of U.S. citizenship to 128 voters on the list of suspect voters sent by Defendant Whitley to the county.

## **FACTUAL BACKGROUND**

Driver's Licenses in Texas

77. Non-U.S. citizens who are authorized to live in the United States are eligible for Texas driver's licenses and identification cards.  To obtain a driver's license (or state identification card) in Texas, a non-U.S. citizen must go to the Texas Department of Public Safety (DPS), complete an application, and must present to DPS "documentation issued by

the appropriate United States agency that authorizes the applicant to be in the United States before the applicant may be issued a driver's license."[1]

78. Texas requires all non-U.S. citizens who apply for a driver's license to show a permanent resident immigrant card (also known as a "green card") or other document issued by the federal government showing that they are authorized to live in the United States.[2]

79. In addition, Texas only allows non-U.S. citizens to demonstrate their identity through presentation of an "unexpired document issued by the United States Citizenship and Immigration Services or successor federal immigration agency" or a visa issued by the U.S. State Department.[3]   DPS retains information showing a non-U.S. citizen's authorized presence in the U.S. in that individual's driver's license record.[4]

80. Adult lawful permanent resident immigrants receive standard Texas driver's licenses that are valid for six years.[5]   All original licenses that are not provisional licenses, learner licenses, or occupational driver's licenses issued to a "legal permanent resident of the United States or a refugee or asylee lawfully admitted into the United States expire[. . .] on the first birthday of the license holder occurring after the sixth anniversary of the date of the application."[6]

---

[1] *See* Tex. Transp. Code § 521.142(a); *see also* 37 Tex. Admin. Code § 15.46 ("applicant for an original, renewal, or duplicate of a Texas driver license or personal identification certificate must provide information relating to their United States citizenship and provide their county of residence at the time of application.").

[2] *Id.*

[3] 37 Tex. Admin. Code § 15.24(1).

[4] *See* Tex. Transp. Code § 521.041(a); *see also* 37 Tex. Admin. Code § 15.101 (DPS "is required by law to maintain records on licensed drivers.").

[5] *See* Tex. Transp. Code § 521.271.

[6] Tex. Transp. Code § 521.271(a)(1).

81. Non-U.S. citizens with long-term visas authorizing them to live and work in the U.S. also receive long-term driver's licenses.[7]  Certain other non-U.S. citizens receive driver's licenses of shorter duration but these licenses can be renewed by showing a new document that authorizes continued presence in the U.S.[8]

82. Lawful permanent resident immigrants very commonly naturalize and register to vote. There is no requirement for naturalized U.S. citizens to present proof of citizenship to DPS upon naturalization or prior to the expiration of their driver's licenses.  A Texas driver's license holder is only required to notify DPS if the person changes address or seeks protection of personal information.[9]

83. Citizenship information is not updated by DPS until after the driver's license holder brings the agency proof of U.S. citizenship; this can be years after the individual is naturalized and registered to vote.  Even if DPS updates its records to reflect the new U.S. citizenship of a driver's license holder, DPS retains the information that the individual originally secured the driver's license as a non-U.S. citizen.

Naturalizations in Texas

84. Lawful permanent resident immigrants typically become eligible for naturalization in five years.  The waiting period is four years for asylees who have permanent resident status and three years for spouses of U.S. citizens.   Thus a typical permanent resident immigrant in Texas who obtains a six-year driver's license will be eligible to become a U.S. citizen before that driver's license expires.  It may be several years between the time a new U.S.

---

[7] Tex. Transp. Code § 521.271(a-2)-(a-4).
[8] *See* Tex. Transp. Code § 521.1425(c)(2).
[9] *See* Tex. Transp. Code § 521.054 (a)-(b).

citizen registers to vote and the time she goes to DPS to renew her driver's license and provide updated citizenship information.

85. According to the U.S. Department of Homeland Security, for fiscal years 2012-2017, less than the time period of a standard driver's license, over 340,000 individuals naturalized in Texas. An average of 58,092 individuals naturalized in Texas in each of those years.

86. The U.S. Department of Homeland Security also reported, for fiscal years 2012-2017, that 47% of the immigrants naturalized in Texas were originally from the Latin American countries of Mexico, El Salvador, Guatemala, Honduras, Colombia, Cuba, Peru, and Venezuela.

87. According to data from the United States Census Bureau, among Texas naturalized U.S. citizens, 51.7% are Latino. Only 11.6% of Texas naturalized citizens are non-Latino White.[10]

88. Both local election officials and non-profit organizations offer voter registration assistance to newly naturalized citizens outside of naturalization ceremonies. For example, the Harris County Voter Registrar routinely sends staff members to naturalization ceremonies in the Houston area to register new voters. In addition, naturalized voters in Texas may register to vote at the Texas Department of Public Safety, by mail, at the voter registrar's office, at community events, or with the assistance of private individuals who are deputized by counties as voter registrars.

Latino Political Participation in Texas

89. In 2017, the Latino citizen voting age population of Texas was approximately 30%.

---

[10] American Community Survey FactFinder, *Selected Characteristics of the Native and Foreign-Born Populations (Texas)*, United States Census Bureau (2017 5-year ACS data), available at https://factfinder.census.gov/bkmk/table/1.0/en/ACS/17_5YR/S0501/0400000US48 (accessed January 31, 2019).

90. Among Texas Latinos who are eligible to vote (adult U.S. citizens), 17% are naturalized U.S. citizens.

91. In the 2018 midterm election, Texas Latino voters more than doubled their turnout when compared to the 2014 midterm elections. According to the Texas Legislative Council and Texas Secretary of State, in the 2014 midterm elections, 682,741 Latinos cast votes.  In the 2018 midterm elections, 1,604,589 Latinos cast votes.

92. Compared with 2014, Texas Latinos increased their vote share in the 2018 midterm election by about five percentage points.   According to the Texas Legislative Council and Texas Secretary of State, in 2014, Latinos cast 14.4% of all votes cast.  In 2018, Latinos cast 19.1% of all votes cast.

The Secretary of State's List of "Possible Non U.S. Citizens"

93. On January 25, 2019, Defendant Whitley's Director of Elections Keith Ingram released Election Advisory No. 2019-02 ("the Advisory") to all voter registrars in Texas.  The Advisory stated that the Office of the Secretary of State, beginning the following day, would provide to Texas counties information about "individuals who provided documentation to DPS showing that the person is not a citizen of the United States during the process of obtaining or acquiring a Texas Driver License or Personal Identification Card from DPS."[11]

94. The Advisory stated that the Office of the Secretary of State had worked with DPS since March 2018 to "produce actionable information voter registrars" could use for voter list maintenance.[12]   While doing so, the Secretary of State claimed in the Advisory that his

---

[11]  Election Advisory No. 2019-02, Texas Secretary of State (January 25, 2019), available at https://www.sos.state.tx.us/elections/laws/advisory2019-02.shtml (accessed January 30, 2019).
[12]  Id.

office "sought to create the strongest matching criteria that produces the least possible impact on eligible Texas voters while fulfilling the responsibility to manage the voter rolls," in accordance with  Section 18.0681 of the Texas Election Code.[13]   The Advisory further advised counties that "we believe the data we are providing can be acted on in nearly all circumstances."[14]

95. The Advisory stated that Defendant Whitley's office limited the DPS data that it was going to produce to counties "to individuals who provided valid documents indicating the person is not a citizen of the United States *at the time* the person obtained a Driver License or Personal Identification Card." (emphasis added).[15]

96. The Advisory stated: "Our office has obtained the preliminary data file for all current (unexpired) Driver License and Personal Identification cards that meet this criteria, and we will run that set of information tomorrow evening."[16]

97. In creating the list, Defendant Whitley's office compared all current driver's licenses to voting records dating back to 1996.[17]

98. The Advisory anticipated that counties would be met with requests from the public for the lists of non-U.S. citizens but urged counties to contact their "local prosecutor and the

---

[13]  *Id.*  The Election Code Section cited by the Advisory deals with "matching criteria" for potentially duplicate voter records, or voters who may "have more than one voter registration record on file." Tex. Elec. Code § 18.0681(a).

[14] Election Advisory No. 2019-02, Texas Secretary of State (January 25, 2019), available at https://www.sos.state.tx.us/elections/laws/advisory2019-02.shtml (accessed January 30, 2019).

[15] *Id.*

[16] *Id.*

[17] Robert T. Garrett, *Texas' top election official: About 58,000 non-citizens cast ballots in state elections since 1996*, Dallas News (January 25, 2019), available at https://www.dallasnews.com/news/texas-politics/2019/01/25/texas-top-election-official-since-1996-tens-thousands-non-citizens-voted-state-elections (accessed February 6, 2019).

attorney general, who have jurisdiction over such matters" if the counties received such requests.[18]

99.  The Advisory claimed that the criteria used to match registered voters to driver's license records are "some of the strongest possible matching criteria used" by the Secretary of State and advised that "the county may choose to investigate the voter, pursuant to Section 16.033, Election Code."  The Advisory also explained that if the list being sent by the Office of the Secretary of State "provides the registrar with reason to believe the person is no longer eligible for registration . . . the registrar should send a Notice of Examination for Citizenship (Proof of Citizenship) (PDF) Letter."[19]

100.  The Advisory provided county registrars with instructions to send voters a form letter stating: "Your registration status is being investigated because there is reason to believe you may not be a United States citizen. . . You are now required to confirm your eligibility for registration by providing proof of citizenship to maintain your registration status. . . If you fail to provide this proof of citizenship within 30 days from the date of this letter, your voter registration will be cancelled."[20]

101.  Upon publishing its Advisory, the Texas Secretary of State's office also published a news release on January 25, 2019, announcing that Defendant Whitley "issued an advisory to

---

[18] Election Advisory No. 2019-02, Texas Secretary of State (January 25, 2019), available at https://www.sos.state.tx.us/elections/laws/advisory2019-02.shtml (accessed January 30, 2019).
[19]  *Id.*; *see also* "Notice to Registered Voter for Proof of Citizenship," Texas Secretary of State, available at https://www.sos.state.tx.us/elections/forms/bw1-12.pdf (accessed January 31, 2019).
[20] Election Advisory No. 2019-02, Texas Secretary of State (January 25, 2019), available at https://www.sos.state.tx.us/elections/laws/advisory2019-02.shtml (accessed January 30, 2019); *see also* "Notice to Registered Voter for Proof of Citizenship," Texas Secretary of State, available at https://www.sos.state.tx.us/elections/forms/bw1-12.pdf (accessed January 31, 2019).

county voter registrars regarding voter registration list maintenance activities, which include identifying any non-U.S. citizens registered to vote in the State of Texas."[21]

102. Defendant Whitley claimed that his office had "discovered that a total of approximately 95,000 individuals identified by DPS as non-U.S. citizens have a matching voter registration record in Texas, approximately 58,000 of whom have voted in one or more Texas elections."  The news release further emphasized that "[v]oting in an election in which the person knows he or she is not eligible to vote is a second-degree felony in the State of Texas" and declared that the Office of the Secretary of State had "immediately provided the data in its possession to the Texas Attorney General's office, as the Secretary of State has no statutory enforcement authority to investigate or prosecute alleged illegal activity in connection with an election."[22]

103. Defendant Whitley's news release also stated that his office provided the information about potential non-U.S. citizen to counties "so that the county voter registrar can take action."[23]  The news release declared that "[i]f a registered voter is identified as a non-U.S. citizen, he or she *should* receive a Notice of Examination (PDF) from the county voter registrar indicating that his or her registration status is being examined on the grounds that he or she is not a U.S. citizen." (emphasis added).[24]

104. On the same day that Defendant Whitley issued his Advisory and news release, Defendant Attorney General Paxton issued a press release declaring "Texas Secretary of State's Office Discovers Nearly 95,000 People Identified by DPS as Non-U.S. Citizens are

---

[21] *Secretary Whitley Issues Advisory On Voter Registration List Maintenance Activity*, Texas Secretary of State (January 25, 2019), available at https://www.sos.texas.gov/about/newsreleases/2019/012519.shtml (accessed January 30, 2019).
[22] *Id*.
[23] *Id.*
[24] *Id.*

Registered to Vote in Texas."  The news release referenced the Secretary of State's press release and stated that every "instance of illegal voting threatens democracy in our state and deprives individual Texans of their voice."  Defendant Paxton further stated "My Election Fraud Unit stands ready to investigate and prosecute crimes against the democratic process when needed."[25]

105. Also on January 25, 2019, Defendant Paxton tweeted: "VOTER FRAUD ALERT: The @TXsecofstate discovered approx 95,000 individuals identified by DPS as non-U.S. citizens have a matching voter registration record in TX, approx 58,000 of whom have voted in TX elections. Any illegal vote deprives Americans of their voice."[26]

106. Defendant Governor Abbott also tweeted on January 25, 2019: "Thanks to Attorney General Paxton and the Secretary of State for uncovering and investigating this illegal vote [sic] registration. I support prosecution where appropriate. The State will work on legislation to safeguard against these illegal practices. #txlege #tcot"[27]

107. On January 27, 2019, two days after Defendant Whitley's office published its press release and Advisory, President Donald J. Trump announced on Twitter: "58,000 non-citizens voted in Texas, with 95,000 non-citizens registered to vote. These numbers are just

---

[25] *AG Paxton: Texas Secretary of State's Office Discovers Nearly 95,000 People Identified by DPS as Non-U.S. Citizens are Registered to Vote in Texas*, Ken Paxton, Attorney General of Texas (January 25, 2019), available at https://www.texasattorneygeneral.gov/news/releases/ag-paxton-texas-secretary-states-office-discovers-nearly-95000-people-identified-dps-non-us-citizens (accessed 31 Jan. 2019).
[26] Ken Paxton (@KenPaxtonTX), Twitter (January 25, 2019, 12:37 PM), https://twitter.com/KenPaxtonTX/status/1088898559653386240.
[27] Greg Abbott (@GregAbbott_TX), Twitter, (January 25, 2019, 1:57 PM) https://twitter.com/GregAbbott_TX/status/1088918898643271680.

the tip of the iceberg. All over the country, especially in California, voter fraud is rampant. Must be stopped. Strong voter ID!"[28]

108. The Secretary of State's announcement, and subsequent public statements by the Texas Attorney General and Governor, quickly snowballed into news reports declaring that state officials had discovered thousands of non-U.S. citizens on the state's voter rolls.

109. On January 25, 2019, local news station WFAA in Dallas reported, that "[a]bout 95,000 non-citizens are registered to vote in Texas, and more than half of those have cast ballots in at least one election, Texas Secretary of State David Whitley announced on Friday."   The outlet also reported that "[o]f he 95,000 non-citizens registered, 58,000 have voted in one or more elections since 1996."[29]

110. On January 26, 2019, Fox News reported that "Texas Attorney General Ken Paxton announced Friday that the state has discovered 95,000 non-citizens on the voter rolls going back to 1996, 58,000 of whom have voted in at least one Texas election."[30]

111. On January 31, 2019, a local television station in Laredo, Texas reported that "[t]he Webb County Elections Administration has received notice that there are over one-thousand non-citizen voters in the county."[31]

---

[28] President Donald J. Trump (@realDonaldTrump), Twitter (January 27, 2019, 5:22 AM) https://twitter.com/realDonaldTrump/status/1089513936435716096.

[29] Ryan Osborne, *95,000 non-citizens are registered to vote in Texas, state officials discover*, WFAA (January 25, 2019, updated January 28, 2019), available at https://www.wfaa.com/article/news/95000-non-citizens-are-registered-to-vote-in-texas-state-officials-discover/287-c0b07849-016f-42c8-b0fb-5418dbd3f5d4?fbclid=IwAR3R9BhE_VpKUtNpbckI340E2UkcPENk7mOt_X_lQR8yd8yT4mEPLbU9g8E (accessed February 1, 2019).

[30] Adam Shaw, *Texas says it found 95,000 non-citizens on voter rolls; 58,000 have voted*, Fox News (January 26, 2019), available at https://www.foxnews.com/politics/texas-says-it-has-discovered-95000-non-citizens-on-voter-rolls-58000-have-voted  (accessed February 1, 2019).

[31] *Non-citizen voter registration in Texas*, KGNS-TV (January 31, 2019) https://www.kgns.tv/content/news/Non-citizen-voter-registration-in-Texas-505173711.html (accessed February 1, 2019).

112. On January 25, 2019, Breitbart News headlined "95K Noncitizens Registered to Vote in Texas, Say State Officials," and stated that according to the Attorney General of Texas, the Secretary of State had "discovered troubling figures — roughly 95,000 individuals identified as non-U.S. citizens by the Texas Department of Public Safety (DPS) are registered to vote and, 58,000 of those, 61 percent, voted at least once."[32]

The Secretary of State's Office Soon Advised Counties that its List is Flawed

113. The purpose of Defendant Whitley's list of "Possible Non U.S. Citizens," and the accompanying instructions to county voter registrars in Election Advisory No. 2019-02, is to create a program to systematically remove the names of individuals from the official list of eligible voters.

114. On January 28, 2019, the Monday following Defendant Whitley's issuance of the Election Advisory and list of suspected non-U.S. citizen voters, Defendant Cheryl Johnson, the Galveston County tax assessor-collector, said she would immediately send out letters to the individuals on her list.  Ms. Johnson claimed she was following state law by starting to send letters to the more than 830 people in Galveston County that the Secretary of State had flagged.[33]  Defendant Johnson proceeded to send letters to voters on the suspected non-U.S. citizen voter list that day.[34]

115. The following day, Tuesday January 29, 2019, the Secretary of State's office began to call county voter registration officials to advise them that the information on the list of

---

[32] Merrill Hope, 95K Noncitizens Registered to Vote in Texas, Say State Officials, Breitbart News (January 25, 2019), available at https://www.breitbart.com/border/2019/01/25/95k-noncitizens-registered-to-vote-in-texas-say-state-officials/  (accessed February 1, 2019).
[33] Alexa Ura, *Some Texas voters already are being asked to prove their citizenship after state's announcement*, The Texas Tribune (January 28, 2019), available at https://www.texastribune.org/2019/01/28/some-texas-voters-are-already-being-asked-prove-their-citizenship-foll/ (accessed February 1, 2019).
[34] *Id.*

suspected non-U.S. citizen voters "may be flawed."[35]   The Secretary of State's office further advised the counties "that some on the lists shouldn't be there because they had already proven their citizenship when they registered to vote at naturalization ceremonies or at a Texas Department of Public Safety office."[36]

116. Cameron County Elections Administrator Remi Garza commented publicly that the Secretary of State's office gave Mr. Garza's office information on January 29 "that suggested the numbers they were originally provided 'may have been overstated' and that 'individuals that had already provided proof of citizenship to the DPS office had been included in the original list provided to the county.'"[37]

117. The Secretary of State's office advised Cameron County on January 29 that "1,590 people [. . .] were wrongly on the list," then later called Mr. Garza's office to say that "the 1,590 figure was incorrect," but gave no further information.[38]

---

[35] James Barragán, Julieta Chiquillo, and Robert T. Garrett, *Some names in list of 98,000 potential non-citizen voters included 'in error,' county officials say, citing state*,  Dallas News powered by the Dallas-Morning News (January 29, 2019), available at https://www.dallasnews.com/news/elections/2019/01/29/list-98000-potential-non-citizen-voters-may-overstated-texas-secretary-state-tells-counties (accessed January 30, 2019); *see also* Alexa Ura, *Texas quietly informs counties that some of the 95,000 voters flagged for citizenship review don't belong on the list*, The Texas Tribune (January 29, 2019), available at https://www.texastribune.org/2019/01/29/texas-voter-citizenship-list-problems-state-tells-counties/ (accessed January 30, 2019).
[36] *See* Guillermo Contreras and Dylan McGuinness, *State hedges on claim that 100,000 Texas voters aren't citizens, faces federal lawsuit*, San Antonio Express-News (January 29, 2019), available at https://www.expressnews.com/news/local/article/LULAC-sues-Texas-over-witch-hunt-move-to-13570848.php?utm_source=newsletter&utm_medium=email&utm_campaign=MySA_Daily_eEdition (accessed January 30, 2019).
[37] James Barragán, Julieta Chiquillo, and Robert T. Garrett, *Some names in list of 98,000 potential non-citizen voters included 'in error,' county officials say, citing state*,  Dallas News powered by the Dallas-Morning News (January 29, 2019), available at https://www.dallasnews.com/news/elections/2019/01/29/list-98000-potential-non-citizen-voters-may-overstated-texas-secretary-state-tells-counties (accessed January 30, 2019)
[38] Guillermo Contreras and Dylan McGuinness, *State hedges on claim that 100,000 Texas voters aren't citizens, faces federal lawsuit*, San Antonio Express-News (January 29, 2019), available at https://www.expressnews.com/news/local/article/LULAC-sues-Texas-over-witch-hunt-move-to-

118. Also on Tuesday January 29, the Secretary of State's office contacted McLennan County's Election Administrator Kathy Van Wolfe to tell Ms. Van Wolfe "to disregard the list."[39]  Ms. Van Wolfe stated publicly that Defendant Whitley's office told her that "[a]ll those people have proven citizenship."[40]  By the afternoon of January 29, Hidalgo County elections administrator Yvonne Ramón announced that she had "determined there were 100 duplicates" on the list sent to her by the Secretary of State's office.[41]

119. Also on Tuesday January 29, the Travis County Tax Assessor-Collector, Bruce Elfant, stated publicly that his office was trying to organize a "jumble" of information it received on 4,500 voters into a usable format.  Mr. Elfant further stated "I said to the secretary of state's office this morning, 'It would have been nice if you sent it in a spreadsheet,' [and] they told me, 'Well, we didn't.' A lot of things would have been nice, I guess."[42]

120. That same day, the Dallas County Elections Administrator Toni Pippins-Poole stated publicly:  "We received a call from the state saying we should put things on hold . . . Some

---

13570848.php?utm_source=newsletter&utm_medium=email&utm_campaign=MySA_Daily_eEdition (accessed January 30, 2019).

[39] Cassie L. Smith, *State: All 366 on local list of potential noncitizen voters are citizens,* Waco Tribune-Herald (January 31, 2019), available at https://www.wacotrib.com/news/elections/state-all-on-local-list-of-potential-noncitizen-voters-are/article_20771942-538d-506d-bcad-7e7ca79e261d.html?platform=hootsuite (accessed January 31, 2019).

[40] *Id.*

[41] Guillermo Contreras and Dylan McGuinness, *State hedges on claim that 100,000 Texas voters aren't citizens, faces federal lawsuit*, San Antonio Express-News (January 29, 2019), available at https://www.expressnews.com/news/local/article/LULAC-sues-Texas-over-witch-hunt-move-to-13570848.php?utm_source=newsletter&utm_medium=email&utm_campaign=MySA_Daily_eEdition (accessed January 30, 2019).

[42] Liam Stack, *Many Texas Voters Whose Citizenship Was Questioned Are in Fact Citizens*, New York Times (January 29, 2019), available at https://www.nytimes.com/2019/01/29/us/texas-voter-citizenship-list.html (accessed January 30, 2019).

of the data that they received was flawed.  Some of the voters had already provided proof of citizenship."[43]

121.  By Wednesday, January 30, 2019, Harris County had reported that 18,000 individuals on the Secretary of State's list of suspected non-U.S. citizen registrants had already been identified as citizens and that Harris County expected more mistakes to be discovered.[44]

122.  That same day, the McLennan County Elections Administrator announced that all 366 registered voters that the Secretary of State targeted for investigation in that county are U.S. citizens.[45]

123.  The Williamson County Election Administrator, who is also president of the Association of Texas Elections Administrators, announced that more than half of the 2,033 voters on his county's list were being removed after the Secretary of State's revision.[46]

124.  Two distinct problems had emerged immediately with the Secretary of State's list of possible non-U.S. citizen voters.  First, the Secretary of State's list contained voters whose registrations were coded by the Secretary of State to indicate that they had registered to vote at DPS and DPS had verified their citizenship.  This registration source code is known as "source code 64."

---

[43] Paul Weber, *Texas tells counties noncitizen voter report may be flawed*, Associated Press (January 29, 2019), available at https://www.apnews.com/e959bf0789a94456918a93d43542505b (accessed February 1, 2019).
[44] Associated Press, *18K Houston area voters removed from citizenship check,* The Tribune (January 30, 2019) available at http://www.tribtown.com/2019/01/30/us-texas-voter-rolls-4/ (accessed January 31, 2019).
[45] Cassie L. Smith, *State: All 366 on local list of potential noncitizen voters are citizens*, Waco Tribune-Herald, (January 30, 2019) available at https://www.wacotrib.com/news/elections/state-all-on-local-list-of-potential-noncitizen-voters-are/article_20771942-538d-506d-bcad-7e7ca79e261d.html (accessed February 1, 2019).
[46] James Barragán, Robert T. Garrett, and Julieta Chiquillo, *Tens of thousands removed from potential non-citizen voters list after counties find flawed data*, Dallas Morning News (January 31, 2019), available at https://www.dallasnews.com/news/texas-politics/2019/01/30/tens-thousands-removed-potential-non-citizen-voters-list-after-counties-find-flawed-data (accessed February 1, 2019).

125.  The Secretary of State's office reportedly told the Cameron County registrar Mr. Garza on January 29 that looking for voters on the list who were assigned a "source code 64" by the Secretary of State and eliminating those voters as having already provided proof of citizenship would remove "well over" 1,500 from the Cameron County list of suspected non-U.S. citizen voters.[47]

126.  The second problem with the Secretary of State's list of suspected non-citizen voters was that it contained naturalized citizens who registered to vote after they became U.S. citizens and before their driver's license expired and needed to be renewed at DPS.  In the days following its release of the 98,000 names of voters labelled non-U.S. citizens, the Secretary of State's office called counties to urge them to consult any county records showing that the voters on the list had been registered at a naturalization ceremony.[48]

127.  A third problem that has emerged is that many naturalized U.S. citizens register to vote at locations other than at naturalization ceremonies and DPS.  Although they register to vote through traditional means, such as by mail or at community events, these voters have no code or other information associated with their voter registration record that will allow county registrars to confirm their U.S. citizenship.

128.  As of this date, many if not all of the eligible voters erroneously identified as non-U.S. citizens by the Secretary of State are naturalized U.S. citizens.

129.  Nevertheless, the voter purge continues.  Counties continue to remove names from the Secretary of State's list that the counties can verify are U.S. citizens but continue to

---

[47] Alexa Ura, How An Attempt To Review Texas' Voter Rolls Turned Into A Debacle, Texas Tribune (February 4, 2019), available at http://www.tpr.org/post/how-attempt-review-texas-voter-rolls-turned-debacle (accessed February 8, 2019).
[48] *See* fn. 33, *supra*, and Phil Prazan, *County officials: Texas non-citizen voter list is 'too big,' wrong*, KXAN, (January 30, 2019) available at https://www.kxan.com/news/local/austin/county-officials-texas-non-citizen-voter-list-is-too-big-wrong/1737151727 (accessed February 1, 2019).

investigate the remaining voters on the list of suspected non-citizens and continue to rely on sending Notice of Examination letters that demand documentary proof of citizenship of voters as a condition of remaining on the voter rolls.

130. In addition, counties are using wildly different standards to conduct their investigations into citizenship status.  Some counties, like Wood County, sent Notice of Examination letters to all the voters on the list sent by the Texas Secretary of State.[49]  Other counties, like Galveston County, sent Notice of Examination letters to all voters on their list of suspected non-citizen voters, but sent retraction letters to some of those individuals after narrowing the list of names following conversations with the Secretary of State's office.

131. Smith County, in contrast, reviewed names first, tried to remove any individual it could determine is a U.S. citizen, and then sent letters that same week to the remaining individuals on the County's suspected non-citizen list, including Plaintiffs Jane Doe #1 and John Doe #1.  Smith County's registrar Defendant Nelson stated publicly:  "We got the file from the state on Monday . . . We are working through the list and looking at each person on the list to see if any of the cases can be resolved by our office before sending the voter a letter of examination.  We have to send a letter of examination to each person whose case cannot be resolved . . . We expect to get the letters sent out by the end of this week."[50]

---

[49] Hank Murphy, *Letters go out to 21  Wood County voters inquiring about citizenship*, Wood County Monitor (February 6, 2019) available at http://woodcountymonitor.com/stories/letters-to-voters-about-citizenship,132306 (accessed February 10, 2019)
[50] LouAnna Campbell, Smith County elections office looking into 297 possible non-U.S. citizens registered to vote, Tyler Morning Telegraph (January 29, 2019), available at https://tylerpaper.com/lifestyle/family/smith-county-elections-office-looking-into-possible-non-u-s/article_f9f05224-23db-11e9-afd9-13f3df5be3b5.html  (accessed February 8, 2019).

132. Smith County sent Notice of Examination letters to Jane Doe #1 and John Doe #1 on January 31, 2019, apparently after trying and being unable to "resolve" their U.S. citizenship using county and state records.

133. Travis County intends to follow a procedure similar to Smith County's, but it will not send letters unless and until it completes a manual review of every name on its list. Pursuant to this manual review, Travis County will determine if any of its voluntary deputy registrars registered any individual on the list at a naturalization ceremony in the County.

134.   In Galveston County, Plaintiff Keane received a letter demanding that she provide proof of citizenship, and then received a second letter retracting the first.  Now she is worried that if she votes again she will be criminally investigated.

135.  In Wood County, Plaintiff Jane Doe #2 received a Notice of Examination letter, without letterhead, which stated:  "If you should have any questions concerning this notice, please contact me at _____ (phone number)," but the space for the phone number was left blank.   The letter also purported to enclose a response form, but no such form was enclosed.  Plaintiff Jane Doe #2 searched the internet and called County employees until she understood the significance of the letter.  Plaintiff Jane Doe #2 was only able to prove her citizenship by calling and ultimately going in person to the county courthouse, virtually ensuring that other voters in Wood County will be purged because they do not know where to send their proof of citizenship or whom to call with questions.

136.  In Parker County, registered voter Deborah Liles called the county elections office and spoke to the man who answered the phone.  At first the man insisted that Ms. Liles could not be on the list of suspected non-U.S. citizen voters "Because your name's not Hispanic."

Then after confirming that Ms. Liles, a naturalized U.S. citizen, was on the list, the man told her not to worry about it and indicated she was now cleared from the list.[51]

137.  Parker County's acceptance of a voter's verbal assurance that she is a naturalized U.S. citizen, in contrast with counties that require documentary proof of U.S. citizenship, further demonstrates that Defendants treat Plaintiffs differently depending on the county in which Plaintiffs reside and that Defendants employ arbitrary and disparate standards.

138.  Upon information and belief, Angelina County sent Notices of Examination to 60-70 registered voters pursuant to the Advisory requiring the voters to present proof of U.S. citizenship or be removed from the voter rolls.[52]

139.  Upon information and belief, Bandera County sent 19 Notice of Examination letters requiring proof of U.S. citizenship to voters on the list of suspect voters sent by Defendant Whitley to the county.  Defendant Tschirhart subsequently sent 9 letters to voters telling the voters to disregard the original Notices.[53]

140.  Upon information and belief, Blanco County sent 7 Notices of Examination to registered voters pursuant to the Advisory requiring the voters to present proof of U.S. citizenship or be removed from the voter rolls.[54]

---

[51] *See* Exhibit 72 to Plaintiffs' Re-urged Emergency Application for Temporary Restraining Order, Declaration of Dr. Deborah Liles.
[52] *See* Exhibit 77 to Plaintiffs' Re-urged App. for TRO, Khyati Patel, "Dozens of East Texans heading to county elections offices showing proof of citizenship," *KLTV* (February 4, 2019), available at http://www.kltv.com/2019/02/05/dozens-east-texans-heading-county-elections-offices-showing-proof-citizenship/ (accessed February 20, 2019).
[53] *See* Exhibit 78 to Plaintiffs' Re-urged App. for TRO, Bill Pack, "Citizenship review affects 10 in county," *The Bandera Bulletin* (February 6, 2019), available at https://www.banderabulletin.com/news/article_7ab94b46-298a-11e9-993b-dfe5162e6134.html (accessed February 20, 2019).
[54] Tr. 2019-02-19 (Testimony of Kristen Spies) 109:23-110:111.

141. Upon information and belief, Bosque County sent Notices of Examination to registered voters pursuant to the Advisory requiring the voters to present proof of U.S. citizenship or be removed from the voter rolls.[55]

142. Upon information and belief, Brazos County sent Notices of Examination to registered voters pursuant to the Advisory requiring the voters to present proof of U.S. citizenship or be removed from the voter rolls.[56]

143. Upon information and belief, Gregg County sent 99 Notices of Examination to registered voters pursuant to the Advisory requiring the voters to present proof of U.S. citizenship or be removed from the voter rolls.[57]

144. Upon information and belief, Kerr County sent 68 Notices of Examination to registered voters pursuant to the Advisory requiring the voters to present proof of U.S. citizenship or be removed from the voter rolls.[58]

145. Upon information and belief, Victoria County sent 128 Notices of Examination to registered voters pursuant to the Advisory requiring the voters to present proof of U.S. citizenship or be removed from the voter rolls. Defendant Vogel subsequently sent 29 letters to voters asking them to disregard the Notices of Examination.[59]

---

[55] *See* Exhibit 80 to Plaintiffs' Re-urged App. for TRO, James Barragan, "Civil rights group sues Texas over order to investigate potential noncitizen voters with flawed data," *Dallas Morning News* (February 2, 2019), available at https://www.dallasnews.com/news/politics/2019/02/02/civil-rights-group-sues-texas-order-investigate-thousands-potential-non-citizen-voters-flawed-data (accessed February 20, 2019).

[56] *See* Exhibit 81 to Plaintiffs' Re-urged App. for TRO, Caitlin Clark, "Brazos County officials: Disregard voter roll notices for now," *The Eagle* (February 1, 2019), available at https://www.theeagle.com/news/local/brazoscounty-officials-disregard-voter-roll-notices-fornow/article_b9dcdc28-6cc1-5eef-b672-5060cd3e946c.html (accessed February 20, 2019).

[57] *See* Exhibit 77 to Plaintiffs' Re-urged App. for TRO.

[58] Tr. 2019-02-19 (Testimony of Bob Reeves) 81:2-83:7.

[59] *See* Exhibit 82 to Plaintiffs' Re-urged App. for TRO, Ciara McCarthy, "State officials change information for county election offices amid citizenship review," *Victoria Advocate* (January 29, 2019), available at https://www.victoriaadvocate.com/news/government/state-officials-change-information-for-

146. Upon information and belief, Willacy County sent Notices of Examination to registered voters pursuant to the Advisory requiring the voters to present proof of U.S. citizenship or be removed from the voter rolls.

147. Other voters are waiting in limbo because the counties in which they are registered to vote have not sent any letters, but have not declined to investigate their suspected non-citizen lists sent by Defendant Whitley.  These voters are stigmatized and fear that they are under investigation.

The Matching Procedure Employed by Defendant has and will Continue to Target Naturalized Citizens for Investigation and Removal from the Voter Rolls

148. The matching procedure used by Defendant Whitley to create his list of "Possible Non U.S. Citizens" relies on outdated and inaccurate records from DPS; the resulting list has erroneously identified numerous registered voters in Texas who are U.S. citizens who are properly registered to vote and who could be deprived of their right to vote in Defendants' purge effort.

149. In preparing his list of "Possible Non U.S. Citizens," Defendant Whitley performed the matching procedure between driver's license records and voter records dating back to at least 1996.[60]  Thus, his list of suspected non-U.S. citizen voters includes immigrants who showed proof of authorized presence in the U.S. during the process of obtaining a driver's license decades ago.  Thousands of naturalized citizens who registered to vote are included on the Secretary of State's list of suspected non-U.S. citizen voters.

---

countyelection-offices-amid-citizenship/article_cd29f0d2-241d-11e9-a7be-33decbf9ade1.html  (accessed February 20, 2019).

[60] Gregg Re, *List of 95K ineligible voters on the rolls may be overstated, Texas State Department suggests*, FOX News (January 30, 2019) available at https://www.foxnews.com/politics/texas-state-officials-suggest-report-of-95k-ineligible-voters-may-have-been-dramatically-overstated (accessed February 1, 2019).

150. The errors in Defendant Whitley's matching procedure are systematic, predictable, and specific to foreign-born U.S. citizens.

151. Defendant Whitley knew or should have known that his list of suspected non-U.S. citizen voters contained many naturalized citizens because his office had been aware of that fact for months before he sent the list to the counties.

152. In an email that Betsy Schonhoff, an employee of the Office of the Secretary of State, sent to Gayatri Vasan, a business analyst working for DPS, on April 16, 2018, Ms. Schonhoff wrote, "I have been talking with Keith about this process and we were talking about possibly trying to verify the list you provided against the SAVE database before we send these to the counties to eliminate those who have become Citizens since their last update with you." Ms. Schonhoff said that in order to do so, "we would need a numeric identifier (Alien Number, Form I-94, Arrival Departure Record number, Student and Exchange Visitor Information System (SEVIS) ID number, or unexpired foreign passport number)," and then asked Ms. Vasan if her system had that type of information.

153. Ms. Vasan responded to Ms. Schonhoff the following day and wrote "our IT team says they can work on these modifications only in October," asked if Ms. Schonhoff would want to wait until then for the file, and said that the "files without these modifications have been placed in the SFTP server already for SOS."   Ms. Schonhoff responded minutes later and said, "[w]e will go ahead and grab the files now to see/gauge what we are looking at working with and to start internal evaluation with the data we currently have[…][b]ut we do think it would a good idea to include that information for further review processing."

154. In the months leading up to Defendant Whitley's release of his suspected non-U.S. citizen voter list, the Office of the Secretary of State pressed DPS to provide a list of

driver's license/state ID holders who were not U.S. citizens.  DPS responded that "DPS is not an authorizing agency to confirm citizenship."[61]  DPS made clear to the Office of the Secretary of State that DPS collects citizenship information "at the time of the transaction, but that may not be current because when you come in for the driver's license, you get a driver's license for six years, right[…][w]e may not have the current citizenship information."[62]

155.  DPS "suggested [the Office of the Secretary of State] should go directly to DHS if they want current citizenship information."[63]  DPS also made clear that "the contract that we have with DHS [Department of Homeland Security] doesn't allow us to run records like that outside of a DL issuance process."[64]   As a result, DPS was not able to run records through the SAVE database.[65]

156.  Nevertheless, DPS "received an email from chain of command to prioritize" the project, and so DPS started working to provide a list of driver's license holders with non-U.S. citizenship in their records in September 2018.[66]

157.  On September 4, 2018, Ms. Betsy Schonhoff of the Office of the Secretary of State sent DPS notes from a meeting in which "the target of today was to identify what indicates to DPS that a person is **not** a U.S. citizen."  (emphasis in original).  Ms. Schonhoff's notes also said that "[i]t was confirmed that the data being transmitted to SOS is not being used for validation of citizenship at the point of application, but is being used to identify potential registered voters that may need to be investigated for eligibility."

---

[61] (2/19/19 Tr. Testimony of Gayatri Vasan)  210:18-211:6.
[62] *Id.*
[63] *Id.*
[64] (2/19/19 Tr. Testimony of Gayatri Vasan) 212:3-22.
[65] *Id.*
[66] (2/19/19 Tr. Testimony of Gayatri Vasan) 211:22-212:2

158. At the end of January 2019, after the Secretary of State issued the Advisory, the Office of the Secretary of State continued to press DPS for data verifying whether driver's license holders were U.S. citizens or non-citizens.  Tr. 2019-02-19 (Testimony of Gayatri Vasan) 197:2-198:15.  At a meeting in early February 2019 between DPS and staff members from the Secretary of State's office, the Secretary of State staff said, "[t]his is what we want, list of non-citizens[…][y]ou tell us how we can get the data from your database."  *Id*. at 199:24-200:3.

159. The matching procedure employed by Defendant Whitley will continue to identify naturalized U.S. citizens as suspected non-U.S. citizens registered as voters.  Defendant Whitley's January 25, 2019 press release stated:

> Going forward, the Texas Secretary of State's office will use information it obtains from DPS on a monthly basis to cross-reference with Texas' statewide voter registration database and match potential non-U.S. citizens who have registered to vote.  Once a voter registration is identified as a match, the Texas Secretary of State's office will notify the county in which the person is registered so that the county voter registrar can take action.[67]

160. Thus Defendant Whitley's matching procedure will flag, on a monthly basis, any new registrants whose past driver's license records show they were not U.S. citizens and send those registrants' names to the counties for investigation and possible removal of Plaintiff from the voter rolls.  The matching procedure will flag, routinely and predictably, every newly naturalized citizen who registers to vote and who already has a Texas driver's license.[68]

---

[67] *Secretary Whitley Issues Advisory On Voter Registration List Maintenance Activity*, Texas Secretary of State (January 25, 2019), available at https://www.sos.texas.gov/about/newsreleases/2019/012519.shtml (accessed January 30, 2019).
[68] Election Advisory No. 2019-02, Texas Secretary of State (January 25, 2019), available at https://www.sos.state.tx.us/elections/laws/advisory2019-02.shtml (accessed January 30, 2019).

Defendant Whitley Will not Rescind the Advisory, Withdraw the Suspect Voter List or Recompile the List for Counties

161.  On January 31, 2019, former Texas Secretary of State Carlos Cascos, who was appointed by and served two years under Governor Greg Abbott, commented publicly on list of suspected non-U.S. voters:  "I think they need to rescind it, do due diligence and make a more accurate list."  He further recommended that the Secretary of State "contact everyone and admit to it and say, 'We made an honest mistake,' and recompile the list."[69]

162. Mr. Cascos also stated that he never went through the type of exercise that led to Defendant Whitley's list of suspected non-U.S. citizen voters:  "To my knowledge, that did not occur while I was in office [and] I never saw such a correlation [between DPS and voter role databases]. That discussion never took place."[70]

163.  By contrast, when asked whether he thought the investigation process should stop after local officials found serious issues with the list, Defendant Abbott responded:  "Listen, this isn't a hard and fast list"[71] and further stated: "This is what we would categorize as a process, a work in process . . . They will get it right."[72]

---

[69] Carlos Sanchez, *Former Texas Secretary of State Believes Inaccurate Voting List Should Be Rescinded*, Texas Monthly (January 31, 2019), available at https://www.texasmonthly.com/politics/former-texas-secretary-of-state-believes-inaccurate-voting-list-should-be-rescinded/ (accessed January 31, 2019).
[70] Carlos Sanchez, *Former Texas Secretary of State Believes Inaccurate Voting List Should Be Rescinded*, Texas Monthly (January 31, 2019), available at https://www.texasmonthly.com/politics/former-texas-secretary-of-state-believes-inaccurate-voting-list-should-be-rescinded/ (accessed January 31, 2019).
[71] *Id.*
[72] Ashley Lopez, *Gov. Greg Abbott Says Alleged Noncitizen Voter Purge Is A 'Work In Process,'* KUT (January 31, 2019), available at http://www.kut.org/post/gov-greg-abbott-says-alleged-noncitizen-voter-purge-work-process (accessed January 31, 2019).

164. Williamson County Elections Administrator Chris Davis, stated publicly in an email on Tuesday January 29, 2019, that "Williamson County has also received NO written instructions after yesterday morning's call from the" Secretary's office.[73]

165. On February 1, 2019, the Secretary of State's office emailed the counties once again, suggesting additional methods to investigate the citizenship of individuals on its list of suspected non-U.S. citizens, including contacting federal immigration authorities.[74] The Secretary of State's email to the counties neither admitted that its list of suspected non-U.S. citizens was flawed nor suggested that counties refrain from investigating the names on the list until state officials could correct the list.[75]   The Secretary of State's email did not provide clear rules or standards to determine when, if at all, counties should issue Notice of Examination letters to ensure the equal treatment of voters across counties.

166. In a February 6, 2019 videotapted interview regarding whether Defendant Governor Abbott still has "confidence in" Defendant Whitley, Defendant Abbott stated that Defendant Whitley "did exactly what he was supposed to do:  following federal and state law, sending it to the counties and saying, 'counties, listen, we're going to have to rely

---

[73] James Barragan, *Tens of Thousands removed from potential non-citizen voters list after counties find flawed data,* Dallas News (January 31, 2019), available at https://www.dallasnews.com/news/texas-politics/2019/01/30/tens-thousands-removed-potential-non-citizen-voters-list-after-counties-find-flawed-data (accessed February 1, 2019).

[74] James Barragán and Julieta Chiquillo, *Texas issues new guidelines for counties to probe whether noncitizens voted*, Dallas Morning News (February 1, 2019), available at https://www.dallasnews.com/news/texas-politics/2019/02/01/texas-officials-issue-new-guidelines-investigation-whether-non-citizens-voted (accessed February 1, 2019).

[75] Keith Ingram, Ingram Email to Counties Feb. 1, Secretary of State's Director of Elections (February 1, 2019), cited by Alexa Ura, *In advisory, Texas implies its list of thousands of voters flagged for citizenship reviews could include naturalized citizens*, Texas Tribune (February 1, 2019), available at https://www.texastribune.org/2019/02/01/texas-acknowledges-its-list-thousands-texas-voters-flagged-citizenship/ (accessed February 8, 2019).

upon you to further sort this out.'"[76]   Defendant Abbott would not say whether Defendant Whitley had sent his list of suspected non-U.S. citizen voters to the Texas Attorney General for criminal investigation:  "I can't even confirm that that happened[. . .]  All I know is what the process is[. . .]  I know it has to be passed to the counties before it can be confirmed about who is or who is not allowed to be on the voter rolls."[77]

167.  In testimony before the Texas Senate Committee on Nominations on February 7, 2019, Defendant Whitley refused to say that he would withdraw his list of suspected non-U.S. citizen voters despite the fact that there are U.S. citizens on the list.[78]

168.  Defendant Whitley confirmed that the voters on his list are still under investigation: "This maintenance activity is on-going, Senator [. . .] the counties don't have a timeline when they are completing this maintenance activity; we are working with them every day on it."[79]

169.  Defendant Whitley further said he was not the appropriate person to tell the Texas Attorney General not to investigate the names on his list of suspected non-U.S. citizen voters:  "I think that is a reasonable request[. . .]  I am not sure it is appropriate coming from my office because I do not have any investigatory authority."[80]

---

[76] *FULL EXCHANGE: Gov. Abbott answers questions about voter list*, KXAN (February 6, 2019), available at https://www.kxan.com/video/full-exchange-gov-abbott-answers-questions-about-voter-list_20190207043732/1761153960 (accessed February 7, 2019); *see also* Phil Prazan (@PhilPrazan), Twitter, (February 6, 2019, 1:51 PM) https://twitter.com/PhilPrazan/status/1093265908963909642.
[77] *FULL EXCHANGE: Gov. Abbott answers questions about voter list*, KXAN (February 6, 2019), available at https://www.kxan.com/video/full-exchange-gov-abbott-answers-questions-about-voter-list_20190207043732/1761153960 (accessed February 7, 2019); *see also* Phil Prazan (@PhilPrazan), Twitter, (February 6, 2019, 1:51 PM) https://twitter.com/PhilPrazan/status/1093265908963909642.
[78] *Senate Committee on Nominations on February 7, 2019*, The Texas Senate Audio/Video Archive – 2019 (timestamp:  2:48:59-2:51:00) (February 7, 2019) available at http://tlcsenate.granicus.com/MediaPlayer.php?view_id=45&clip_id=13804 (accessed February 8, 2019).
[79] *Id.* at 1:32:48-1:33:15.
[80] *Id.* at 2:51:27-2:52:07.

170. On February 11, 2019, Keith Ingram, Defendant Whitley's elections director, testified to the Texas House of Representatives Elections Committee that the Secretary of State's office "understood there was a significant possibility" that the list of voters it was sending to counties for citizenship reviews likely included naturalized citizens.[81]

171. On February 13, 2019, Defendant Whitley wrote a letter to lawmakers, which stated: "I have discovered that additional refining of the data my office provides to county voter registrars, both in substance and in timing, is necessary to ensure a more accurate and efficient list maintenance process . . . before announcing the number of people who may not be eligible to vote, more time should have been devoted to additional communication with counties and DPS to further eliminate anyone from our original list who is, in fact, eligible to vote . . . I recognize this caused some confusion about our intentions . . . To the extent my actions missed the mark, I apologize."  Defendant Whitley again refused to withdraw the Advisory or the list.

172. On February 15, 2019, the Office of the Secretary of State again emailed county registrars to provide further information "for your work on this project." The email emphasized that "you have the authority to use any lawful means necessary to investigate [the voters on the list]."  The email further assumes that county registrars will investigate the voters on the list by providing further guidance for "[a]fter you have investigated" and advises "Once the individual's citizenship has been verified by your office, you should mark the task 'RESOLVED' and no further action will be required." The email also emphasizes that any voter who does not respond to a Notice of Examination will have his

---

[81] Alex Ura, *The AG's office told lawmakers it isn't investigating voters on Texas' citizenship review list. It told a local official the opposite*, The Texas Tribune (Feb. 11, 2019), https://www.texastribune.org/2019/02/11/texas-ags-office-said-it-was-investigating-voters-citizenship-review-l/

or her registration cancelled and must appear and provide proof of citizenship in order to be reinstated to the voter rolls.

173.    On February 19, 2019, the Office of the Texas Attorney General filed a letter brief with the Open Records Division of that same office arguing that Defendant Whitley's suspected non-U.S. citizen voter list "pertains to an open criminal investigation by the OAG's Election Fraud Section" and the names should not be released to the public because "release would interfere with the detection, investigation, or prosecution of a crime."  The brief further argued that "[r]elease of the information at this time would interfere with the OAG's ongoing investigative interests."[82]

174.    As of the filing of this complaint, Defendant Whitley has not:  rescinded his list of suspected non-U.S. citizens; rescinded his Election Advisory; or made any effort to recompile the list for the counties.   Instead, Defendant Whitley insists that counties continue to investigate the citizenship of voters on the list.

<u>Other States' use of Driver's License Records to Identify Non-U.S. Citizens on Their Voter Rolls was Thoroughly Discredited Years ago</u>

175.    Similar attempts by other states to identify non-U.S. citizen voters from motor vehicles records have been widely discredited, leading to an embarrassing withdrawal of claims by state elections officials in Florida and Colorado.

176.    In May 2012 the Florida Department of State launched a voter purge effort that originally identified 180,000 registered voters as potential non-U.S. citizens based on their driver's license records. The Florida Department of State sent letters demanding proof of

---

[82] *See* Exhibit 79 to Plaintiffs' Re-urged Emergency Application for Temporary Restraining Order, Office of the Attorney General's Letter Brief with the Open Records Division.

citizenship to 2,600 registered voters, a disproportionately high number of whom were Latino.[83]

177. By September 2012, the Florida purge, which had faltered when county elections officials questioned the methodology, started up again, this time with a much smaller list of 198 registered voters.[84] Ultimately, about 85 voters were removed from the rolls.[85]

178. In Colorado, the Secretary of State launched a similarly flawed voter purge of alleged non-U.S. citizens in 2012 that also dwindled to very small numbers. After claiming, based on driver's license records, that there were up to 11,000 non-U.S. citizens on the Colorado voter rolls, and then sending almost 4,000 letters accusing individual registered voters of non-U.S. citizenship, Colorado Secretary of State Scott Gessler admitted that he thought 141 voters were potentially non-U.S. citizens and that he could not confirm that any were non-U.S.-citizens before the General Election.[86]   Ultimately 14 of these voters were removed from the rolls; none had voted.[87]

---

[83] Greg Allen, *World War II Vet Caught Up In Florida's Voter Purge Controversy*, NPR (May 31, 2012) available at https://www.npr.org/sections/itsallpolitics/2012/05/31/154020289/world-war-ii-vet-caught-up-in-floridas-voter-purge-controversy   (accessed February 1, 2019); *see also* Janell Ross, *Florida Voter Purge Will Continue, Defying Federal Warning*, Huffington Post (June 2, 2012) available at https://www.huffingtonpost.com/2012/06/02/florida-voter-purge-federal-warning_n_1564131.html (accessed February 1, 2019).
[84] Steve Bousquet, *Fla. Gov. Rick Scott's voter purge efforts start anew*, Tampa Bay Times (September 27, 2012) available at http://www.tampabay.com/news/politics/national/fla-gov-rick-scotts-voter-purge-efforts-start-anew/1253538 (accessed February 1, 2019).
[85] Steve Bousquet and Amy Sherman, *Florida suspends non-citizen voter purge efforts*, (March 27, 2014), available at https://www.miamiherald.com/news/politics-government/article2087729.html (accessed February 1 2019).
[86] *Scott Gessler, Colorado's Secretary Of State, Asks 4,000 Registered Voters For Proof Of Citizenship*, Huffington Post (August 17, 2012), available at https://www.huffingtonpost.com/2012/08/17/scott-gessler-secretary-o_n_1796910.html (accessed February 1, 2019); Jordan Fabian, *Voter Purging Resurfaces in Colorado*, ABC News (October 24, 2012) available at https://abcnews.go.com/ABC_Univision/voter-purging-resurfaces-colorado/story?id=17552694 (accessed February 1, 2019).
[87] Sam Levin, *Out of fourteen illegal voters banned after Scott Gessler's campaign, how many voted? Zero* Westword (October 12, 2012) available at https://www.westword.com/news/out-of-fourteen-illegal-

<u>Defendants' Voter Purge Falls Far Outside State and Federal Authorization for Voter Roll Maintenance</u>

179. In Texas, a "qualified voter" is a person who:  is 18 years of age or older; is a United States citizen; has not been determined by a final judgment of a court to be mentally incapacitated without the right to vote; is not a felon who has not completed the sentence associated with the felony; is a resident of Texas; and is registered to vote.[88]

180. A person seeking to register to vote in Texas must submit an application.  The voter registrant must complete the application, affirm that he or she is a U.S. citizen, and sign below the statement:  "I understand that giving false information to procure a voter registration is perjury, and a crime under state and federal law. Conviction of this crime may result in imprisonment up to 180 days, a fine up to $2,000, or both."[89]

181. In Texas counties, the "county tax assessor-collector is the voter registrar for the county unless the position of county elections administrator is created or the county clerk is designated as the voter registrar."[90]

182. The Texas Election Code requires voter registrars to investigate or remove a voter from the rolls upon learning that the voter is no longer eligible.[91]  The specific reasons provided by the Texas Election Code for cancelling a voter's registration include:[92]

    a.  Current information that the voter is deceased;

    b.  Current information that the voter has moved out of the jurisdiction;

---

voters-banned-after-scott-gesslers-campaign-how-many-voted-zero-5868036  (accessed February 1, 2019).
[88] Tex. Elec. Code Ann. § 11.002(a); *see also* Tex. Elec. Code Ann. § 13.001(a).
[89] *See* Tex. Elec. Code Ann. § 13.002(a)-(c) and the Texas voter registration form, available at https://www.sos.state.tx.us/elections/forms/vr-with-receipt.pdf.
[90] *See* Tex. Elec. Code § 12.001.
[91] *See generally*, Tex. Elec. Code § 16.031 - 16.0332.
[92] Tex. Elec. Code § 16.031 (listing reasons for which registrars may immediately cancel registration)

    c.   Current information that the voter has been convicted of a felony;

    d.   Current information that the voter has been adjudicated mentally incompetent;

    e.   Upon the request of the voter.[93]

183. The Texas Election Code authorizes the voter registrar to cancel a voter registration immediately upon notice that the voter has died, been adjudicated mentally incompetent, been convicted of a felony or moved outside the county (when the notice of change in residence is provided by the voter or another county registrar).[94]  All of this information must reflect the current status of the voter.

184. In addition to the grounds for immediate cancellation, the Texas Election Code authorizes a voter registrar who has reason to believe that a voter "is no longer eligible for registration" to send a notice to the voter indicating that the voter's registration status is under investigation by the registrar and the voter must provide proof of eligibility within 30 days.[95]

185. With respect to a voter's citizenship, the Texas Election Code only authorizes voter registrars to act on current information that the voter is not a U.S. citizen.  The registrar must send a notice requiring proof of U.S. citizenship upon receiving information that the voter was excused or disqualified from jury service because of citizenship status.[96]  The Texas Secretary of State provides quarterly reports to inform county registrars of any

---

[93] Tex. Elec. Code § 16.0331 (Cancellation on Request by Voter)
[94] *See* Tex. Elec. Code § 16.031 (listing reasons for which registrars may immediately cancel registration).
[95] *See* Tex. Elec. Code § 16.033.
[96] *See* Tex. Elec. Code § 16.0332(a).

registered voters who have been excused or disqualified from jury service because the voter is not a U.S. citizen.[97]

186. Section 8 of the National Voter Registration Act (NVRA), 52 U.S.C. §20507, requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . the death of the registrant; or . . . a change in the residence of the registrant."  52 U.S.C. §20507(a)(4). Although the NVRA contemplates that states would remove voters from the rolls for ineligibility, the NVRA does not authorize states to investigate or remove from the rolls voters who were not U.S. citizens at some point in the past.  52 U.S.C. §20507(a)(3).

187. The Texas Transportation Code requires DPS to disclose "[p]ersonal information obtained . . . in connection with a motor vehicle record . . . [for use in connection with] voter registration or the administration of elections by the secretary of state."[98]  This requirement helps the State of Texas comply with the motor-voter provisions of the NVRA, which require departments of motor vehicles to prepare voter registration applications of their customers and transmit those applications to the Secretary of State.  However this requirement that DPS share data with the Secretary of State does not authorize the Secretary of State to use outdated immigration information to single out registered voters for re-verification.

188. Defendants' voter purge, which selects voters for investigation and removal from the voter rolls based on data showing the voters immigrated to the United States at some point in the past, is not authorized by state or federal law.

---

[97] *See* Tex. Elec. Code § 18.068.
[98] Tex. Transp. Code § 730.005.

Cancellation of Voter Registration in Texas

189.  After the voter registrar cancels a voter's registration, the voter registrar "shall maintain a file containing the duplicate initial registration certificates of voters whose registrations have been canceled."[99]

190.  A cancellation of a voter's registration takes effect immediately.[100]

191.  If a voter's registration is cancelled for failure to respond to a Notice of Examination requiring proof of citizenship, in a subsequent election, even if the voter casts a provisional ballot and presents proof of citizenship to the registrar within five days, it is within the discretion of the voter registrar to reinstate the voter or require the voter to re-register.[101]  If the voter is required to re-register, his or her provisional ballot would not be counted.[102]

192.  If the voter registrar cancels a voter's registration, the voter can challenge the cancellation by sending a request for a hearing to challenge the cancellation.[103]  The voter registrar then must set a hearing no later than the tenth (10th) day after receiving the request for hearing.[104]    At or before the hearing, the voter may submit evidence or argument by affidavit; after the hearing, the voter registrar "shall promptly determine the challenge and issue a decision in writing."[105]

---

[99] Tex. Elec. Code § 15.142(a)
[100] Tex. Elec. Code § 16.035
[101] Tex. Elec. Code § 16.037.
[102] Tex. Elec. Code § 65.054 (b)(1)
[103] See Tex. Elec. Code §§ 16.061-16.062.
[104] See Tex. Elec. Code § 16.064.
[105] See Tex. Elec. Code §§ 16.064(c), 16.066.

## CAUSES OF ACTION

## COUNT 1

### (Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by Discrimination Based on National Origin)

193.  Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

194.  This claim is asserted by individual Plaintiffs on their own behalf and on behalf of all persons in the General Class.

195.  Section 1 of the Fourteenth Amendment provides:  "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. . . .   No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

196.  Defendants violate the Fourteenth Amendment because they deny to Plaintiffs, who are naturalized citizens of the United States, equal protection of the laws through Defendants' imposition of additional requirements to register to vote and to maintain voter registration that Defendants do not impose on native-born citizens.  Defendants have no compelling interest in imposing such burdens and the procedures used by Defendants are not narrowly tailored.

197.  Defendants' violation caused and will cause harm to Plaintiffs.

## COUNT 2

### (Violation of Sec. 2 of the Voting Rights Act, 52 U.S.C. § 10301)

198.  Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

199.  This claim is asserted by all Plaintiffs and by individual Plaintiffs on behalf of all persons in the Latino Subclass.

200. Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, provides: "No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or [membership in a language minority group]."

201. Defendants violate Section 2 of the Voting Rights Act by imposing a voting qualification or prerequisite to voting or standard, practice, or procedure through the additional requirements Defendants impose on Plaintiffs and other Latino naturalized citizens prior to such persons exercising their right to vote. Defendants' imposition of such additional requirements purposefully abridges and denies the right to vote of Plaintiffs, and the members and populations served by Plaintiff organizations, on account of their race, color or membership in a language minority group.

202. Defendants' requirements will disproportionately and negatively affect Latinos, including Plaintiffs, because the Latino population in Texas has a higher ratio of naturalized citizens to native-born citizens when compared to the non-Latino population. Defendants' imposition of such additional requirements will result in denial and abridgment of the right to vote of Plaintiffs, and the members and populations served by Plaintiff organizations on account of their race, color or membership in a language minority group by making the political processes leading to nomination or election in Texas not equally open to participation by Latinos.

203. Defendants' violation caused and will cause harm to Plaintiffs.

## COUNT 3

### (Violation of the Civil Rights Act of 1964, 52 U.S.C. § 10101)

204.  Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

205.  This claim is asserted by all Plaintiffs and by individual Plaintiffs on behalf of all persons in the Latino Subclass.

206.  Section 101 of the Civil Rights Act of 1964, as amended, provides:  "(2) No person acting under color of law shall [] in determining whether any individual is qualified under State law or laws to vote in any election, apply any standard, practice, or procedure different from the standards, practices, or procedures applied under such law or laws to other individuals within the same county, parish, or similar political subdivision who have been found by State officials to be qualified to vote."  52 U.S.C. § 10101(a)(2).

207.  Defendants violate the Civil Rights Act of 1964, 52 U.S.C. § 10101, because, under color of law, they impose additional requirements and procedures to prove eligibility to vote upon Plaintiffs and the members and populations served by Plaintiff organizations that they do not impose on other individuals that have been found by state officials to be qualified to vote.  Defendants impose additional requirements and procedures to prove eligibility to vote because of Plaintiffs' race, color or national origin.

208.  Defendants' violation caused and will cause harm to Plaintiffs.

## COUNT 4

### (Violation of 42 U.S.C. § 1985, Conspiracy to Interfere with Civil Rights)

209.  Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

210.  This claim is asserted by individual Plaintiffs on their own behalf and on behalf of all persons in the General Class.

211.  42 U.S.C. § 1985(3) provides:   "If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons

of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector[. . .] [I]n any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is . . . deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

212.  Defendants Abbott, Paxton, and Whitley violate § 1985(3)  because they conspire and have conspired to deny Plaintiffs, on the basis of race and national origin, the equal protection of the laws as detailed above in Count 1 and to deny Plaintiffs' rights under the federal Voting Rights Act.

213.  Defendants Abbott, Paxton, and Whitley additionally violated § 1985(3) because they conspire and have conspired to prevent Plaintiffs from exercising their right to vote in federal elections by intimidation and threats.  Such intimidation and threats included the Election Advisory, release of lists of suspect voters to counties, and public statements that Plaintiffs' past and future actions to register to vote and to vote amount to voter fraud.

214.  Defendants' violation caused and will cause harm to Plaintiffs.

**COUNT 5**

**(Violation of the First and Fourteenth Amendments to the United States Constitution**

**Protections Against Undue Burden on the Right to Vote)**

215.  Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

216.  This claim is asserted by individual Plaintiffs on their own behalf and on behalf of all persons in the General Class.

217.  Defendants' actions and omissions that impose additional requirements to register to vote and to maintain voter registration unreasonably infringe upon Plaintiffs' right to vote under the First and Fourteenth Amendments.   Defendants' imposition of such additional requirements is invidious and constitutionally infirm because, among other things, these additional requirements are based on a flawed methodology that subjects Plaintiffs to a franchise challenge where no grounds for a challenge exist, are discriminatory on the basis of race, color, and national-origin, imposes overly-restrictive cure procedures, do not provide reasonable notice or due process prior to removal from the voter rolls, do not provide a mechanism to ensure that improperly removed voters are returned to the voter rolls in a timely manner, and will deprive Plaintiffs of the right to vote.

218.  To the extent Defendants assert any interests to justify their actions and omissions, those interests do not justify Defendants' imposition of additional requirements to register to vote and to maintain voter registration.

219.  Defendants' violation caused and will cause harm to Plaintiffs.

## COUNT 6

**(Violation of the Fourteenth Amendment Equal Protection and Due Process Clauses**

**by Arbitrary and Disparate Treatment of Voters)**

220.  Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

221. This claim is asserted by individual Plaintiffs on their own behalf and on behalf of all persons in the General Class.

222. The Fourteenth Amendment requires election officials to avoid arbitrary and disparate treatment of the members of the electorate. Defendants' voter purge is riddled with inconsistent treatment by State and local officials and lacks rules and guidance from State Defendants to ensure uniform treatment of voters.   The investigation into Plaintiffs' citizenship has employed varying standards county by county and the voter purge does not satisfy the minimum requirement for non-arbitrary treatment of voters necessary to secure the fundamental right to vote.

223.  Defendants' violation caused and will cause harm to Plaintiffs.

## CLASS ACTION ALLEGATIONS

224.  This action is properly maintained as a class action pursuant to Federal Rules of Civil Procedure 23.

225.  Members of the putative class and subclass are so numerous that joinder is impracticable. Defendant Whitley's list of suspect voters includes approximately 98,000 individuals, including thousands of naturalized U.S. citizens who meet the General Class definition.  A high percentage of naturalized U.S. citizens in Texas are Latino, and thousands of such citizens appear on Defendant Whitley's list and meet the Latino Subclass definitions. Additionally, membership in the putative class and subclass is fluid because Defendant Whitley has advised that he will update his list according to his flawed methodology.  This fluidity makes joinder of all class and subclass members impracticable.

226. The putative class and subclass share common questions of fact and law.  All class members complain of Defendants' creation and use of a list that uniformly imposes

burdens and obligations on class members and threatens to deprive all class members of their rights to equally access the political process and to vote.   Defendants' conduct discriminates against all Latino Subclass members by imposing the same burdens and obligations on the members, and Defendants' actions disproportionately and negatively affect the Latinos who comprise this subclass.

227. The claims alleged by the named individual Plaintiffs are typical of the claims of all members of the putative General Class because the actions and policies challenged apply with the same force to the named individual Plaintiffs as they do to all other members of the General Class.   Likewise, the claims alleged by the named individual Plaintiffs for the Latino Subclass are typical of the claims of the putative members of the Latino Subclass because the actions and policies challenged apply with the same force to the named individual members of the Latino Subclass as they do to all other members of the Latino Subclass.

228. The named individual Plaintiffs will fairly and adequately protect the interest of the class and subclass because there are no conflicts of interest between any class or subclass members and the named individual Plaintiffs possess a strong personal interest in the subject matter of this lawsuit and the claims raised.   Plaintiffs are represented by counsel with expertise in class action litigation and litigation involving constitutional law and voting rights.   Counsel has the legal knowledge and resources to fairly and adequately represent the interests of all class and subclass members in this action.

229. This class action may be maintained under Federal Rule of Civil Procedure 23(b) because prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class and subclass members

that would establish incompatible standards of conduct for Defendants.  Defendants also have acted or failed to act on grounds that generally apply to all class and subclass members, necessitating the declaratory and injunctive relief Plaintiffs seek.  In addition, questions of law and fact common to class and subclass members predominate over questions affecting only individual class and subclass members.  A class action is superior to other available methods for fairly and efficiently adjudicating the controversy because, among other things, a class action would concentrate a multiplicity of individual actions, which share common fact and legal disputes, into a single forum.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)  Assume jurisdiction over this matter;

(b)  Certify this case as a class action pursuant to Federal Rule of Civil Procedure 23, to consist of a plaintiff class and subclass as defined above;

(c)  Declare that Defendants' actions described herein violate Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution; the First Amendment  to the United States Constitution; Section 2 of the Voting Rights Act, 52 U.S. § 10301; the Civil Rights Act of 1964, 52 U.S. § 10101; and 42 U.S.C. §1985(3);

(d)  Enjoin Defendants, and all others acting in concert with them, from obtaining, disclosing, or using for any matter of voter registration, the administration of elections, or investigations regarding eligibility to vote, any records maintained by the Texas Department of Public Safety showing non-U.S. citizenship prior to the date of voter registration;

(e) Enjoin Defendants, and all others acting in concert with them, from investigating or instructing any other person or entity to investigate the eligibility to vote of any person identified through records obtained from the Texas Department of Public Safety that show non-U.S. citizenship prior to the date of voter registration;

(f) Enjoin Defendants, and all others acting in concert with them, from issuing or instructing any other person or entity to issue a letter, notice, or advisory (including Notices of Examination) regarding any matter of voter registration, the administration of elections, or eligibility to vote based on records maintained by the Texas Department of Public Safety showing non-U.S. citizenship of a voter prior to the date of voter registration.

(g) Order Defendants county voter registrars to refrain from cancelling, and/or to reinstate the voter registration of any voter following investigation into eligibility to vote based on records maintained by the Texas Department of Public Safety showing non-U.S. citizenship prior to the date of voter registration;

(h) Order Defendants to announce publicly that Defendant Whitley's list of suspected non-citizen voters does not contain current evidence of non-U.S. citizenship of voters and announce publicly the contents of the Court's injunction;

(i) Award Plaintiffs damages in a sum to be determined by the Court;

(j) Award Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. §§ 1988, 52 U.S.C.A. § 10310, and any other applicable law;

(k) Order, pursuant to 52 U.S.C. § 10302(c) that Defendants can enforce no change in voting qualification or prerequisite to voting, or standard, practice, or procedure unless and until the change is precleared by this Court or by the U.S. Attorney General pursuant to section 5 of the Voting Rights Act, 52 U.S. Code § 10304;

(l)  Maintain jurisdiction over this action;

(m) Grant such other and further relief as may be deemed just and proper.


Dated:  February 20, 2019                          Respectfully Submitted,

                                                   **MEXICAN AMERICAN LEGAL**
                                                   **DEFENSE AND EDUCATIONAL FUND**
                                                   By: */s/ Nina Perales*_____
                                                   Nina Perales (Tex. Bar No. 24005046)
                                                   Ernest I. Herrera (Tex. Bar No.
                                                   24094718)
                                                   Alejandra Ávila (Tex. Bar No. 24089252)*
                                                   Jack Salmon (Tex. Bar No. 24068914)
                                                   110 Broadway, Suite 300
                                                   San Antonio, Texas 78205
                                                   Phone:  (210) 224-5476
                                                   Facsimile:  (210) 224-5382
                                                   Email: nperales@maldef.org
                                                   *(*Pro Hac Vice application pending)*

                                                   Attorneys for Plaintiffs


## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on the 20th day of February, 2019, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.  I also emailed a copy of the above and foregoing document to the following attorneys for County Defendants: ckirby@angelinacounty.net (Angelina); Jesse.Skinner@austincounty.com (Austin); jlindig@banderacounty.org (Bandera); coatty@co.blanco.tx.us (Blanco); natalie@koehlerlawfirm.net (Bosque); randerson@brazoscountytx.gov (Brazos); e.magee@allison-bass.com (Galveston); GCDA@co.gregg.tx.us (Gregg); hstebbins@co.kerr.tx.us (Kerr); twilso@smith-county.com (Smith); STYLER@VCTX.ORG (Victoria); annette.hinojosa@co.willacy.tx.us (Willacy); aalbers@mywoodcounty.com (Wood).

                                                   */s/ Nina Perales*_____
                                                   Nina Perales

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JULIETA GARIBAY, *et al.* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | Civil Action No. 5:19-cv-00159-FB |
| | § | |
| DAVID WHITLEY, *et al.* | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER</u>

Pending before the Court is the Motion for Leave to File a Second Amended Complaint, filed by Plaintiffs Julieta Garibay, *et al.* ("Plaintiffs"). For good cause shown, the Motion for Leave to File a Second Amended Complaint is hereby GRANTED. The Clerk is directed to file the Second Amended Complaint attached as Exhibit A to the Motion.

**IT IS ORDERED** on this _____day of February, 2019.


_____
Hon. Fred Biery
United States District Judge