## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Texas League of United Latin American Citizens, et al. | § § § § § | |
| | § | |
| *Plaintiffs,* | § § | |
| v. | § § | |
| David Whitley, in his official capacity as the Texas Secretary of State, and Ken Paxton, in his official capacity as Attorney General for the State of Texas, | § § § § § § | CIVIL ACTION NO. 5:19-CV-00074-FB |
| *Defendants.* | § | |

## MOTION TO INTERVENE BY PROPOSED INTERVENOR DEFENDANT
## PUBLIC INTEREST LEGAL FOUNDATION

The Public Interest Legal Foundation (the "Foundation"), by and through undersigned counsel, respectfully moves this Court for leave to intervene as a Defendant as a matter of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure, or, in the alternative, permissively under Rule 24(b)(1). Pursuant to Federal Rule of Civil Procedure 24, the Foundation's proposed responsive filing is attached to this motion.

In support of this motion, the Foundation submits the following supporting memorandum of points and authorities.

### Introduction

The Foundation requests that the Court grant it leave to intervene as a Defendant as of right pursuant to Federal Rule of Civil Procedure 24(a)(2). The Foundation has a direct and tangible interest in this litigation that will be necessarily impaired if Plaintiffs prevail and that

interest is not adequately represented by any Defendant. This case raises the important constitutional question of whether communications between state and local election officials regarding voter roll maintenance programs can constitute "intimidation, threats, or coercion" against any person voting or attempting to vote within the meaning of the Voting Rights Act, 52 U.S.C. § 10307(b). The Foundation suggests that such an application of the Voting Rights Act ("VRA") would be wholly beyond constitutional limits and contrary to the plain meaning of the statute.

The Foundation's charitable missions include working to protect the fundamental right of individuals and persons to engage in constitutionally protected speech, ensuring the enforcement of voter qualification laws and election administration procedures, and providing assistance to states that seek to exercise their constitutional powers to determine the rules and laws pertaining to their own state elections. The Foundation has sought to advance the public's interest in balancing state control over elections with Congress's constitutional authority to protect the public from racial discrimination in voting. This is best done by ensuring that the VRA and other federal election laws are preserved and followed as the drafters intended.

These interests will be directly and adversely impacted by this case, which seeks to prohibit the State's election officers from communicating about efforts to maintain accurate voter rolls. By characterizing Defendants' reporting on efforts to maintain an accurate voter registration roll as "voter intimidation"[1] designed to "create fear" and "stoke public anxiety,"[2] this case presents an alarming attack on the power of public officials, and their ancillary rights to participate in public discourse about the actions of their office. Simply reporting on the State's efforts to maintain an accurate voter registration roll cannot constitute violations of the VRA in

---

[1] Doc. 2, First Amended Class Action Complaint, ¶¶ 92-98.
[2] *Id*. ¶ 96.

this circumstance. To allege that communications such as these constitute threats, coercion, and voter intimidation is an attack on both constitutionally protected speech and on the power of a state election official to manage elections and voter registration.

The Foundation's mission is to ensure that constitutionally protected speech is preserved, as well as to ensure all voters that states are complying with federal and state voting laws. The Foundation regularly seeks information from election officials regarding their efforts to maintain their voter rolls. *See*, *e.g.*, *Public Interest Legal Foundation v. Bennett*, No. 4:18-cv-00981 (S.D. Tex., filed Mar. 29, 2018) (alleging that the voter registrar for Harris County, Texas failed to make records available pursuant to the National Voter Registration Act). If election officials are prevented from communicating and reporting on their efforts to maintain voter rolls, then the mission of the Foundation will be frustrated and severely burdened. If election officials are prevented from undertaking steps and procedures to ensure that only citizens who are eligible to vote are the only names listed on the rolls of eligible voters, then the mission of the Foundation will be frustrated and severely burdened. Penalizing election officials for communicating the nature of list maintenance efforts regarding voter rolls would also be against the public policy of promoting government accountability, ensuring access to government decision-making processes, and open communication with election officials about how they manage elections and voter registration.

The Defendants do not adequately represent the Foundation's interests in protecting speech from Plaintiffs' allegations of voter intimidation and have not yet made, and likely will not make, any of the particular constitutional challenges to the Plaintiffs' application of the VRA as would the Foundation. This is because the interests of the Defendants differ from those of the Foundation. If the Plaintiffs succeed in characterizing the speech at issue here as "voter

intimidation" in violation of the VRA, then the state Defendants could be chilled from future communication about their voter roll maintenance programs. This would frustrate the mission of the Foundation and its contributors who support free speech and demand transparency from their elections officials. The Foundation relies on transparency regarding voter roll list maintenance and any effort to mitigate liability by adopting a policy of silence as advocated by the Plaintiffs would harm the Foundation's interests.

In the alternative, the Foundation requests the Court grant permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(1)(B), on the grounds that the Foundation has claims and defenses that share common questions of law and fact with the main action. As a nonprofit organization with special interests in the guarantee of constitutionally protected speech and administration of election laws, particularly efforts to keep non-citizens from participating in American elections, the Foundation should be permitted to intervene permissively as similarly situated organizations have been granted permission in similar litigation. *See*, *Kobach v. United States Election Assistance Comm'n*, 2013 U.S. Dist. LEXIS 173872 (D. Kan. Dec. 12, 2013) (granting the motion to intervene as defendants of several nonprofit groups, including the League of United Latin American Citizens Arizona). Indeed, the Foundation has been permitted to intervene in other cases in which it has an interest, particularly pertaining to cases involving ensuring that noncitizens are not participating in American elections, and against efforts to advance an unsupportable interpretation of the VRA that exceeds constitutional bounds. *See*, *e.g.*, *League of Women Voters of the United States v. Newby*, 195 F. Supp. 3d 80, 88 (D.D.C. 2016) and *Luna v. Cegavske*, No. 2:17-CV-2666 JCM (GWF), 2018 U.S. Dist. LEXIS 131557, at *1-2 (D. Nev. Aug. 6, 2018).

If intervention is granted, the Foundation will participate in this case on the schedule that will be established for the existing parties; will avoid unnecessary delays or duplication of efforts in areas satisfactorily addressed and represented by the existing Defendants, to the extent possible; and will coordinate all future proceedings with the existing Defendants, to the extent possible.

## I.     The Court Should Grant Intervention as of Right.

When considering a motion to intervene as of right under Rule 24, the court considers "whether: 1) the motion is timely; 2) the movant has an interest in the action's subject matter; 3) the movant shows that 'disposition of the action may impair or impede' the movant's ability to protect its interest; and 4) the movant's interest is adequately represented by existing parties." *Aransas Project v. Shaw*, 404 F. App'x 937, 940 (5th Cir. 2010) (citing *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 422 (5th Cir. 2002)). "Federal courts should allow intervention 'where no one would be hurt and greater justice could be attained.'" *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (citing *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)). The Foundation's Motion satisfies each requirement.

### A.     The Foundation's Motion Is Timely.

First, Rule 24 requires that a motion to intervene be timely filed. Fed. R. Civ. Pro. 24(a). When evaluating timeliness, courts will generally look to "(1) the length of time the intervenor knew or should have known of his interest; (2) prejudice to the existing parties resulting from the intervenor's failure to apply for intervention sooner; (3) prejudice to the intervenor if his application for intervention is denied; and (4) the existence of unusual circumstances." *Perez v. Perry*, No. SA-11-CV-360, 2013 U.S. Dist. LEXIS 137345, at *21-22 (W.D. Tex. Sep. 24, 2013) (citing *Trans Chem. Ltd. v. China Nat'l Machinery Imp. & Exp. Corp.*, 332 F.3d 815, 822 (5th

Cir. 2003)). Further, "[t]he requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).

There has been exceptionally little time since the Foundation became aware of this case and of its interest in it. The initial complaint was filed on January 29, 2019, (Doc. 1), and the First Amended Class-Action Complaint, (Doc. 2), was filed on February 1, 2019, one month before this motion was filed. To date, the only substantive filings have been the Plaintiffs' Motion for a Preliminary Injunction, (Doc. 8), filed on February 4, 2019, and the Defendants' Motion to Dismiss, (Doc. 20), filed on February 11, 2019. On February 22, 2019, one week before this motion was filed, this Court issued an order consolidating two additional cases with this case, (Doc. 52), and setting a status conference for March 11, 2019, (Doc. 53). No other scheduling order has been set, no discovery has been undertaken, no trial date has been set, and Defendants have not filed an answer. The Foundation's motion is timely because it was filed as soon as possible-- just over four weeks after the case was initiated. *See LULAC v. City of Boerne*, 659 F. 3d 421, 434 (5th Cir. 2011) (holding that motion to intervene filed four weeks after learning of movant's interest was timely).

Because the Foundation is seeking intervention so early in the proceedings, there could not be any disruption or delay in the case and no party would be prejudiced.

**B.    The Foundation's Strong Interests in Defending Constitutionally Protected Speech and Transparency of List Maintenance Efforts Will Be Impaired if Plaintiffs Prevail.**

Second, Rule 24 requires that a movant "claim[] an interest relating to the property or transaction that is the subject of the action, and [be] so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest…." Fed. R. Civ.

P. 24(a)(2). Here, public interest supports intervention. "'The interest requirement may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group.'" *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (citing 6 Moore's § 24.03[2][c], at 24-34.) The Foundation is a public interest group, classified as a non-profit 501(c)(3) organization.

Plaintiffs' allegation that the Defendants violated Section 11(b) of the VRA simply by communicating about potential problems of noncitizens on the lists of registrants eligible to vote raises the important issue of what constitutes protected free speech versus "intimidation" and "coercion." Plaintiffs' theories of liability abuse the VRA and this case is part of a broader national strategy to use the VRA to intimidate organizations and officials who seek to improve the integrity of American elections. To the Plaintiffs, mere public discussion of voter fraud is seen as threatening or coercive. Plaintiffs' allegations seek to expand the reach of Section 11(b) of the VRA beyond what the drafters intended and what courts have allowed.

In stark contrast to the case at hand is a case involving allegations of Section 11(b) arising in the Eastern District of Pennsylvania in 2009. This case, *United States v. New Black Panther Party for Self-Defense*, *et al*., Case No. 2:09-CV-00065-SD, more aptly illustrates the type of behavior that Section 11(b) was designed to prevent – real threats, intimidation and coercion. It involved a fact pattern where several members of the Defendant's party stood outside of a polling location wearing paramilitary uniforms, shouting racial slurs, and brandishing weapons – nightsticks – in front of a polling place. Complaint at 2-3, *United States v. New Black Panther Party*, Case No. 2:09-CV-00065-SD (E.D. Pa., filed Jan. 7, 2009). The Foundation is exceedingly concerned with the Plaintiffs' desire to expand the reach of Section 11(b) of the VRA to the speech at issue here. Efforts by public officials to address reasonable

indications that noncitizens may be on voter rolls, and transparency about that process, do not credibly rise to threats, coercion or intimidation. The Foundation's dual interest in protecting speech surrounding election administration, as well as preserving the State's role in maintaining voter rolls free of noncitizens, is implicated here.

Further, the Foundation is presently defending a lawsuit in the Eastern District of Virginia where the League of United Latin American Citizens – Richmond Region Council ("LULACRR") is bringing the very same Section 11(b) of the VRA claim that the national and Texas arm of the organization attempt to bring here. *See League of United Latin American Citizens – Richmond Region Council 4614*, *et al. v. Public Interest Legal Foundation*, *et al.*, No. 1:18-cv-00423 (E.D. Va., filed April 12, 2018).[3] There, the Foundation truthfully published government records demonstrating that Virginia election officials had cancelled the registration of over 5,000 registrants "declared non-citizen" and made reasonable inferences related to these records. The Foundation relied on provisions of the National Voter Registration Act to obtain the records and provided a link to the records. LULACRR claimed that this speech violated Section 11(b) of the VRA when it was later determined that state election officials had mistakenly cancelled some of the registrants declared by the election officials to be noncitizens, when the Foundation did not know of these mistakes, and had no way of finding out about these mistakes.

Plaintiffs, here, also seek to expand the reaches of Section 11(b). The Foundation has a very strong interest in defending against Plaintiffs' allegations and their efforts to stop state election officials from ensuring that noncitizens are not on voter rolls, both as it directly relates to its mission and its case before the Eastern District of Virginia.

---

[3] In fact, Plaintiffs rely on this case in their Opposition to Defendants' Motion to Dismiss, Doc. 27 at 18-19.

In addition, the Foundation can provide a unique perspective on the national and constitutional implications of Plaintiffs' Section 11(b) allegations that the Defendants are unlikely to bring, for reasons discussed below. Such analysis would include how courts have been unwilling to apply Section 11(b) even in cases with more serious allegations. *See Gremillion v. Rinaudo*, 325 F. Supp. 375, 376-77 (E.D. La. 1971) (alleging intimidation by a uniformed police officer who assisted voters in the voting booth); *United States v. Brown*, 494 F. Supp. 2d 440, 477 n. 56 (S.D. Miss. 2007) ("The Government contends that Brown's public 'threat' to challenge persons on the list of 174 white voters if they attempted to vote in the 2003 Democratic primary violates Section 11(b)…Although the court does conclude that there was a racial element to Brown's publication of this list, the court does not view the publication as the kind of threat or intimidation that was envisioned or covered by Section 11(b).").

## C.    The Foundation's Interests Will be Impaired if Plaintiffs Prevail in this Action.

The issue of whether the Defendants' communications regarding efforts to maintain the accuracy of voter rolls violate the VRA does affect the Foundation's stated mission of protecting speech and the electoral processes, including its mission of keeping such processes open to the public. The Foundation's mission will be affected if the important constitutional concerns regarding Plaintiffs' claims are not considered by this Court. Because of the precedential effect of the decision, an adverse resolution of the action would impair the Foundation's ability to protect its interests in the future.

## D.    Existing Parties Will Not Adequately Protect the Foundation's Interests.

Absent the opportunity to intervene, the Foundation's interests almost certainly will not be adequately represented. The Foundation bears "'the burden of demonstrating inadequate

representation, but this burden is "minimal.""" *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir.

2014) (citing *Sierra Club*, 18 F.3d at 1207.)

> This requirement, however, must have some teeth, so there are two presumptions of adequate representation. *Edwards*, 78 F.3d at 1005. The first arises where one party is a representative of the absentee by law. *Id*. Here there is no suggestion that the state is the parents' legal representative. The second presumption "arises when the would-be intervenor has the same ultimate objective as a party to the lawsuit," in which event "the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Id*.

*Brumfield v. Dodd*, 749 F.3d at 345. *Brumfield* involved "litigation between Louisiana and the

federal government over the state's [school] voucher program." *Brumfield v. Dodd*, 749 F.3d 339

at 340. Parents of children who received these vouchers sought to intervene. The Fifth Circuit

found that neither of the presumptions regarding adequacy of representation applied.

Specifically, the court found that the state's interests were numerous, including "maintaining not

only the Scholarship Program but also its relationship with the federal government and with the

courts….[the court] cannot say for sure that the state's more extensive interests will *in fact* result

in inadequate representation, but surely they might, which is all that the rule requires." *Brumfield

v. Dodd*, 749 F.3d at 346 (emphasis in original). Likewise, neither of the presumptions of

adequacy of representation apply here.

Additionally, the Defendants are unlikely to defend against these allegations as strongly

as the Foundation due to Defendants' positions as public officials. As public officials,

Defendants may feel restrained from asserting certain defenses – such as the unconstitutionality

of Section 11(b) as applied in these circumstances – in order to avoid even more hostile attacks

from allies of the Plaintiffs. In contrast, the Foundation is a public benefit organization that is

unrestrained and thus can provide this Court with the full range of potential constitutional and

factual defects in the Amended Complaint without fear of negative publicity or the impact on

other official duties. Indeed, the United States Supreme Court has held that where, as here, the Defendants and the proposed intervenor have different interests or functions as parties, such differences can change their conduct and approaches to the litigation. *Trbovich v. UMW*, 404 U.S. 528, 539 (1972). Different defenses and approaches justify intervention.

Last, while Defendants have not yet filed an Answer, they have filed a Motion to Dismiss. Doc. 20. As to Plaintiffs' claims of VRA violation, Defendants mount two primary defenses: (1) that "Plaintiffs have not established that they have a private right of action to proceed…", Dkt. 20 at 26, and (2) that Plaintiffs' allegations fall short of both establishing a claim under Section 11(b) and providing evidence of any specific intent, Doc. 20 at 27-28. Defendants have not challenged the constitutionality of Section 11(b) as applied to these circumstances. The Foundation will. *See* Foundation's Proposed Answer.

In sum, the Foundation meets the criteria governing intervention as of right as interpreted in the Fifth Circuit and urges the Court to grant its motion under Fed. R. Civ. P. 24(a)(2).

## II.     In the Alternative, the Court Should Grant Permissive Intervention.

If the Court determines that the Foundation is not entitled to intervene as of right, it should grant permissive intervention under Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention is left to the discretion of the district court, and is appropriate when the intervention request is timely, the would-be intervenor "has a claim or defense that shares with the main action a common question of law or fact" and granting intervention will not unduly delay or prejudice the original parties in the case. Fed. R. Civ. P. 24(b)(1)(B) and 24(b)(3).  For the reasons stated above, the Foundation's motion is timely and allowing the Foundation to intervene would not cause any delay or prejudice.

As for the requirement of a common question of law or fact, Foundation's defense minimally shares a common question of law; to wit, whether speech reporting on the state's voter roll maintenance activity is in violation of Section 11(b) of the Voting Rights Act and is unprotected speech intended to intimidate, coerce and threaten voters. In *Florida v. United States*, the district court allowed organizations with "a special interest in the administration of Florida's elections laws" to intervene permissively in an action wherein Florida sought preclearance of changes to its election laws, including voter registration protections. *See* 820 F. Supp. 2d 85, 86-87 (D.D.C. 2011). Here, the Foundation has a special interest in the administration of state and federal election laws and this case undoubtedly involves the administration of both state and federal election laws. Thus, permissive intervention is appropriate.

## CONCLUSION

For the foregoing reasons, the Court should grant the Foundation's Motion to Intervene as of right or, in the alternative, permissively.

Dated: March 1, 2019                    Respectfully Submitted,

                                        /s/ Andy Taylor
                                        Andy Taylor SBN: 19727600
                                        Andy Taylor & Associates, P.C.
                                        2628 Hwy 36 South #288
                                        Brenham, Texas 77833
                                        Tel: 713-222-1817
                                        Fax: 713-222-1855
                                        andy@andytaylorlaw.com


                                        J. Christian Adams*
                                        Kaylan L. Phillips*
                                        Public Interest Legal Foundation
                                        32 E. Washington St., Suite 1675
                                        Indianapolis, Indiana 46204
                                        Tel: 317-203-5599
                                        Fax: 888-815-5641
                                        adams@publicinterestlegal.org
                                        kphillips@publicinterestlegal.org

                                        *Counsel for Proposed Defendant-Intervenor*
                                        *Public Interest Legal Foundation*

                                        *Application for admission *pro hac vice* forthcoming

## CERTIFICATE OF SERVICE

I certify that on March 1, 2019, I caused the foregoing to be filed with the United States District Court for the Western District of Texas via the Court's CM/ECF system, which will serve all registered users.

 /s/ Andy Taylor_____
Andy Taylor SBN: 19727600
Andy Taylor & Associates, P.C.
2628 Hwy 36 South #288
Brenham, Texas 77833
Tel: 713-222-1817
Fax: 713-222-1855
andy@andytaylorlaw.com