| | |
|---|---|
| **From:** | Elections Internet |
| **Sent:** | Monday, March 04, 2019 12:02 PM |
| **To:** | Elections Internet |
| **Subject:** | MASS EMAIL--VR/EA (633)--Advisory 2019-03 - Court Orders in Pending Litigation |
| **Attachments:** | Order 2.27.19.pdf; Order 2.28.19.pdf |

## ELECTION ADVISORY
## NO. 2019-03

TO:        Voter Registrars/Elections Administrators

FROM:   Keith Ingram, Director of Elections

DATE:    March 4, 2019

RE:        Court orders in pending litigation involving non-citizen list maintenance process


We are writing to advise you of developments on the recently initiated non-citizen list maintenance process. As you know, lawsuits challenging this process were filed in federal courts in San Antonio, Corpus Christi, and Galveston over the last month. These lawsuits were recently consolidated into one case before Judge Fred Biery in the Western District of Texas, San Antonio Division.

On February 27 and February 28, the district court entered the attached preliminary orders. The district court noted the "unanimity among the parties, counsel and the Court that non-American citizens are ineligible to vote." And the district court acknowledged that the non-citizen list maintenance process was performed in good faith to carry out statutory list maintenance duties. At the same time, counties should pause their efforts on this list maintenance process as they continue to review the now-refined data generated from the DPS database.

In this case, and in previous cases involving voter roll maintenance, the Secretary of State has maintained that he lacks the power to order counties to update their voter rolls. However, pursuant to the district court's February 27 order, the Secretary of State advises all counties "not to send any notice of examination letters nor remove voters from registration without prior approval of the Court with a conclusive showing that the person is ineligible to vote." I am alerting you that the district court ordered that, in relation to the list at issue in Election Advisory No. 2019-02, local officials are "not to remove any person from the current voter registration list until authorized by this Court." These provisions of the district court's order do "not prohibit the removal of any person based upon information independent of Advisory 2019-02, such as death, relocation or felony conviction," or the removal of any persons who are excused or disqualified from jury service because of non-citizen status or persons who request to be removed from the rolls because of their lack of citizenship.

Additionally, to the extent that the Secretary of State provides subsequent lists of potential non-citizen matches on a monthly basis, this office advises all counties "not to send notice of examination letters nor remove voters from registration without prior approval of the Court," as indicated in the district court's February 27 order. Again,

this "does not prohibit the removal of any person based upon information independent of Advisory 2019-02, such as death, relocation or felony conviction," or the removal of any persons who are excused or disqualified from jury service because of non-citizen status or persons who request to be removed from the rolls because of their lack of citizenship.

Please also note that the district court's order allows local officials to "continue to find out if in fact someone is registered who is not a citizen, so long as it is done without communicating directly with any particular individual on the list." Pursuant to the district court's order, if voters "initiate the contact with a county elections administrator," you may communicate directly with these individuals.

As we learn more, we will update you.

Sincerely,

Keith Ingram
Director, Elections Division
Office of the Secretary of State
800-252-VOTE(8683)
www.sos.state.tx.us/elections/index.shtml
**For Voter Related Information, please visit:**



*The information contained in this email is intended to provide advice and assistance in election matters per §31.004 of the Texas Election Code.  It is not intended to serve as a legal opinion for any matter.  Please review the law yourself, and consult with an attorney when your legal rights are involved.*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
FEB 27 2019
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

| | |
|---|---|
| TEXAS LEAGUE OF UNITED LATIN AMERICAN CITIZENS, ET AL., <br><br>  Plaintiffs, <br><br> V. <br><br> DAVID WHITLEY, in his Official Capacity as Secretary of State for the State of Texas; ET AL., <br><br>  Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |  CIVIL ACTION NO. SA-19-CA-074-FB |

## ORDER

Before the Court are a number of preliminary issues related to protecting the integrity of the election process and ensuring the Equal Protection of the laws for all Texans. There is unanimity among the parties, counsel and the Court that non-American citizens are ineligible to vote.

The evidence has shown in a hearing before this Court that there is no widespread voter fraud. The challenge is how to ferret the infinitesimal needles out of the haystack of 15 million Texas voters. The Secretary of State through his dedicated employees, beginning in February 2018, made a good faith effort to transition from a passive process of finding ineligible voters through the jury selection system in each county to a proactive process using tens of thousands of Department of Public Safety driver license records matched with voter registration records. Notwithstanding good intentions, the road to a solution was inherently paved with flawed results, meaning perfectly legal naturalized Americans were burdened with what the Court finds to be ham-handed and threatening correspondence from the state which did not politely ask for information but rather exemplifies the power of government to strike fear and anxiety and to intimidate the least powerful among us.[1] *See* Attachment A (TX-LULAC

---

[1] *Boustani v. Blackwell*, 460 F. Supp. 2d 822, 827 (N.D. Ohio 2006) (Boyko, J.) ("This Court has personally presided over numerous naturalization ceremonies and has witnessed firsthand the joy of these new Americans and their intense desire to participate in this nation's democratic process. There is no such thing as a second-class citizen

Exhibit 4). No native born Americans were subjected to such treatment. *See* U.S. CONST. amend XIV, § 1 ("[N]or shall any State . . . deny to any person within its jurisdiction the equal protection of the laws."). Out of 98,000 new American voters on the list, thus far approximately 80 have been identified as being ineligible to vote.[2] Almost immediately upon sending the list, the government had an "oops" moment, realizing that 25,000 names should not have been included. It appears this is a solution looking for a problem. Indeed, Secretary of State Whitley has accepted responsibility and apologized for the failure to seek confirmation of the accuracy, appropriateness, competency and due diligence of the process before the rollout. Though promising more transparency, the Secretary has resisted plaintiffs' legal concerns as opposed to entering into an agreed solution precluding further fear and intimidation. *See* Attachment B (TX-LULAC Exhibit 54); *see also United States v. Florida*, 870 F. Supp. 2d 1346, 1347, 1348 (N.D. Fla. 2012) (Hinkle, J.) (explaining that Florida election officials identified only "a small number" of ineligible voters from Secretary of State's list of "180,000 registered voters who he said might be noncitizens").[3] The Florida program, similar in nature to Texas, was ultimately abandoned by the state. *Florida*, 870 F. Supp. 2d at 1350-51. Here, for the local officials responsible for implementing the program, it was not a Henry David Thoreau moment

---

or a second-class American. Frankly, without naturalized citizens, there would be no America. It is shameful to imagine that this statute is an example of how the State of Ohio says thank you to those who helped build this country."). I concur. (Biery, J.).

[2]The Bard might say this is much ado about nothing. WILLIAM SHAKESPEARE, MUCH ADO ABOUT NOTHING, act 3, sc.1. On the other hand, for the people who perceive discriminatory impact, it is much ado about their constitutionally protected rights.

[3]As plaintiffs' counsel stated at the preliminary injunction hearing, "[o]n the Florida case, . . . they started at 180,000 identified voters in that state, and by the time they went through all the sifting, they ended up with 85" people who were ineligible to vote. (Docket no. 57, at page 52, lines 12-20); *see also Editor's Note on Nov. 12, 2018 to Story Published in May 2012*, https://www.nbcmiami.com/news/local (last visited Feb. 26, 2019) (explaining that Florida election documents show that initial list of 180,000 names was whittled to only 85 ineligible voters).

("Simplify, simplify.").[4] Rather, the Court heard compelling evidence concerning confusing and contradictory communications from the Secretary of State.

While the Court awaits proposed findings of fact and conclusions of law regarding the preliminary injunction issues, the Court is prepared to address some issues.

Defendants Whitley and Paxton have moved to dismiss, alleging the Court has no jurisdiction and plaintiffs have failed to state a claim. To the extent defendants rely upon state statutes in support of the jurisdictional motion, the Court holds that the United States Constitution trumps state law in appropriate circumstances, this being one. Moreover, given the highly credible evidence presented by plaintiffs, the Court finds overwhelmingly that claims for relief have been properly stated. Accordingly, defendants' motion to dismiss (docket no. 20) is DENIED.

Plaintiffs have also sued Attorney General Paxton, whose only involvement shown thus far is a press release, which the Court finds arguably vituperative in tone but nevertheless states the Attorney General's authority and, therefore, without further proof is within his First Amendment right to free speech. *See* Attachment C (TX-LULAC Exhibit 3). Clearly, this statement is not yelling fire in a crowded theater and therefore not subject to being censured.[5] While the Court would prefer that political rhetoric be newtralized to more civil discourse, Article III of the Constitution bestows no power on the federal judiciary to make wishes come true. Accordingly, plaintiffs' request for relief regarding the press release is DENIED.

The Court awaits final advice from the individual counties which are parties concerning whether they will agree to pause the process, particularly not sending any notice of examination letters without

---

[4]HENRY D. THOREAU, WALDEN 91 (J. Lyndon Shanley ed., Princeton Univ. Press 1971) (1854).

[5]As Justice Oliver Wendell Holmes, Jr. stated in *Schenck v. United States*, 249 U.S. 47, 52 (1919): "The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic."

-3-

prior approval of the Court. Local officials can continue to find out if in fact someone is registered who is not a citizen, so long as it is done without communicating directly with any particular individual on the list. In addition, local officials are ORDERED not to remove any person from the current voter registration list until authorized by this Court. As to the first rollout of 98,000, the Secretary of State is ORDERED to tell other counties which are not parties to this litigation, or party counties which will not agree to a pause, not to send any notice of examination letters nor remove voters from registration without prior approval of the Court with a conclusive showing that the person is ineligible to vote.

With reference to the new lists being prepared based on contemporaneous applications for driver licenses and applications to register to vote, the Secretary of State may proceed with the monthly rollouts. However, the Secretary of State is affirmatively ORDERED to advise and direct local voting officials not to send notice of examination letters nor remove voters from registration without prior approval of the Court.

The Court further finds and concludes the Secretary of State, though perhaps unintentionally, created this mess. As Robert Fulghum taught in *All I Really Need to Know I Learned in Kindergarten*, "always put things back where we found them and clean[] up our own messes." ROBERT FULGHUM, ALL I REALLY NEED TO KNOW I LEARNED IN KINDERGARTEN: UNCOMMON THOUGHTS ON COMMON THINGS (Villard Books 1986).

IT IS SO ORDERED.

SIGNED this 27 day of February, 2019.

FRED BIERY
UNITED STATES DISTRICT JUDGE

FILED

FEB 28 2019

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

TEXAS LEAGUE OF UNITED LATIN )
AMERICAN CITIZENS, ET AL., )
                                                                    )
      Plaintiffs, )
                                                         )
V. )    CIVIL ACTION NO. SA-19-CA-074-FB
                                                             )
DAVID WHITLEY, in his Official Capacity )
as Secretary of State for the State of Texas; )
ET AL., )
                                                            )
     Defendants. )

### ORDER REGARDING JOINT ADVISORY FROM COUNTY DEFENDANTS

The county defendants seek clarification of the Order (docket no. 61) issued on February 27, 2018. (Docket no. 62). As noted in the advisory, "all Texas counties routinely receive information from a variety of sources (including the Secretary of State) regarding voters who are deceased, have moved to another county or state, are convicted of a felony, or are not citizens." *Id.* at page 2. The county defendants inquire whether "the Court's Order to not remove any voter based on information received from Advisory 2019-02 . . . is broad enough to prohibit the removal of 'any person from the current voter registration list until authorized by this Court,' for any reason, based upon information independent of Advisory 2019-02." *Id.* The Court's Order is limited to the removal of any person from the current voter registration list based on non-citizenship and does not prohibit the removal of any person based upon information independent of Advisory 2019-02, such as death, relocation or felony conviction.

The county defendants also advise "the Court that they may be unable to avoid communicating directly 'with any particular individual on the list' should those voters initiate the contact with a county

elections administrator. However, the county defendants advise the Court that they will not initiate such contact." *Id.* This is acceptable to the Court.

The advisory also brings to the Court's attention that the *Garibay* plaintiffs' motion for leave to file a second amended complaint, which seeks to add as defendants Angelina County, Bandera County, Blanco County, Bosque County, Brazos County, Gregg County, Kerr County, Victoria County and Willacy County, is pending. It is due to an administrative oversight that these counties are not properly before the Court at this time. Accordingly, an order granting the motion shall be issued simultaneously with this response to the joint advisory.

It is so ORDERED.

SIGNED this 28 day of February, 2019.

FRED BIERY
UNITED STATES DISTRICT JUDGE