IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Texas League of United Latin American Citizens, et al., | ) ) | Civil Action No.: 5:19-CV-00074-FB [Lead Case] |
| *Plaintiffs,* | ) | |
| v. | ) ) | |
| David Whitley; et al., | ) | |
| *Defendants,* | ) | |
| | ) | |
| MOVE Texas Civic Fund, et al., | ) | Civil Action No. 5:19-CV-00171-FB |
| *Plaintiffs,* | ) ) | [Consolidated Case] |
| v. | ) ) | |
| David Whitley, et al., | ) | |
| *Defendants,* | ) | |
| | ) | |
| Julieta Garibay, et al., | ) | Civil Action No. 5:19-CV-00159-FB |
| *Plaintiffs,* | ) ) | [Consolidated Case] |
| v. | ) ) | |
| David Whitley, et al., | ) | |
| *Defendants.* | ) | |

**REPLY IN SUPPORT OF MOVE TEXAS CIVIC FUND ET AL.'S MOTION FOR PRELIMINARY INJUNCTION[1]**

---

[1] The *MOVE* Plaintiffs' Preliminary Injunction, referred to herein as *MOVE* PI, is filed as Dkt. No. 10 in Case No. 5:19-CV-00171-FB.

i

## INTRODUCTION

Defendants Whitley and Ingram's Response to Plaintiffs' Motion for Preliminary Injunction, Dkt. No. 54, does not address the claim on which Plaintiffs' seek preliminary relief—*i.e.*, that the purge program and the creation of the Purge List impermissibly classifies individuals on the basis of their national origin and their status as naturalized citizens. Defendants' response, as a result, should be deemed waived. Rather than contest Plaintiffs' claim, State Defendants instead attempt to shirk responsibility for the flawed and unconstitutional voter purge they enacted by blaming county officials, but, as this Court has already found, this is a mess created by the State, and they bear responsibility for cleaning it up. State Defendants also argue that the relief requested is improper because Plaintiffs seek an injunction that is mandatory and infringes on their First Amendment rights. But Plaintiffs seek relief that is prohibitory in nature, to halt the voter purge until this Court has time to rule on its merits. Courts commonly issue such orders to protect against the violation of constitutional rights and to preserve the status quo. Further, that State Defendants, in their official capacity, would need to instruct counties to cease the voter purge does not violate their First Amendment rights.

## ARGUMENT

**I.    Plaintiffs are likely to succeed on the merits of their claim**

Plaintiffs seek to preliminarily enjoin both the State and Counties from carrying out the voter purge, because the purge program and the Purge List discriminate on the basis of a suspect classification in violation of the Equal Protection Clause of the Fourteenth Amendment. *MOVE* PI at 14-17. The creation of the Purge List and any action taken pursuant to it, including investigations, constitute impermissible classifications on the basis of national origin. Naturalized citizens who are on the Purge List and who are therefore subjected to the burden of

1

proving—once again—their eligibility to vote are treated differently solely because, according to DPS records, they were at one time not a citizen. But U.S. born citizens categorically will not be included on the Purge List and thus will not be subjected to these additional burdens. As this Court has found, the program targets "perfectly legal naturalized Americans," but "[n]o Native born Americans [are] subjected to such treatment." Order on Mot. to Dismiss, Dkt No. 61 at 1-2.

State Defendants do not contest that the purge program discriminates against naturalized citizens on the basis of their national origin, and they do not even attempt to meet their burden of showing that the purge program is narrowly tailored to meet a compelling governmental interest. Nor could they; as explained in the *MOVE* Plaintiffs' PI, the government's mere speculation of noncitizen voting does not demonstrate a compelling government interest, *MOVE* PI at 16-17, and even if it did, the wildly over inclusive program—which this Court has found to uniquely burden naturalized citizens, to be "paved with flawed results," and to be more generally a "mess"—is not narrowly tailored. Dkt. 61; *see also MOVE* PI at 17-19.

## II.     Plaintiffs and their members will suffer irreparable harm

State Defendants repeat their same flawed arguments that Plaintiffs will not suffer irreparable harm traceable to them because (a) individuals can prevent removal by responding to the Notices; and (b) it is the counties' fault. Both of these arguments are unavailing. State Defendants do not respond to Plaintiffs' arguments that the burden placed on naturalized citizens is not *de minimis*, especially for those individuals who do not have immediate access to their citizenship documents or who did not receive the Notice. *MOVE* PI at 10-11, 20-21. Regardless, forcing naturalized citizens to undertake burdens solely because they have immigrated to the United States is itself an irreparable harm. *MOVE* PI at 20-21 (citing, *inter alia*, *Huynh v. Carlucci*, 679 F. Supp. 61, 67 (D.D.C. 1988) (unequal treatment of naturalized citizens

constituted irreparable harm to "their own sense of self-worth and well-being and of their constitutional right to the same treatment given other citizens").

This Court has already rejected the argument that any injury is not traceable to State Defendants because counties send out Notices. Dkt. No. 61 ("The Court further finds and concludes the Secretary of State, though perhaps unintentionally, created this mess."). Clearly *but for* State Defendants' creation of the Purge List and issuance of the Advisory, the voting rights of tens of thousands naturalized citizens would not be in peril. Under state law, the Secretary has the authority to issue directives, instructions, and advisories to county officials to ensure consistent maintenance of the voter rolls and to prevent violations of the right to vote. *See* Tex. Elec. Code §§ 31.001-31.005.  Further as explained in more detail in Plaintiffs' Response to State Defendants' Motion to Dismiss,[2] the State's Advisory and subsequent communications to the counties were framed and understood as a mandate to begin sending out Notices and purging people from the voter rolls. *See* Dkt. No. 60 3-10.

### III.     The Relief Requested By Plaintiffs Is Proper

State Defendants object to the Court issuing a preliminary injunction arguing that Plaintiffs seek a disfavored mandatory injunction and that any relief would impinge on the First Amendment. Both arguments are misplaced. Here, Plaintiffs seek the Court's intervention to prevent continuing violations of constitutional rights. Courts traditionally use their inherent and equitable authority in this context. *See United States v. Tex. Ed. Agency,* 467 F.2d 848, 871 (5th Cir. 1972) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad. . . .") (citation omitted).

Further, Plaintiffs do not seek a "mandatory" injunction. Plaintiffs seek an order halting

---

[2] Plaintiffs incorporate their Response to State Defendants' Motion to Dismiss, Dkt. No. 60.

the purge program and use of the Purge List until such time as the Court may reach a final decision on the merits of Plaintiffs' claims. Such relief would simply preserve the status quo by preventing eligible voters who are currently registered from being removed from the rolls on the basis of the purge program and from being forced to provide documentary proof of citizenship, a requirement that had never previously been imposed. Because Plaintiffs' requested relief seeks to preserve the status quo by halting the purge program and use of the Purge List, it is prohibitory in nature. *Wenner v. Texas Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997) ("It is well settled that the issuance of a prohibitory injunction freezes the status quo, and is intended 'to preserve the relative positions of the parties until a trial on the merits can be held.' Preliminary injunctions commonly favor the status quo and seek to maintain things in their initial condition so far as possible until after a full hearing permits final relief to be fashioned.") (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).)

That to halt the use of the purge program, State Defendants must undertake the minimal task of instructing all counties—and especially those not before this Court—to cease sending out notices and not to remove anyone from the rolls, does not transform the requested prohibitory injunction into a mandatory one. Indeed, for any preliminary injunction, those in a position of authority will likely need to instruct others to abide by the court's orders, but that does not make such injunctions mandatory. *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.,* 269 F.3d 1149, 1155 (10th Cir. 2001) (rejecting argument that required affirmative acts rendered injunction mandatory, where such acts were consistent with status quo ante).[3]

Even if this Court found the requested relief mandatory in nature, because such relief is

---

[3] *See also State of Kansas v. United States*, 192 F. Supp. 3d 1184, 1210 (D. Kan. 2016), *aff'd* 874 F.3d 1226 (10th Cir. 2017) ("the nature of any injunction requires the nonmovant to act in some particular fashion, and not all injunctions are mandatory").

4

necessary to prevent irreparable harm, it is proper. As the Fifth Circuit has observed:

> The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits. It often happens that this purpose is furthered by preservation of the status quo, but not always. If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury.

*Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974) (citations omitted).

Finally, State Defendants are incorrect that the requested relief infringes on their First Amendment rights. Dkt. No. 54, 4-7. Their argument focuses largely on the tweets and press releases issued by Governor Abbott and Attorney General Ken Paxton about which the *MOVE* Plaintiffs do not seek relief. State Defendants do argue, however, that an order requiring them to instruct counties to cease carrying out the voter purge would violate their First Amendment rights. Not surprisingly, this argument is not supported by any authority, and in fact runs contrary to well-established First Amendment principles. Most obviously, as the Supreme Court has held "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *Williams v. Dallas Indep. Sch. Dist.,* 480 F.3d 689, 693 (5th Cir. 2007) (similar). The absurdity of State Defendants' position is demonstrated by its implications. If an order telling State Defendants to instruct counties to cease carrying out the voter purge infringes on their First Amendment rights, so too would a court's order to a Sheriff to instruct his officers that they must have reasonable suspicion to effectuate a traffic stop, or any other order that required any sort of communication by government officials *in their official capacity*. The First Amendment does not insulate government officials from responsibility for ceasing their unconstitutional actions, and this argument should be rejected.

Mimi Marziani
Texas Bar No. 24091906
Rebecca Harrison Stevens
Texas Bar No. 24065381
Joaquin Gonzalez*
Texas Bar No. 24109935
Texas Civil Rights Project
1405 Montopolis Drive
Austin, TX 78741-3438
Telephone: (512) 474-5073
beth@texascivilrightsproject.org

Jon Greenbaum*
D.C. Bar No. 489887
Ezra D. Rosenberg*
D.C. Bar No. 360927
Brendan B. Downes*
D.C. Bar No. 187888
Jennifer Nwachukwu*
Maryland Bar No. 1706200131
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Fax: (202) 783-0857

Sophia Lin Lakin*
New York Bar No. 5182076
Dale E. Ho**
New York Bar No. 4445326
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 519-7836
Fax: (212) 549-2654

Respectfully submitted,

*/s/ Thomas Buser-Clancy*
Thomas Buser-Clancy
Texas Bar No. 24078344
Andre Segura*
Texas Bar No. 24107112
Edgar Saldivar
Texas Bar No. 24038188
Brian Klosterboer*
Texas Bar No. 24107833
American Civil Liberties Union
Foundation of Texas
P.O. Box 8306
Houston, TX 77288
Telephone: (713) 325-7011
Fax: (713) 942-8966
asegura@aclutx.org

Chiraag Bains** †
Massachusetts Bar No. 673627
Dēmos
740 6th Street NW, 2nd Floor
Washington, DC 20001
Telephone: (202) 864-2746

Stuart C. Naifeh*
California Bar No. 233295
Brenda Wright*
New York Bar No. 1863240
Dēmos
80 Broad Street, 4th Floor
New York, NY 10004
Telephone: (212) 485-6055
Fax: (212) 633-2015

ATTORNEYS FOR PLAINTIFFS

\* Motion to Appear Pro Hac Vice pending before the Court
\*\* Motion to Appear Pro Hac Vice forthcoming
† Admitted in Massachusetts, not D.C.; practice consistent with D.C. App. R. 49(c)(3).

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was served upon defense counsel via this Court's ECF system.

/s/*Thomas Buser-Clancy*
Thomas Buser-Clancy