IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Texas League of United Latin American Citizens, et al., | ) ) | Civil Action No.: 5:19-CV-00074-FB [Lead Case] |
| *Plaintiffs,* | ) | |
| v. | ) ) | |
| David Whitley, et al., | ) | |
| *Defendants,* | ) ) | |
| | ) | |
| MOVE Texas Civic Fund, et al., | ) | Civil Action No. 5:19-CV-00171-FB |
| *Plaintiffs,* | ) ) | [Consolidated Case] |
| v. | ) ) | |
| David Whitley, et al., | ) | |
| *Defendants,* | ) ) | |
| | ) | |
| Julieta Garibay, et al., | ) | Civil Action No. 5:19-CV-00159-FB |
| *Plaintiffs,* | ) ) | [Consolidated Case] |
| v. | ) ) | |
| David Whitley, et al., | ) | |
| *Defendants.* | ) | |

**PLAINTIFFS MOVE TEXAS CIVIC FUND, ET AL.'S RESPONSE IN OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiffs MOVE Texas Civic Fund, Jolt Initiative, League of Women Voters of Texas, and Nivien Salah (hereinafter "Plaintiffs") submit this response to the Motion to Dismiss filed on behalf of Blanco, Caldwell, Fayette, Galveston, Harrison, Hansford, Smith, and Washington

1

counties ("County Defendants"). Dkt. 81. County Defendants' motion strikes a single note: the Texas Secretary of State, and the Secretary of State alone, created this mess and is the only party responsible for cleaning it up. Plaintiffs agree that, as alleged in the First Amended Complaint ("FAC"), the Secretary recklessly threatened the rights of thousands of qualified voters by compiling and disseminating a deeply flawed and discriminatory List of supposed non-citizens that targeted tens of thousands of naturalized citizens. But, as alleged in the FAC, County Defendants compounded that harm when they began taking steps based on this List to purge naturalized citizens from their rolls. County Defendants ignored the statutory requirement that they need a "reason to believe" that an individual is no longer eligible for registration before sending a Notice initiating an investigation into the voter's eligibility. Secretary Whitley's List was not sufficient to give County Defendants the requisite "reason to believe" and County Defendants were put on notice of the problems with the List at the same time the List was sent to them. *See* Dkt. 7 ¶¶ 8-9. Despite that warning, County Defendants, having undertaken no investigations of their own, issued Notices to all or nearly all individuals on the List, threatening scores of naturalized citizens with disenfranchisement.

      This is not a case where liability rests with *either* the State *or* County Defendants; rather, State and County Defendants all have played essential roles in carrying out the Purge program and all are proper parties. Indeed, County Defendants ignore the ample case law in which courts hold both county and state officials liable for unlawful conduct with respect to voting rights. County Defendants started the removal clock that leads to actually canceling voter registrations, and they are the government entities responsible for the act of cancellation—all of which poses a concrete and imminent threat to voters' ability to stay on the rolls and cast a valid ballot. This Court recognized as much when it ordered local election officials to refrain from removing

individuals based on the List. Dkt. 61 at 4. Additionally, as noted in the State's recent advisory to this Court, non-party counties in fact did erroneously cancel voter registrations in contravention of this Court's Order, which highlights the propriety of including counties as Defendants in this matter. *See* Dkt. 123; Dkt. 124. Plaintiffs' FAC alleges adequate facts concerning County Defendants' role and responsibility in the controversy here. As a result, County Defendants' motion should be denied.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *See generally Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice at the pleading stage, *Iqbal*, 556 U.S. at 678, a court considering a motion to dismiss must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009) (internal quotations omitted). For that reason, motions to dismiss under Rule 12(b)(6) are generally viewed with disfavor and are rarely granted. *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013).

## ARGUMENT

**I.     Plaintiffs' Complaint Pleads Sufficient Facts that Support the Claims for Relief Against County Defendants.**

County Defendants erroneously argue that the FAC "does not state a valid claim nor seek specific relief from County Defendants," Dkt. 81 at 2, and maintain that the FAC alleges sufficient facts to state a claim against the State and the State alone. This argument directly conflicts with the plain text of the FAC. Plaintiffs specifically assert that, after receiving the initial List of supposed non-citizens from the Secretary, "Defendant counties, without further

3

investigation, began sending out Notices to individuals on the List—*including naturalized citizens*—telling them that their eligibility to vote was being investigated and that they had 30 days to provide one of three specified forms of documents proving their citizenship or else they would be removed from the voter rolls." Dkt. 7 ¶ 9 (emphasis in original).[1] County Defendants additionally protest that "singl[ing] out the eight County Defendants is illogical," Dkt. 81 at 12. However, the FAC specifically alleges that these eight counties took immediate action based on the List they received, despite being put on notice of the flaws in the List, and that their actions threatened the rights of eligible Texas voters. Dkt. 7 ¶¶ 8-9, 75-78 (noting that all eight counties sent out notices immediately).[2] The fact that other unnamed counties may have also acted illegally does not insulate these eight from liability.

Plaintiffs' FAC also highlights the specific threat that County Defendants' actions pose to naturalized citizens on the voter rolls; "[T]he consequences of not responding to a Notice issued by a county within the required 30 days are severe: removal from the rolls and, consequently, a deprivation of the right to vote." *Id.* ¶ 18. Indeed, the threat of disenfranchisement—and its realization—does not become real or tangible without county action. A county voter registrar has primary authority for receiving and processing voter registration applications, *see* Tex. Elec. Code Ch. 13, maintaining and correcting records of currently registered voters, *see* Tex. Elec. Code Ch. 15, and cancelling the registrations of voters who are proven to be ineligible for registration, *see* Tex. Elec. Code Ch. 16. County voter registrars have the authority to investigate

---

[1] Dkt. 7 here refers to Plaintiffs' First Amended Complaint for Declaratory and Injunctive Relief in the original case (3:19-cv-00041). Except when noted, all other citations are to the case as consolidated (5:19-CV-00074-FB).

[2] That the FAC includes allegations against each of the named Counties also refutes Defendants' baseless assertion that "Plaintiffs do not make a single allegation of wrongdoing against County Defendants in the first 35 pages." Dkt. 81 at 6. Page 21 clearly includes these allegations.

whether a registered voter is currently eligible for registration and to deliver written Notice to voters if their registration status is suspected of being invalid. Tex. Elec. Code § 16.033(a) (authorizing "[t]he registrar [to] use any lawful means to investigate whether a registered voter is currently eligible for registration in the county"). Critically, the authority to deliver a Notice arises only when a "registrar has *reason to believe* that a voter is no longer eligible for registration." *Id.* § 16.033(b) (emphasis added). It is only then that the registrar "shall deliver written notice to the voter indicating that the voter's registration status is being investigated by the registrar," *id.,* and remove the voter if an adequate response to the Notice is not received. Simply put, no one is removed from the voter rolls, pursuant to the Secretary's List, in the absence of county action. County Defendants elected to issue Notices despite the List's acknowledged flagging of eligible and properly registered voters, thereby placing the burden on naturalized citizens to re-establish their U.S. citizenship, even though they already attested to their citizenship under penalty of perjury at the time of their application. Dkt. 7 ¶ 92. As alleged in the FAC, County Defendants did not conduct any investigation into the potential eligibility of these individuals and thus failed to determine whether there was "reason to believe" that the voters were no longer eligible for registration. They were by no means required to immediately issue Notices without any investigation into a voter's eligibility. *See* Dkt. 81 at 7.

It is telling that County Defendants do not cite a single case for their argument that only the State Defendants are proper parties here. In fact, courts routinely find *both* county election officials *and* State election officials to be proper defendants for their role in carrying out unconstitutional or unlawful state election laws or practices. For example, in *Voting for America, Inc. v. Andrade*, the Southern District of Texas held that "[b]oth the Secretary [of State] and Johnson [the Galveston County Tax Assessor and Voter Registrar] have a designated role to play

in the interpretation and enforcement of the Election Code, and both are proper parties." 888 F. Supp. 2d 816, 833 (S.D. Tex. 2012); *id.* ("Because [the Voter Registrar] enforces the laws that the Organizational Plaintiffs contend cause them injury, an injunction against her would directly redress that alleged injury"), *rev'd on other grounds*, *Voting for Am., Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013); *see also United States v. State of Miss.*, 339 F.2d 679, 684 (5th Cir. 1964) (finding that the state and county voter registrar are both proper defendants for implementing an unconstitutional literacy test); *United States v. State of Tex.*, 422 F. Supp. 917, 922 (S.D. Tex. 1976) (determining that the state and county tax assessor-collector were properly joined as defendants in a case alleging violations of the Constitution and Voting Rights Act); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 712 (S.D. Miss. 2014) (holding that both county defendants and the Secretary of State were properly named in NVRA lawsuit); *Mark Wandering Med. v. McCulloch*, CV 12-135-BLG-DWM, 2014 WL 12588302, at *3-4 (D. Mont. Mar. 26, 2014) (finding that plaintiffs have standing to bring voting rights claims against both county officials and the Secretary of State); *Sanchez v. Cegavske*, 214 F. Supp. 3d 961, 966 & n.1 (D. Nev. 2016) (granting injunctive relief against Counties and declining to dismiss Secretary of State as improperly named party). As in *Voting for America* and the other cases cited above, State and County Defendants are clearly proper parties here.

## II.  Defendants' Arguments Concerning Plaintiffs' Legal Claims Are Without Merit.

County Defendants proceed to repeat their sole argument with respect to each count in the FAC—namely that only State Defendants can be held liable. Dkt. 81 at 6-11. In so doing, County Defendants ignore the recklessness of their own actions as well as the burden those actions place on qualified voters. Plaintiffs allege seven legal claims against all Defendants. Dkt. 7 at 36-45. County Defendants' actions are inextricably linked to each of these claims. As

alleged in the FAC, County Defendants took the List disseminated by the Secretary and rubber-stamped it by immediately issuing notices to the flagged voters. Dkt. 7 ¶¶ 75-78. The Lists County Defendants used to initiate these actions unlawfully classified individuals on the basis of their national origin without any compelling justification and erroneously and unnecessarily targeted eligible and properly registered naturalized citizens. By acting on this List without any independent investigation (and while on notice of the List's flaws), County Defendants put naturalized citizens at unique risk of removal from the voter rolls, and uniquely burdened naturalized citizens with producing, within a narrow window of time, certain specified documents to demonstrate their citizenship a second time. *See* Dkt. 7 ¶ 100-108. This Court has already recognized the critical role counties play in this process when it prohibited County Defendants from removing any person from the voter rolls pursuant to the Secretary's List without the authorization of the Court. Dkt. 61 at 4. That the Secretary initiated this unlawful process does not immunize counties from their role in implementing the voter purge.

Each set of Defendants here—the State and County Defendants—are eager to place responsibility for this calamity upon one another. In its Motion to Dismiss, the State argued that "the Secretary of State does not investigate voter eligibility or cancel a voter's registration for non-citizenship, [] as that authority lies solely with county election officials," Dkt. 27 at 1,[3] that the Election Advisory "merely outlines the process by which DPS data will be shared with local elections officials, and leaves to them the decision whether to investigate any particular voter," *Id.* at 9, and that the case should be dismissed against State Defendants, in part, because neither the Secretary nor the Director of Elections "sent a single letter to a voter or [] cancelled any voter's registration." *Id.* at 10. In turn, County Defendants maintain that, "State law requires

---

[3] Filed in the original case (3:19-cv-00041).

county elections administrators [to] send a written notice to any voter that the registrar has reason to believe is not a citizen," and that "it is clear that 'reason to believe' was established by the 'actionable' information received from the Secretary of State's Advisory and directive." Dkt. 81 at 7-8. The fact is that the State and County Defendants are all legally and factually responsible for implementation of the unlawful purge program and all are appropriate parties for the relief requested by Plaintiffs.

### III. Defendants Are Proper Parties to Obtain the Relief Sought.

Finally, County Defendants maintain that rescission of the Secretary's List would resolve this matter in full, an outcome that may or may not be obtained. Dkt. 81 at 2. But, at the time of filing, County Defendants had *already* sent Notices to individuals on that List, thereby starting the countdown to disenfranchisement. Individuals would have been removed from the rolls entirely, if they did not respond with required documentation, were it not for this Court's order. Dkt. 61. Plaintiffs have not obtained permanent relief in this matter, and the FAC requests specific relief against the County Defendants even if the List is rescinded, including the retraction of Notices that have already been sent on the basis of the List, the publicization of the rescission of those Notices, and the reinstatement of the registration of any individual who was removed pursuant to that List. County Defendants are clearly proper parties here.

### CONCLUSION

For the foregoing reasons, the Court should deny County Defendants' Motion to Dismiss.

Mimi Marziani
Texas Bar No. 24091906
Rebecca Harrison Stevens
Texas Bar No. 24065381
Joaquin Gonzalez*
Texas Bar No. 24109935
Texas Civil Rights Project
1405 Montopolis Drive
Austin, TX 78741-3438
Telephone: (512) 474-5073
beth@texascivilrightsproject.org

Jon Greenbaum*
D.C. Bar No. 489887
Ezra D. Rosenberg*
D.C. Bar No. 360927
Brendan B. Downes*
D.C. Bar No. 187888
Jennifer Nwachukwu*
Maryland Bar No. 1706200131
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Fax: (202) 783-0857

Sophia Lin Lakin*
New York Bar No. 5182076
Dale E. Ho**
New York Bar No. 4445326
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 519-7836
Fax: (212) 549-2654

*/s/ Brendan B. Downes*

Andre Segura*
Texas Bar No. 24107112
Thomas Buser-Clancy
Texas Bar No. 24078344
Edgar Saldivar
Texas Bar No. 24038188
Brian Klosterboer*
Texas Bar No. 24107833
American Civil Liberties Union
Foundation of Texas
P.O. Box 8306
Houston, TX 77288
Telephone: (713) 325-7011
Fax: (713) 942-8966
asegura@aclutx.org

Chiraag Bains* †
Massachusetts Bar No. 673627
Dēmos
740 6th Street NW, 2nd Floor
Washington, DC 20001
Telephone: (202) 864-2746

Stuart C. Naifeh*
California Bar No. 233295
Brenda Wright*
New York Bar No. 1863240
Dēmos
80 Broad Street, 4th Floor
New York, NY 10004
Telephone: (212) 485
Fax: (212) 633-2015


ATTORNEYS FOR PLAINTIFFS MOVE, ET AL.

* Admitted *Pro Hac Vice*
** Motion to Appear *Pro Hac Vice* forthcoming
† Admitted in Massachusetts, not D.C.; practice consistent with D.C. App. R. 49(c)(3).

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was served on March 18, 2019 on all counsel of record via the Court's CM/ECF system.

/s/ Brendan B. Downes.  
Brendan B. Downes